Matthew R. Mendelsohn
**MAZIE SLATER KATZ & FREEMAN, LLC**
103 Eisenhower Parkway
Roseland, NJ 07068
Telephone: (973) 228-9898
Facsimile: (973) 228-0303

*Attorneys for Plaintiff and Putative Class*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SIMON MAJDIPOUR, individually, and on behalf of a class of similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>JAGUAR LAND ROVER NORTH AMERICA, LLC<br><br>Defendant. | No.:<br><br><br>**CLASS ACTION COMPLAINT AND JURY TRIAL DEMAND** |

Plaintiff Simon Majdipour, brings this action against Defendant Jaguar Land Rover North America, LLC, by and through his attorneys, individually and behalf of all others similarly situated ("Class Members"), and allege as follows:

### INTRODUCTION

1.      From the 2003 through the 2006 model years, Defendant Jaguar Land Rover North America LLC ("Land Rover") sold Range Rover sport utility vehicles equipped with defective Delphi electronic air suspension systems that develop cracks in the rubber air bellows used in those systems (collectively, "Class Vehicles").

2.      The defect—which can manifest at any time, at any speed, and under any driving condition—causes a loss of air pressure in the suspension system that renders Class

Vehicles suddenly unable to travel in a straight line (the "Air Suspension Defect"), which poses a serious risk of injury and death. In addition to sudden and unexpected breakdowns that can force Class Vehicles to be stranded in the road, the Air Suspension Defect can cause the driver to lose control while the vehicle is in motion.

3.      Plaintiff Simon Majdipour, who owns a 2006 model-year Class Vehicle, is informed and believes that Land Rover knew or should have known about the Air Suspension Defect since at least as early as 2003. Plaintiff is informed that, in or about August 2006 after conducting its own internal investigation, Land Rover quietly acknowledged the existence of the defect in a Technical Service Bulletin ("TSB") in which it concedes that Class Vehicles "may develop hairline cracks in the rubber material of the front air spring. The cracks are likely located at the point where the air spring rolls over the plastic base."

4.      Nonetheless, contrary to its obligations under clearly-established law, Land Rover sold Class Vehicles to unsuspecting consumers without notifying them that the Air Suspension Defect even existed, much less offer to repair the resulting problems without cost to the owner if the problem manifested itself outside of the Class Vehicles' limited 4 year/50,000 mile warranty, as Land Rover knew it would. Consequently, Plaintiff and members of the proposed class have been—and continue to be—exposed to a serious safety hazard and continue to bear the cost of repairs necessitated by the Air Suspension Defect on their own.

5.      Accordingly, Plaintiff brings this action on behalf of himself and all other individuals who owned or leased a Class Vehicle for the purpose of requiring Land Rover to (1) notify all members of the proposed class of the nature and impact of the Air Suspension Defect, (2) reimburse proposed class members who have paid to fix the Air Suspension Defect,

and (3) repair the Air Suspension Defect free of charge for those proposed class members who have yet to experience the defect, and for compensatory, statutory, and punitive damages.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. §§1332(d)(2) and (6) of the Class Action Fairness Act of 2005 because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and one defendant are citizens of different states.  This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

7.      Venue is proper in this judicial district pursuant to 28 U.S.C. §1391 because Defendant Land Rover has its North American headquarters in this jurisdiction, transacts business in this district, is subject to personal jurisdiction in this district, and therefore is deemed to be a citizen of this district.  Additionally, Defendants have advertised in this district and have received substantial revenue and profits from their sales and/or leasing of Class Vehicles in this district; therefore, a substantial part of the events and/or omissions giving rise to the claims occurred, in part, within this district.

8.      This Court has personal jurisdiction over Defendant Land Rover.  Defendant's North American corporate headquarters is located in Mahwah, New Jersey.  As such, Defendant has conducted substantial business in this judicial district, and intentionally and purposefully placed Class Vehicles into the stream of commerce within the districts of New Jersey and throughout the United States.

## NEW JERSEY LAW SHOULD APPLY

9.      To the extent that it is appropriate to engage in a choice of law analysis for

purposes of deciding any motion to dismiss that may be filed by Land Rover, New Jersey's substantive laws should apply to the proposed nationwide Class, as defined herein, because Plaintiff properly brings this Complaint in this District.

10.     New Jersey's substantive laws may be constitutionally applied to the claims of Plaintiffs and the Class Members under the Due Process Clause, 14th Amendment, § 1, and the Full Faith and Credit Clause, Art. IV., § 1, of the U.S. Constitution.  New Jersey has significant contact, or significant aggregation of contacts, to the claims asserted by Plaintiff and all Class Members, thereby creating state interests that ensure that the choice of New Jersey state law is not arbitrary or unfair.

11.     Specifically, Defendant's North American headquarters and principal place of business is located in New Jersey.  Defendant Land Rover is registered with the New Jersey State Business Gateway Service.   And according to its website, Land Rover's Customer Relationship Center is located in Mahwah, New Jersey.[1]

12.     Defendants also own property and conduct substantial business in New Jersey and, therefore, New Jersey has an interest in regulating Defendants' conduct under its laws. Defendants' decision to reside in New Jersey and avail itself of New Jersey's laws renders the application of New Jersey law to the claims herein constitutionally permissible.

13.     A substantial number of Class Members also reside in New Jersey and purchased their vehicles in New Jersey.

14.     Upon information and belief, New Jersey is also the State from which Defendant's misconduct emanated.  This conduct similarly injured and affected Plaintiff and all Class Members residing in the United States.  For instance, Defendant's marketing and

---

[1] http://www.landrover.com/us/en/lr/contact-us/contact-us/

advertising efforts, warranty and goodwill policies and procedures, and maintenance schedules and recommendations were all likely created in and orchestrated from the location of Defendant's present headquarters in New Jersey.  As a result, New Jersey is where the conduct causing injury to the Plaintiff and Class Members occurred and from where it emanated.

15.    The application of New Jersey's laws to the Nationwide Class is also appropriate under New Jersey's choice of law rules because New Jersey has significant contacts to the claims of the Plaintiff and the proposed Nationwide Class, and New Jersey has a greater interest in applying its laws here than any other interested state.

## THE PARTIES

16.    Plaintiff Simon Majdipour is a California citizen who purchased a 2006 Range Rover primarily for his personal, family, or household purposes, including the use as a carpool vehicle for his young children.  On or about November 2009, Mr. Majdipour purchased the subject "Certified Pre-Owned Vehicle" with approximately 36,000 miles from Land Rover Encino in California.

17.    Defendant Jaguar Land Rover North America, LLC, ("Land Rover")  is an automobile design, marketing, sale, leasing, distribution, and warranting limited liability company that maintains its headquarters and principle place of business in Mahwah, New Jersey.  This entity was created in connection with the sale by Ford Motor Company of all Land Rover branded business entities to Tata Motors Limited.  Land Rover is a subsidiary of Jaguar Cars Limited, a United Kingdom business entity that is a subsidiary of Jaguar LandRover Limited, another United Kingdom business entity which, in turn, is a subsidiary of Tata Motors, a business entity of the Republic of India.  Land Rover was formerly known as Land Rover North America, Inc. and is the successor in interest to Land Rover North America, Inc.  Land Rover designs, distributes, markets, services, repairs, sells and leases

passenger vehicles, including the Class Vehicles, nationwide.

18.     At all times relevant herein, Defendant was engaged in the business of designing, marketing, distributing, selling, leasing, and warranting automobiles in New Jersey and throughout the United States of America.

## TOLLING OF STATUTES OF LIMITATION

19.     Because the defects in the design or manufacturer of the Class Vehicles and their electronic air suspension cannot be detected until a defect manifests itself, Plaintiff and the members of the proposed class were not reasonably able to discover the problem until after purchasing or leasing the Class Vehicles, despite their exercise of due diligence.

20.     Plaintiff and the members of the proposed class had no realistic ability to discern that the electronic air suspension was defective until their vehicles prematurely failed.  Therefore, the discovery rule is applicable to the claims asserted by Plaintiff and the members of the proposed class.

21.     Plaintiff is informed and believes and based thereon alleges that Land Rover has known of the Air Suspension Defect at least since 2003, if not earlier, and has concealed from or failed to alert owners and lessees of the Class Vehicles of the defective nature of their electronic air suspension.

22.     Any applicable statute of limitation has therefore been tolled by Land Rover's knowledge, active concealment, and denial of the facts alleged herein.  Land Rover is further estopped from relying on any statute of limitation because of its concealment of the defective nature of the Class Vehicles and their electronic air suspension.

## FACTUAL ALLEGATIONS

23.     Land Rover brought Class Vehicles to market in the 2003 model year (which

began in late 2002) and continued selling them through the 2006 model year without disclosing the existence, nature, or scope of the Air Suspension Defect. This Air Suspension Defect causes the suspension system's rubber air bellows (also referred to as "air bags") to crack open, releasing air pressure and losing their ability to properly hold the vehicle's weight. As a result of this failure, the Air Suspension Defect creates a serious safety hazard, including the sudden loss of suspension on one side of the vehicle (rendering it lopsided while it is in motion), a loss of handling and the consequent inability to steer the vehicle in a straight line.

24.     As alleged more fully below, Plaintiff experienced the Air Suspension Defect first hand twice, in or around November 2010 and in or around April 2012.

25.     Plaintiff is informed and believes that Land Rover has been aware of the Air Suspension Defect since at least as early as 2003. Despite the obvious safety risk that it posed, however, Land Rover failed and refused to disclose the existence, nature, or scope of the Air Suspension Defect to Plaintiff, to the members of the proposed class, or to any other purchaser of an affected Range Rover throughout the United States. As a result of this failure, Plaintiff and the proposed class have been put at risk of a looming safety hazard without knowing it, and have been forced to bear the cost of repairs that become necessary when the Air Suspension Defect becomes manifest without causing bodily injury or death.

A.     THE AIR SUSPENSION DEFECT POSES A SAFETY HAZARD AND IS EXPENSIVE TO FIX

26.     Plaintiff is informed and believes that  the Class Vehicles have experienced the Air Suspension Defect in use thereby creating a safety hazard. These failures often result in the vehicles suddenly dropping while being driven, sitting unevenly and leaning to one side, and/or to suddenly losing the ability to travel in a straight line.

27.    As reflected by complaints to the National Highway Traffic Safety Administration ("NHTSA"), an extraordinary number of purchasers and lessees of the Class Vehicles have experienced problems with the electronic air suspension as a result of the Air Suspension Defect.  Those complaints reveal that the Air Suspension Defect is widespread and dangerous and that it manifests without warning.

28.    The Air Suspension Defect is also expensive to fix.  Plaintiff is informed and believes that repair costs can be as high as $2,500, depending on the replacement parts that are utilized. In or around April 2012, Plaintiff paid approximately $1,400 to repair the defect using replacement parts manufactured by a third-party.

29.    The complaints also indicate Land Rover's awareness of the problems with the electronic air suspension, the costs associated with the necessary repairs, and how potentially dangerous the defective condition is for consumers.   The following are examples of consumer safety complaints to NHTSA that have been posted on its website concerning the Air Suspension Defect which relate to electronic air suspension failure (spelling and grammar mistakes remain as found in the original) (Safecar.gov, *Search for Complaints* (August 14, 2012), http://www-odi.nhtsa.dot.gov/complaints/):

- I HAVE A 2003, RANGE ROVER HSE. THE AIR SUSPENSION INACTIVE WARNING LIGHT ILLUMINATED AND THE WHEELS SHOOK. I TOOK THE VEHICLE IN (12/29/08). THEY COULD NOT FIND THE PROBLEM AND SUGGESTED AN ALIGNMENT. I GOT THE ALIGNMENT AND THEY CLEARED THE WARNING LIGHT (1/2/09). I LEFT AND NOTICED THE VEHICLE STILL FELT OUT OF ALIGNED. LATER THE WARNING LIGHT (AIR SUSPENSION INACTIVE) CAME ON ONCE AGAIN (1/15/09). THIS TIME THE LEFT FRONT WHEEL FAILED TO RAISE UP. I BROUGHT THE VEHICLE BACK IN. THIS TIME THEY TOLD ME THE AIR SUSPENSION WAS LEAKING AND NEEDED TO BE REPLACED. IT COST ME $2900 (1/22/09). I TOOK THE VEHICLE HOME AND NOTICED THE VEHICLE WHEELS STILL SHOOK. I REPORTED THE PROBLEM BUT REFUSED TO BRING THE VEHICLE BACK IN. RECENTLY, THE WARNING LIGHT (AIR

SUSPENSION INACTIVE) ILLUMINATED ONCE AGAIN AND NONE OF THE WHEELS WOULD RAISE (2/22/09). I HAD THE VEHICLE CHECKED AGAIN AND WAS TOLD IT WAS NEVER ALIGNED AND THE WHEELS WERE NOT BALANCED. I HAD THE VEHICLE ALIGNED AND THE WHEELS BALANCED. THE VEHICLE IS AGAIN OUT OF ALIGNMENT AND THE WHEELS SHAKE. I DO NOT WANT TO GET RIPPED OFF AGAIN, SO THE VEHICLE REMAINS IN MY GARAGE. *TR

- THE CONTACT OWNS A 2003 LAND ROVER RANGE ROVER. THE CONTACT HAS EXPERIENCED MULTIPLE FAILURES WITH THE VEHICLE SINCE THE TIME OF PURCHASE. WHENEVER SHE TURNED ON THE VEHICLE, THE ENGINE INDICATOR ILLUMINATED ON THE INSTRUMENT PANEL, WHICH STATED "COOLING TEMPERATURE". WHEN THE CONTACT ADDED WATER, IT WOULD LEAK OUT. THE CONTACT EVENTUALLY TOOK THE VEHICLE TO THE SHOP AND THEY STATED THAT THE RADIATOR WAS LEAKING. THE DEALER STATED THAT THE ISSUE WAS RESOLVED, BUT THE SUSPENSION WOULD CAUSE THE VEHICLE TO LEAN TO THE LEFT. THE VEHICLE COULD NOT DRIVE FORWARD IN A STRAIGHT LINE. THE DEALER STATED THAT AN AIR BAG LEAK CAUSED THE SUSPENSION TO MALFUNCTION. THE DEALER REPAIRED THE VEHICLE, BUT THE FAILURE RECURRED A YEAR LATER ON THE OTHER SIDE. THE VEHICLE IS CURRENTLY IN THE SHOP FOR A SUSPENSION ISSUE. THE CONTACT BELIEVES THAT HER 2003 VEHICLE SHOULD NOT BE EXPERIENCING SO MANY FAILURES. THE FAILURE MILEAGE WAS 30,000 AND CURRENT MILEAGE WAS 80,000.

- [2004 Range Rover] ALL RANGE ROVERS FROM 2003-2005 HAVE A FULL AIR RIDE SUSPENSION THAT SUPPORTS THE VEHICLE ON ALL FOUR CORNERS. THE CONCERN IS THAT THE AIRBAG THAT SUPPORTS THE FRONT OF THE VEHICLE, RUPTURES AND THROWS THE VEHICLE OFF BALANCE WHILE CORNERING CAUSES A LOSS OF CONTROL OF THE VEHICLE. WHEN THE AIR SUSPENSION FAILS IT ALSO DEACTIVATES THE ANTI-LOCK BRAKES MAKING THE VEHICLE UNSAFE TO DRIVE BECAUSE OF A LACK OF ABS CONTROL. THIS IS A PROBLEM THAT LAND ROVER IS AWARE OF AND ARE NOT MAKING ANY ATTEMPT TO ADDRESS. THIS IS A $1200.00-$1500.00 REPAIR FOR ONE SIDE (LEFT OR RIGHT) NOT BOTH FRONT AIR BAGS THAT SUPPORT THE FRONT OF THE VEHICLE. IF THIS CONCERNED IS RESEARCHED YOU WILL BE AMAZED AT THE NUMBER OF REPAIRS THAT ARE DONE AND PAID FOR BY RANGE ROVER OWNERS, BECAUSE THIS SAFETY ISSUE IS NOT REPORTED OR ADDRESSED. I AM EXPERIENCING THIS ISSUE NOW. *TR

- [2006 Range Rover] THE CONTACT OWNS A 2006 LAND ROVER. THE CONTACT STATES THAT WHEN DRIVING THE VEHICLE 55MPH ON THE FREEWAY THE VEHICLE STARTED GOING SLOW AND THEN FELT THE SUSPENSION DROP TO THE GROUND .ALL THE LIGHTS ILLUMINATED AND THE VEHICLE WENT TO THE SIDE. THEY HAD TOLD HER THAT HER SUSPENSION HAD A BIG DEFECT. THE DEALER TOLD HER TO CALL THE INSURANCE SO THAT IT WILL NOT BE REPORTED AS A DEFECT FROM THE MANUFACTURE.THE FAILURE AND CURRENT MILEAGE WAS 23000.

30.     The Air Suspension Defect poses an unreasonable safety risk for Class Members, as well as the drivers, passengers, and pedestrians sharing the road with Class Vehicles.   A vehicle's ability to balance weight properly while traveling, turning, and braking, to travel in a straight line, and to avoid dropping while in operation are each critical to the safe operation of a motor vehicle.   A defect that causes one or more of these negative characteristics clearly poses a safety hazard to the general public as well as the driver and occupants of the affected vehicles, and increases the risk of automobile collisions.

**B.     LAND ROVER HAS EXCLUSIVE KNOWLEDGE OF THE AIR SUSPENSION DEFECT**

31.     Land Rover had superior and exclusive knowledge of the Air Suspension Defect, and knew or should have known that the defect was not known or reasonably discoverable by Plaintiff and Class Members prior to their purchase or lease of the Class Vehicles.

32.     Plaintiff is informed and believes and based thereon alleges that before Plaintiff purchased and since 2003, if not before, Land Rover knew about the Air Suspension Defect through sources not available to consumers, including pre-release testing data, early consumer complaints about the Air Suspension Defect to Land Rover and its dealers, testing conducted in response to those complaints, high failure rates and replacement part sales data contained in its warranty database, aggregate data from Land Rover dealers, among other

internal sources of aggregate information about the problem.

33.     Moreover, it is indisputable that Defendant was aware of the Air Suspension Defect at the time Plaintiff purchased his vehicle, yet did not disclose the defect to the Plaintiff and also failed to repair the defect prior to selling him the vehicle.

34.     The existence of the Air Suspension Defect is a fact that would be considered material to a reasonable consumer deciding whether to purchase or lease a vehicle that was equipped with electronic air suspension.  Had Plaintiff and other Class Members known about the Air Suspension Defect while they were in the market for a vehicle, they would not have purchased the Class Vehicles equipped with the electronic air suspension or, at the very least, would have paid less for them to account for the need to monitor and repair the problem on an ongoing basis before the Air Suspension Defect becomes manifest.

35.     Reasonable consumers, like Plaintiff, expect and assume that a vehicle's suspension system is safe, will function in a manner that will not pose a safety hazard, and is free from defects.  Plaintiff and members of the proposed class also expect and assume that Land Rover will not sell or lease vehicles with known safety defects, such as the Air Suspension Defect, and will disclose any such defects to its consumers when it learns of them.  They did not expect Land Rover to conceal problems such as the Air Suspension Defect from them, to continually deny its existence, or that Land Rover would refuse to bear thousands of dollars of repair costs that become necessary to correct the problems resulting from defective electronic air suspension systems.

C.     LAND ROVER HAS ACTIVELY CONCEALED THE AIR SUSPENSION DEFECT

36.     Land Rover has been fully aware of the Air Suspension Defect in the Class Vehicles, but it has actively concealed the existence and nature of the defect from Plaintiff

and members of the proposed class at the time of purchase, lease or repair and thereafter. Specifically, Land Rover has failed to disclose or actively concealed at and after the time of purchase, lease, or repair:

(a) any and all known material defects or material nonconformity of the Class Vehicles, including the defects relating to the electronic air suspension;

(b) that the Class Vehicles, including their electronic air suspension, were not in good in working order, were defective, and were not fit for their intended purposes; and

(c) that the Class Vehicles and their electronic air suspension were defective, despite the fact that Land Rover learned of such defects through alarming failure rates, customer complaints, as well as through other internal sources, as early as 2003.

37. Land Rover has caused Plaintiff and Members of the Class to expend money at its dealerships to repair or replace the Class Vehicles' electronic air suspension components, despite Defendant's knowledge of the defect.

38. When consumers present the Class Vehicles to an authorized Land Rover dealer for repair of the electronic air suspension, consumers are typically told that they must pay for the repair.

39. To this day, Land Rover still has not notified Plaintiff and the Class Members that the Class Vehicles suffer from a systemic defect that causes the electronic air suspension to malfunction.

40. Land Rover has caused Plaintiff and Class Members to expend money at its dealerships to diagnose, repair or replace the Class Vehicles' electronic air suspension systems, despite Land Rover's knowledge of the Air Suspension Defect.

**D. PLAINTIFF'S EXPERIENCE WITH THE AIR SUSPENSION DEFECT**

41. On or about November 17, 2010 (less than two (2) months after Mr.

Majdipour purchased his vehicle), the Air Suspension Defect manifested in his 2006 model-year Range Rover, which suddenly dropped to one side while being driven, and suspension warning lights illuminated on the dashboard.    The mileage on the odometer was approximately 47,986.

42.    Shortly after this failure occurred, Mr. Majdipour had his vehicle towed to an authorized Land Rover dealer.  The dealer found a "leak at right front air spring."  The dealer replaced Mr. Majdipour's right front air spring and made various related repairs to the suspension system.  Fortunately, Mr. Majdipour's vehicle was covered by the Certified Pre-Owned Warranty, but was nonetheless forced to pay a $100 deductible before those repairs were covered by the warranty.  At no time during this repair was Plaintiff advised that this was a known systemic defect in the Class Vehicles they may manifest again.

43.    On or around April 6, 2012, with approximately 65,783 miles on the odometer, Mr. Majdipour's vehicle suddenly and without warning dropped to one side while being driven, thereby rendering it immobile and inoperable.

44.    Mr. Majdipour had his vehicle towed to an independent repair facility, where the mechanic found the left air spring leaking and failing to hold pressure.  The mechanic further found that the air spring would "collapse" upon the vehicle starting up, as well as while the vehicle was being driven.

45.    Ultimately, Mr. Majdipour's vehicle was repaired by a second mechanic who replaced both front air springs with aftermarket components specifically designed to address defects and deficiencies in the original Delphi components.  Mr. Majdipour had to pay $1,409.45 out of pocket for this repair.  At all times, Mr. Majdipour, like all Class Members, has driven his vehicle in a foreseeable manner and in the manner in which it was intended to

be used.

## **CLASS ACTION ALLEGATIONS**

46.     Plaintiffs bring this action on behalf of themselves, and on behalf of a nationwide class, pursuant to Fed. R. Civ. Pr. P. 23(a), 23(b)(2), and/or 23(b)(3); specifically, the following Class and Sub-Class:

> Nationwide Class:     All persons or entities in the United States who are current or former owners and/or lessees of a Class Vehicle (the "Nationwide Class").

> California Sub-Class:     All persons or entities in California who are current or former owners and/or lessees of a Class Vehicle (the "California Sub-Class").

47.     Excluded from the Nationwide Class and the California Sub-Class is Defendants, its affiliates, employees, officers and directors, persons or entities that purchased the Class Vehicles for resale, and the Judge(s) assigned to this case.  Plaintiff reserves the right to modify the Nationwide Class and California Sub-Class definitions if discovery and/or further investigation reveal that they should be expanded or otherwise modified.

48.     There is a well-defined community of interest in the litigation and the Class is readily ascertainable.

49.     Numerosity: Although the exact number of Class Members is uncertain and can only be ascertained through appropriate discovery, the number is great enough such that joinder is impracticable.  The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court.  The Class Members are readily identifiable from information and records in Defendant's possession, custody, or control, as well as from records kept by the Departments of Motor Vehicles.

50.     Typicality: The claims of the representative Plaintiff are typical of the claims of the Class in that the representative Plaintiff, like all Class Members, purchased and leased

a Class Vehicle designed and distributed by Land Rover, and equipped with electronic air suspension. The representative Plaintiff, like all Class Members, has been damaged by Defendant's misconduct in that he has incurred or will incur the cost of repairing or replacing the defective electronic air suspension. Furthermore, the factual bases of Land Rover's misconduct are common to all Class Members and represent a common thread resulting in injury to all Class Members.

51. <u>Commonality</u>: There are numerous questions of law and fact common to Plaintiff and the Class that predominate over any question affecting only individual Class Members. These common legal and factual issues include the following:

(A) Whether class vehicles suffer from defects relating to the electronic air suspension;

(B) Whether the defects relating to the electronic air suspension constitutes an unreasonable safety risk;

(C) Whether defendant knows about the defects relating to the electronic air suspension and, if so, how long defendant has known of the defect;

(D) Whether the defective nature of the electronic air suspension constitutes a material fact;

(E) Whether defendant has a duty to disclose the defective nature of the electronic air suspension to plaintiff and class members;

(F) Whether plaintiff and the other class members are entitled to equitable relief, including but not limited to a preliminary and/or permanent injunction;

(G) Whether defendant knew or reasonably should have known of the defects relating to the electronic air suspension before it sold and leased class vehicles to class members;

(H) Whether defendant should be declared financially responsible for notifying all class members of the problems with the class vehicles and for the costs and expenses of repairing and replacing the defective electronic air suspension;

(I) Whether defendant is obligated to inform class members of their right to seek reimbursement for having paid to diagnose, repair, or replace their

defective electronic air suspension;

(J)     Whether defendant's conduct violates the New Jersey Consumer Fraud Act and the other statutes asserted herein;

(K)     Whether defendant breached the implied warranty of merchantability pursuant to the Song-Beverly Act.

(L)     Whether defendant's conduct violates the California Legal Remedies Act;

(M)     Whether defendant's conduct violates California's Secret Warranty Law;

(N)     Whether, as a result of defendant's omissions and/or misrepresentations of material facts related to the Air Suspension Defect, plaintiff and class members have suffered ascertainable loss of moneys, property, and/or value; and

(O)     Whether plaintiff and class members are entitled to monetary damages and/or other remedies, and if so the nature of any such relief.

52.     <u>Adequacy</u>:  Plaintiff will fairly and adequately protect the interests of the Class Members.  Plaintiff has retained attorneys experienced in the prosecution of class actions, including consumer and product defect class actions, and Plaintiff intends to prosecute this action vigorously.

53.     Plaintiff and the Class Members have all suffered and will continue to suffer harm and damages as a result of Defendant's unlawful and wrongful conduct.  A class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law.  Because of the relatively small size of the individual Class Members' claims, it is likely that only a few Class Members could afford to seek legal redress for Defendant's misconduct.  Absent a class action, Class Members will continue to incur damages, and Defendant's misconduct will continue without remedy.   Class treatment of common

questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants and will promote consistency and efficiency of adjudication.

54.     In the alternative, the Class may be certified because:

(A)     The prosecution of separate actions by the individual members of the class would create a risk of inconsistent or varying adjudication with respect to individual class members, which would establish incompatible standards of conduct for land rover;

(B)     The prosecution of separate actions by individual class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and

(C)     Land rover has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final and injunctive relief with respect to the members of the class as a whole.

## **VIOLATIONS ALLEGED**

### **COUNT I**
### **VIOLATION OF THE NJCFA**
### **(On Behalf of the Nationwide Class)**

55.     Plaintiff and the Nationwide Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

56.     The NJCFA protects consumers against "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise . . . ." N.J.S.A. 56:8-2.

57.     Plaintiff and Class Members are consumers who purchased and/or leased Class Vehicles for personal, family, or household use.

58.     Defendant engaged in unlawful conduct, made affirmative misrepresentations, or otherwise violated the NJCFA.  Specifically, Defendant was aware that the Class Vehicles suffered from a common defect resulting in failure of the air suspension system in the Class Vehicles, but purposefully failed to disclose this to Plaintiff and Class Members during the purchase of the vehicle or thereafter.  Defendant failed to disclose the Air Suspension Defect with the knowledge that many Class Members may not discover the Air Suspension Defect until after the expiration of their warranties.   Further, Defendant marketed these luxury vehicles as being of superior quality when the Class Vehicles contained a known defect.

59.     Defendant also engaged in unlawful conduct in violation of the NJCFA by making knowing and intentional omissions.  Defendant purposefully and knowingly failed to disclose the Air Suspension Defect in the Class Vehicles in order to secure the sale of these vehicles at a premium price and also to mislead owners during the limited warranty period to avoid having to perform their contractual duties under the warranty.

60.     Defendant did not fully and truthfully disclose to its customers the true nature of the inherent defect in the air suspension system, which was not readily discoverable until years later, sometimes after the warranty has expired.  In fact, on the date Plaintiff purchased his vehicle, Defendant had acknowledged the defect to its dealers years earlier and described how to remedy the defect, and yet Plaintiff's vehicle was never modified and he was never advised about the defect.

61.     Defendant intended that Plaintiff and all Class Members rely on the acts of concealment and omissions, so that they would purchase the Class Vehicles and not have the defects remedied under warranty.

62.     As a result of Defendant's conduct, Plaintiffs and Class Members have suffered

an ascertainable loss.  In addition to direct monetary losses which can be thousands of dollars, Plaintiff and Class Members have also suffered an ascertainable loss by receiving less than what was promised.

63.     A causal relationship exists between Defendant's unlawful conduct and the ascertainable losses suffered by Plaintiff and the Class Members.  Had the Air Suspension Defect in the Class Vehicles been disclosed, consumers would not have purchased them, would have paid less for the Class Vehicles had they decided to purchase them, or would have presented their vehicles for repair of the Air Suspension Defect under warranty.

**COUNT II**
**BREACH OF EXPRESS WARRANTY**
**(On Behalf of the Nationwide Class or,**
**Alternatively, the California Sub-Class)**

64.     Plaintiff and the Classes incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

65.     Land Rover expressly warranted that the Class Vehicles were of high quality and, at a minimum, would actually work properly.  Land Rover also expressly warranted that they would repair and/or replace defects in material and/or workmanship free of charge if they manifested during the warranty period.

66.     Land Rover breached this warranty by selling to Plaintiff and Class Members the Class Vehicles with known defects, including but not limited to the Air Suspension Defect.

67.     Defendant further breached this warranty by failing to repair and/or replace Plaintiff's and other putative Class Members' air suspension systems while the vehicles were still under warranty.

68.     Land Rover knew of the aforesaid defects by early 2003, if not before, and continues to have knowledge of the Air Suspension Defect and breaches of its express

warranty, yet has intentionally failed to notify Plaintiff and Class Members.

69.     This intended failure to disclose the known Air Suspension Defect is malicious, and was carried out with willful and wanton disregard for the rights and economic interests of Plaintiff and Class Members.

70.     As a result of defendant's actions, Plaintiff and Class Members have suffered economic damages including but not limited to costly repairs, loss of use of the vehicles, substantial loss in value and resale value of the vehicles, and other damage.

71.     Land Rover's attempt to disclaim or limit these express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here.  Specifically, defendant's warranty limitation is unenforceable because they knowingly sold a defective product without informing consumers about the defect and purposefully concealed the defect until such time that the Class Vehicles were out of warranty.

72.     The time limits contained in defendant's warranty period were also unconscionable and inadequate to protect Plaintiff and Class Members.  Among other things, Plaintiff and Class Members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Land Rover.  A gross disparity in bargaining power existed between defendant and Class Members, and Land Rover knew or should have known that the Class Vehicles were defective at the time of sale and would fail well before their useful lives.

73.     Plaintiff and Class Members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of defendant's conduct described herein.

**COUNT III**
**COMMON LAW FRAUD**
**(On Behalf of the Nationwide Class or,**
**Alternatively, the California Sub-Class)**

74.     Plaintiff and the Classes incorporate by reference each proceeding and succeeding paragraph as though fully set forth at length herein.

75.     Defendant made material misrepresentations and omissions concerning a presently existing or past fact.  For example, Defendant did not fully and truthfully disclose to its customers the true nature of the Air Suspension Defect in the Class Vehicles, which was not readily discoverable until years later, sometimes after the warranty has expired.  As a result, Plaintiff and the other Class Members were fraudulently induced to lease and/or purchase the Class Vehicles with the said defects and all of the resultant problems, and also not present their vehicles to an authorized repair facility during the warranty period to have the defect remedied at no cost.

76.     These omissions and statements were made by Defendant with knowledge of their falsity, and with the intent that Plaintiff and Class Members rely on them.

77.     Plaintiff and Class Members reasonably relied on these statements and omissions, and suffered damages as a result.

**COUNT IV**
**BREACH OF THE DUTY OF GOOD FAITH**
**AND FAIR DEALING**
**(On Behalf of the Nationwide Class or,**
**Alternatively, the California Sub-Class)**

78.     Plaintiff and the Classes incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

79.     Every contract in New Jersey contains an implied covenant of good faith and fair dealing.  The implied covenant of good faith and fair dealing is an independent duty and

may be breached even if there is no breach of a contract's express terms.

80.    Defendant breached the covenant of good faith and fair dealing by, *inter alia*, failing to notify Plaintiff and Class Members of the Air Suspension Defect in the Class Vehicles, and failing to fully and properly repair this defect.

81.    Defendant acted in bad faith and/or with a malicious motive to deny Plaintiff and Class Members some benefit of the bargain originally intended by the parties, thereby causing them injuries in an amount to be determined at trial.

**COUNT V**
**UNJUST ENRICHMENT**
**(On Behalf of the Nationwide Class or,**
**Alternatively, the California Sub-Class)**

82.    Plaintiff and the Nationwide Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

83.    As a direct and proximate result of Defendant's failure to disclose known defects and material misrepresentations regarding known defects, and the scope of the Warranty coverage in the Class Vehicles, Land Rover has profited through the sale and lease of said vehicles.

84.    Additionally, as a direct and proximate result of defendant's failure to disclose known defects and material misrepresentations regarding known defects in the Class Vehicles, Plaintiff and members of the Class Members have incurred substantial costs to repair the defects and therefore have conferred an unjust substantial benefit upon Land Rover.

85.    Moreover, as a direct and proximate result of defendant's failure to disclose known defects and material misrepresentations regarding known defects in the Class Vehicles, Land Rover has profited to the extent that Plaintiff and Class Members purchased and leased Defendant's vehicles, purchased certified parts directly from the defendant to repair the

defects, and had to pay for repairs out of their own pocket that should have been covered under warranty.

86.     Land Rover has therefore been unjustly enriched due to the known defects in the Class Vehicles through the use of funds that earned interest or otherwise added to defendant's profits when said money should have remained with Plaintiff and Class Members.

87.     As a result of the defendant's unjust enrichment, Plaintiff and Class Members have suffered damages.

**COUNT VI**
**BREACH OF THE IMPLIED**
**WARRANTY OF MERCHANTABILITY**
**(On Behalf of the California Sub-Class, Pursuant to the**
**Song-Beverly Act California Civil Code Section 1791.1)**

88.     Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

89.     Plaintiff brings this cause of action against Defendant on behalf of himself and on behalf of the members of the proposed class.

90.     Defendant was at all relevant times the manufacturer, distributor, warrantor, and/or seller of the Class Vehicles.  Defendant knew or had reason to know of the specific use for which the Class Vehicles were purchased.

91.     Defendant provided Plaintiff and Class Members with an implied warranty that the Class Vehicles and any parts thereof are merchantable and fit for the ordinary purposes for which they were sold.  However, the Class Vehicles are not fit for their ordinary purpose of providing reasonably reliable and safe transportation because, *inter alia*, the Class Vehicles and their electronic air suspension suffered from an inherent defect at the time of sale and thereafter are not fit for their particular purpose of providing safe and reliable transportation.

92.     Defendant impliedly warranted that the Class Vehicles were of merchantable quality and fit for such use.  This implied warranty included, among other things: (i) a warranty that the Class Vehicles and their electronic air suspensions were manufactured, supplied, distributed, and/or sold by Land Rover were safe and reliable for providing transportation; and (ii) a warranty that the Class Vehicles and their electronic air suspensions would be fit for their intended use while the Class Vehicles were being operated.

93.     Contrary to the applicable implied warranties, the Class Vehicles and their electronic air suspensions at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiff and the Class Members with reliable, durable, and safe transportation.  Instead, the Class Vehicles are defective, including but not limited to the defective design and manufacture of their electronic air suspensions.

94.     Defendant's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use in violation of California Civil Code §§ 1792 and 1791.1.

**COUNT VII**
**Violation of California's Consumer Legal Remedies Act,**
**California Civil Code section 1750 *et seq*.**
**(On Behalf of the California Sub-Class)**

95.     Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

96.     Plaintiff brings this cause of action on behalf of himself and on behalf of the members of the California Sub-Class.

97.     Defendant is a "person" as defined by California Civil Code § 1761(c).

98.     Plaintiff and Class Members are "consumers" within the meaning of California Civil Code § 1761(d).

99.     By failing to disclose and concealing the defective nature of the Class Vehicles' electronic air suspension from Plaintiff and prospective Class Members, Defendant violated California Civil Code § 1770(a), as it represented that the Class Vehicles and their electronic air suspension had characteristics and benefits that they do not have, and represented that the Class Vehicles and their electronic air suspension were of a particular standard, quality, or grade when they were of another.  *See* Cal. Civ. Code §§ 1770(a)(5) & (7).

100.     Defendant's unfair and deceptive acts or practices occurred repeatedly in Defendant's trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

101.     Defendant knew that the Class Vehicles and their electronic air suspension suffered from an inherent defect, were defectively designed or manufactured, would fail prematurely, and were not suitable for their intended use.

102.     Defendant was under a duty to Plaintiff and the Class Members to disclose the defective nature of the electronic air suspension and/or the associated repair costs because:

    a.  Defendant was in a superior position to know the true state of facts about the safety defect in the Class Vehicles' electronic air suspension;

    b.  Plaintiff and the Class Members could not reasonably have been expected to learn or discover that their electronic air suspension had a dangerous safety defect until manifestation of failure; and

    c.  Defendant knew that Plaintiff and the Class Members could not reasonably have been expected to learn or discover the safety defect.

103.     In failing to disclose the defective nature of the electronic air suspension, Defendant has knowingly and intentionally concealed material facts and breached its duty not to do so.

104.    The facts concealed or not disclosed by Defendant to Plaintiff and the Class Members are material in that a reasonable consumer would have considered them to be important in deciding whether or not to purchase the Class Vehicles or pay a lesser price. Had Plaintiff and other Class Members known that the Class Vehicles' electronic air suspension was defective, they would not have purchased the Class Vehicles or would have paid less for them.

105.    Plaintiff and the Class Members are reasonable consumers who do not expect the electronic air suspension installed in their vehicles to fail prematurely.  This is the reasonable and objective consumer expectation relating to vehicle suspension.

106.    As a result of Defendant's conduct, Plaintiff and Class Members have been harmed and have suffered actual damages in that the Class Vehicles have experienced and will continue to experience premature electronic air suspension failures.

107.    As a direct and proximate result of Defendant's unfair or deceptive acts or practices, Plaintiff and Class Members have suffered and will continue to suffer actual damages.

108.    Plaintiff and the Class are entitled to equitable relief.

109.    Plaintiff provided Defendant with notice of its alleged violations of the CLRA pursuant to California Civil Code § 1782(a).  If, within 30 days, Defendant fails to provide appropriate relief for their violations of the CLRA, Plaintiff will amend this Complaint to seek monetary, compensatory, and punitive damages, in addition to the injunctive and equitable relief that he seeks now.

### COUNT VIII
**Violation of California Business & Professions Code § 17200, *et seq.***
**(On Behalf of the California Sub-Class)**

110.    Plaintiff hereby incorporates by reference the allegations contained in the

preceding paragraphs of this Complaint.

111.    Plaintiff brings this cause of action on behalf of himself and on behalf of all Class Members.

112.    California Business & Professions Code § 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

113.    Plaintiff and the Class Members are reasonable consumers who do not expect their electronic air suspension to prematurely fail.

114.    Defendant knew the Class Vehicles and their electronic air suspension suffered from inherent defects, were defectively designed or manufactured, would fail prematurely, and were not suitable for their intended use.

115.    In failing to disclose the defects with the electronic air suspension, Defendant has knowingly and intentionally concealed material facts and breached their duty not to do so.

116.    Defendant was under a duty to Plaintiff and the Class Members to disclose the defective nature of the Class Vehicles and their electronic air suspension:

    a.  Defendant was in a superior position to know the true state of facts about the safety defect in the Class Vehicles' electronic air suspensions;

    b.  Defendant made partial disclosures about the quality of the Class Vehicles without revealing the defective nature of the Class Vehicles and their electronic air suspensions; and

    c.  Defendant actively concealed the defective nature of the Class Vehicles and their electronic air suspensions from Plaintiff and the Class.

117.    The facts concealed or not disclosed by Defendant to Plaintiff and the Class Members are material in that a reasonable person would have considered them to be important in deciding whether to purchase Class Vehicles.  Had Plaintiff and other Class Members known that the Class Vehicles' electronic air suspensions were defective and posed

a safety hazard, then Plaintiff and the other Class Members would not have purchased Class Vehicles equipped with electronic air suspensions, or would have paid less for them.

118.    Defendant continued to conceal the defective nature of the Class Vehicles and their electronic air suspensions even after Class Members began to report problems.  Indeed, Defendant continues to cover up and conceal the true nature of the problem.

119.    By its conduct, Defendant has engaged in unfair competition and unlawful, unfair, and fraudulent business practices.

120.    Defendant's unfair or deceptive acts or practices occurred repeatedly in Defendant's trade or business, and were capable of deceiving a substantial portion of the purchasing public.

121.    As a direct and proximate result of Defendant's unfair and deceptive practices, Plaintiff and the Class have suffered and will continue to suffer actual damages.

122.    Defendant has been unjustly enriched and should be required to make restitution to Plaintiff and the Class pursuant to §§ 17203 and 17204 of the Business & Professions Code.

## COUNT IX
## INJUNCTIVE RELIEF

179.    Plaintiff and the Classes incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

180.    Injunctive relief is appropriate and necessary to remedy Defendant's wrongful conduct and to prevent Land Rover from continuing its wrongful conduct.

**P**

**<u>RAYER FOR RELIEF</u>**

WHEREFORE, Plaintiff, on behalf of himself and members of the Class, respectfully requests that this Court:

a.    An order certifying the proposed Class and  Sub-Classes, designating Plaintiff as named representative of the Class, and designating the undersigned as Class Counsel;

b.    A declaration that Defendant is financially responsible for notifying all Class Members about the defective nature of the electronic air suspension, including the need for period maintenance;

c.    An order enjoining Defendant from further deceptive distribution, sales, and lease practices with respect to Class Vehicles, and to remove and replace Plaintiff and Class Members' electronic air suspensions with a suitable alternative product;

d.    A declaration requiring Defendant to comply with the various provisions of the Song-Beverly Act alleged herein and to make all the required disclosures;

e.    An award to Plaintiff and the Class for compensatory, exemplary, and statutory damages, including interest, in an amount to be proven at trial, except that for now, Plaintiff seeks only equitable and injunctive relief with respect to his claims under California's Consumer Legal Remedies Act, California Civil Code section 1750 *et seq*.;

f.    Any and all remedies provided pursuant to the Song-Beverly Act, including California Civil Code section 1794;

g.    A declaration that Defendant must disgorge, for the benefit of the Class, all or part of the ill-gotten profits it received from the sale or lease of its Class Vehicles, or make full restitution to Plaintiff and Class Members;

h.    An award of attorneys' fees and costs, as allowed by law;

i.    n award of attorneys fees and costs pursuant to California Code of Civil Procedure § 1021.5;

j.    An award of pre-judgment and post-judgment interest, as provided by law;

k.    Leave to amend the Complaint to conform to the evidence produced at trial; and

l.    Such other relief as may be appropriate under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all claims and issues so triable.

Dated:  December 26, 2012

By:     _____

Matthew Mendelsohn
**MAZIE SLATER KATZ & FREEMAN, LLC**
103 Eisenhower Parkway
Roseland, New Jersey 07068
Telephone:  (973) 228-9898
Facsimile: (973) 228-0303
e-mail: mmendelsohn@mskf.net

## LOCAL CIVIL RULE 11.2 CERTIFICATION

I hereby further certify that to the best of my knowledge, the matter in controversy is not the subject of any other action pending in any court or of any pending arbitration or administrative proceeding.

MAZIE SLATER KATZ & FREEMAN, LLC
Attorneys for Plaintiffs

_____
MATTHEW R. MENDELSOHN

Dated:  December 26, 2012