Matthew R. Mendelsohn
**MAZIE SLATER KATZ & FREEMAN, LLC**
103 Eisenhower Parkway
Roseland, NJ 07068
Telephone: (973) 228-9898
Facsimile: (973) 228-0303

Payam Shahian (pending the filing and approval of Pro Hac Vice Application)
pshahian@slpattorney.com
**STRATEGIC LEGAL PRACTICES, APC**
1875 Century Park East, Suite 700
Los Angeles, California 90067
Telephone:     (310) 277-1040
Facsimile:     (310) 943-3838

*Attorneys for Plaintiffs and Putative Class*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SIMON MAJDIPOUR and PAMELA AUSTIN, individually, and on behalf of a class of similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>JAGUAR LAND ROVER NORTH AMERICA, LLC and JAGUAR LAND ROVER AUTOMOTIVE, PLC,<br><br>Defendants. | No.: 2:12-cv-7849-WHW-CLW<br><br><br>**FIRST AMENDED CLASS ACTION COMPLAINT AND JURY TRIAL DEMAND** |

Plaintiffs Simon Majdipour and Pamela Austin, bring this action against Defendants Jaguar Land Rover North America, LLC ("Land Rover NA") and Jaguar Land Rover, PLC, ("Land Rover PLC") (collectively referred to as "Defendants" or "Land Rover") by and through their attorneys, individually and behalf of all others similarly situated ("Class Members"), and allege as follows:

# INTRODUCTION

1.      From the 2003 through the 2006 model years, Defendants sold Range Rover sport utility vehicles equipped with electronic air suspension systems that are defective in material, manufacturing and/or design which causes them to develop leaks in the rubber air bellows used in those systems ("Defect" or "Air Suspension Defect").

2.      The defect—which can manifest at any time, at any speed, and under any driving condition—causes a loss of air pressure in the suspension system that renders Class Vehicles suddenly unable to travel in a straight line, which poses a serious risk of injury and death. [1]   In addition to sudden and unexpected breakdowns that can force Class Vehicles to be stranded in the road, the Defect can cause the driver to lose control while the vehicle is in motion.

3.      Plaintiffs Simon Majdipour and Pamela Austin, who own  2006 model-year Class Vehicles, are informed and believe that Land Rover knew or should have known about the Defect since 2003.  Nevertheless, Land Rover failed to disclose the Defect to prospective class members at the time of sale or lease and thereafter.

4.      Indeed, Plaintiffs are informed and believe and based thereon allege that as the number of complaints about the Defect increased, in or about August 2006, Land Rover quietly acknowledged the existence of the Defect to only their dealers in a Technical Service Bulletin ("TSB"). (The TSB is attached this Complaint at Exhibit "A.")   In that TSB Defendants concede that certain Class Vehicles (through model year 2004), "may develop hairline cracks in the rubber material of the front air spring."  To remedy this problem, the

---

[1] Indeed, during her ownership of the subject 2006 Land Rover, Ms. Austin has on more than one occasion experienced the illumination of the subject vehicle's "Suspension Fault Max Speed 30 MPH" message which according to the owner manual is "A major fault [that] has been detected in the air suspension system and it is unable to control the height correctly" and that the driver must "drive slowly until it is repaired."

TSB instructs dealers to perform a "leak" test and to replace the defective suspension parts with a replacement air spring that has an "upgraded spring material."

5.      However, while Defendants issued this TSB to their dealers and only identified Class Vehicles up to the 2004 model years as being affected, Plaintiffs allege that all the Class Vehicles suffer from the Defect described in the TSB.

6.      Moreover, the "upgraded spring materials" referenced in the TSB suffer from same Defect alleged herein and Plaintiffs are informed believe and thereon allege that Land Rover implemented this temporary fix to prolong the amount of time that will elapse before the Class Vehicles again experience the Defect alleged herein, thus helping ensure that the Defect occurs outside of the express warranty period so that Land Rover can easily and unfairly shift financial responsibility for the Defect to class members.

7.      Nonetheless, contrary to their obligations under clearly-established law, Land Rover distributed and sold Class Vehicles to unsuspecting consumers without notifying them that the Defect even existed, much less offer to repair the resulting problems without cost to the owner if the problem manifested itself outside of the Class Vehicles' limited 4 year/50,000 mile warranty, as Land Rover knew it would.  Consequently, Plaintiffs and members of the proposed class have been—and continue to be—exposed to a serious safety hazard and continue to bear the cost of repairs necessitated by the Defect on their own.

8.      Accordingly, Plaintiffs bring this action individually and on behalf of all other individuals who owned or leased a Class Vehicle for the purpose of requiring Land Rover to (1) notify all members of the proposed class of the nature and impact of the Defect, (2) reimburse proposed class members who have paid to fix the Defect, and (3) repair the Defect free of charge for those proposed class members who have yet to experience the defect, and for

compensatory, statutory, and punitive damages.

**JURISDICTION AND VENUE**

9.     This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. §§1332(d)(2) and (6) of the Class Action Fairness Act of 2005 because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and one defendant are citizens of different states.  This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

10.     Venue is proper in this judicial district pursuant to 28 U.S.C. §1391 because Defendant Land Rover NA has its North American headquarters in this jurisdiction, transacts business in this district, is subject to personal jurisdiction in this district, and therefore is deemed to be a citizen of this district.  Additionally, Defendants have advertised in this district and have received substantial revenue and profits from their sales and/or leasing of Class Vehicles in this district; therefore, a substantial part of the events and/or omissions giving rise to the claims occurred, in part, within this district.

11.     This Court has personal jurisdiction over Land Rover.  Defendant's North American corporate headquarters is located in Mahwah, New Jersey.  As such, Defendants have conducted substantial business in this judicial district, and intentionally and purposefully placed Class Vehicles into the stream of commerce within the districts of New Jersey and throughout the United States.

**NEW JERSEY LAW SHOULD APPLY**

12.     To the extent that it is appropriate to engage in a choice of law analysis for purposes of deciding any motion to dismiss that may be filed by Land Rover, New Jersey's

substantive laws should apply to the proposed nationwide Class, as defined herein, because Plaintiffs properly bring this Complaint in this District.

13.     New Jersey's substantive laws may be constitutionally applied to the claims of Plaintiffs and the Class Members under the Due Process Clause, 14th Amendment, § 1, and the Full Faith and Credit Clause, Art. IV., § 1, of the U.S. Constitution.  New Jersey has significant contact, or significant aggregation of contacts, to the claims asserted by Plaintiffs and all Class Members, thereby creating state interests that ensure that the choice of New Jersey state law is not arbitrary or unfair.

14.     Specifically,   Land Rover NA's North American headquarters and principal place of business is located in New Jersey.  Defendant Land Rover NA is registered with the New Jersey State Business Gateway Service.  And according to its website, Land Rover NA's Customer Relationship Center is located in Mahwah, New Jersey.[2]

15.     Land Rover NA also own property and conduct substantial business in New Jersey and, therefore, New Jersey has an interest in regulating Defendant's conduct under its laws.  Land Rover NA's decision to reside in New Jersey and avail themselves of New Jersey's laws renders the application of New Jersey law to the claims herein constitutionally permissible.

16.     A substantial number of Class Members also reside in New Jersey and purchased their vehicles in New Jersey.

17.     Upon information and belief, New Jersey is also the state from which Defendants' misconduct emanated.  This conduct similarly injured and affected Plaintiffs and all Class Members residing in the United States.  For instance, Land Rover NA's marketing

---

[2] http://www.landrover.com/us/en/lr/contact-us/contact-us/

and advertising efforts, warranty and goodwill policies and procedures, and maintenance schedules and recommendations were all likely created in and orchestrated from the location of Land Rover NA's present headquarters in New Jersey.  As a result, New Jersey is where the conduct causing injury to the Plaintiffs and Class Members occurred and from where it emanated.

18.    The application of New Jersey's laws to the Nationwide Class is also appropriate under New Jersey's choice of law rules because New Jersey has significant contacts to the claims of the Plaintiff sand the proposed Nationwide Class, and New Jersey has a greater interest in applying its laws here than any other interested state.

## THE PARTIES

19.    Plaintiffs Simon Majdipour and Pamela Austin are California citizen who purchased a 2006 Range Rover primarily for his personal, family, or household purposes.

20.    Defendant Land Rover NA is an automobile design, marketing, sale, leasing, distribution, servicing and warranting Limited Liability Company that maintains its headquarters and principle place of business in Mahwah, New Jersey.  This entity was created in connection with the sale by Ford Motor Company of all Land Rover branded business entities to Tata Motors Limited.  Land Rover NA is a subsidiary of Defendant Land Rover PLC, a United Kingdom public limited company which, in turn, is a subsidiary of Tata Motors, a business entity of the Republic of India.  Land Rover NA was formerly known as Land Rover North America, Inc. and is the successor in interest to Land Rover North America, Inc.  Land Rover PLC designs, develops, manufactures and distributes vehicles bearing the Jaguar and Land Rover and Range Rover marquees, including the Class Vehicles, in United States and worldwide.

21.    At all times relevant herein,  Defendant Land Rover NA was engaged in the

business of importing, distributing[3], selling, leasing, servicing, repairing, marketing and warranting automobiles in New Jersey and throughout the United States of America.

22.     At all times relevant herein, Defendant Land Rover PLC was engaged in the business of designing, manufacturing, shipping and marketing automobiles intended for sale and/or lease in New Jersey and throughout the United States of America.

## TOLLING OF STATUTES OF LIMITATION

23.     Because the Defect cannot be detected until after it manifests, Plaintiffs and the members of the proposed class were not reasonably able to discover the problem until after purchasing or leasing the Class Vehicles, despite their exercise of due diligence.

24.     Plaintiffs and the members of the proposed class had no realistic ability to discern that the electronic air suspension was defective until their vehicles prematurely failed.  Therefore, the discovery rule is applicable to the claims asserted by Plaintiffs and the members of the proposed class.

25.     Plaintiffs are informed and believe and based thereon allege that Land Rover has known of the Defect at least since 2003 and has concealed from or failed to alert owners and lessees of the Class Vehicles of the defective nature of their electronic air suspension.

26.     Any applicable statute of limitation has therefore been tolled by Land Rover's knowledge, active concealment, and denial of the facts alleged herein.  Land Rover is further estopped from relying on any statute of limitation because of their concealment of the defective nature of the Class Vehicles and their electronic air suspension.

## FACTUAL ALLEGATIONS

27.     Land Rover brought model year 2003 Class Vehicles to market in 2002 and

---

[3] Land Rover NA distributed the Class Vehicles to Land Rover authorized dealers throughout the United States.  These dealers subsequently sold the Class Vehicles to prospective Class Members in the United States.

continued selling them to prospective class members through the 2006 model year without disclosing the existence, nature, or scope of the Defect.  This Defect causes the suspension system's rubber air bellows (also referred to as "air bags") to develop leaks, releasing air pressure and losing their ability to properly hold the vehicle's weight.  As a result of this failure, the Defect creates a serious safety hazard, including the sudden loss of suspension on one side of the vehicle (rendering it lopsided while it is in motion), a loss of handling and the consequent inability to steer the vehicle in a straight line.

28.   As alleged more fully below, Plaintiffs experienced the Defect on several occasions.

29.   Plaintiffs are informed and believe that Land Rover has been aware of the Defect since at least as early as 2003.  Despite the obvious safety risk that it posed, however, Land Rover failed and refused to disclose the existence, nature, or scope of the Defect to Plaintiffs, to the members of the proposed class, or to any other purchaser of an affected Range Rover throughout the United States.  As a result of this failure, Plaintiffs and the proposed class have been put at risk of a looming safety hazard without knowing it, and have been forced to bear the cost of repairs that become necessary when the Defect manifests.

A.   **THE DEFECT POSES A SAFETY HAZARD AND IS EXPENSIVE TO FIX**

30.   Plaintiffs are informed and believe that the Class Vehicles have experienced the Defect in use thereby creating a safety hazard.  These failures often result in the vehicles suddenly dropping while being driven, sitting unevenly and leaning to one side, and/or to suddenly losing the ability to travel in a straight line.

31.   As reflected by complaints to the National Highway Traffic Safety Administration ("NHTSA") and on the internet, an extraordinary number of purchasers and

lessees of the Class Vehicles have experienced problems with the electronic air suspension as a result of the Defect.  Those complaints reveal that the Defect is widespread and dangerous and that it manifests without warning.

32.     The Defect is also expensive to fix.  Plaintiffs are informed and believe that repair costs can be as high as $2,500, depending on the replacement parts that are utilized. For instance, in or around April 2012, Plaintiff Majdipour paid approximately $1,400 to repair the defect using replacement parts manufactured by a third-party.

33.     The complaints also indicate Land Rover's awareness of the problems with the electronic air suspension, the costs associated with the necessary repairs, and how potentially dangerous the defective condition is for consumers.   The following are examples of consumer safety complaints on the internet or to NHTSA that have been posted on its website concerning the Defect which relate to electronic air suspension failure (spelling and grammar mistakes remain as found in the original) (Safecar.gov, *Search for Complaints* (August 14, 2012), http://www-odi.nhtsa.dot.gov/complaints/):

- <u>NHTSA COMPLAINT</u>: I HAVE A 2003, RANGE ROVER HSE. THE AIR SUSPENSION INACTIVE WARNING LIGHT ILLUMINATED AND THE WHEELS SHOOK. I TOOK THE VEHICLE IN (12/29/08). THEY COULD NOT FIND THE PROBLEM AND SUGGESTED AN ALIGNMENT. I GOT THE ALIGNMENT AND THEY CLEARED THE WARNING LIGHT (1/2/09). I LEFT AND NOTICED THE VEHICLE STILL FELT OUT OF ALIGNED. LATER THE WARNING LIGHT (AIR SUSPENSION INACTIVE) CAME ON ONCE AGAIN (1/15/09). THIS TIME THE LEFT FRONT WHEEL FAILED TO RAISE UP. I BROUGHT THE VEHICLE BACK IN. THIS TIME THEY TOLD ME THE AIR  SUSPENSION WAS LEAKING AND NEEDED TO BE REPLACED. IT COST ME $2900 (1/22/09). I TOOK THE VEHICLE HOME AND NOTICED THE VEHICLE WHEELS STILL SHOOK. I REPORTED THE PROBLEM BUT REFUSED TO BRING THE VEHICLE BACK IN. RECENTLY, THE WARNING LIGHT (AIR SUSPENSION INACTIVE) ILLUMINATED ONCE AGAIN AND NONE OF THE WHEELS WOULD RAISE (2/22/09). I HAD THE VEHICLE CHECKED AGAIN AND WAS TOLD IT WAS NEVER ALIGNED AND THE WHEELS WERE NOT BALANCED. I HAD THE

VEHICLE ALIGNED AND THE WHEELS BALANCED. THE VEHICLE IS AGAIN OUT OF ALIGNMENT AND THE WHEELS SHAKE. I DO NOT WANT TO GET RIPPED OFF AGAIN, SO THE VEHICLE REMAINS IN MY GARAGE. *TR

- NHTSA COMPLAINT: THE CONTACT OWNS A 2003 LAND ROVER RANGE ROVER. THE CONTACT HAS EXPERIENCED MULTIPLE FAILURES WITH THE VEHICLE SINCE THE TIME OF PURCHASE. WHENEVER SHE TURNED ON THE VEHICLE, THE ENGINE INDICATOR ILLUMINATED ON THE INSTRUMENT PANEL, WHICH STATED "COOLING TEMPERATURE". WHEN THE CONTACT ADDED WATER, IT WOULD LEAK OUT. THE CONTACT EVENTUALLY TOOK THE VEHICLE TO THE SHOP AND THEY STATED THAT THE RADIATOR WAS LEAKING. THE DEALER STATED THAT THE ISSUE WAS RESOLVED, BUT THE SUSPENSION WOULD CAUSE THE VEHICLE TO LEAN TO THE LEFT. THE VEHICLE COULD NOT DRIVE FORWARD IN A STRAIGHT LINE. THE DEALER STATED THAT AN AIR BAG LEAK CAUSED THE SUSPENSION TO MALFUNCTION. THE DEALER REPAIRED THE VEHICLE, BUT THE FAILURE RECURRED A YEAR LATER ON THE OTHER SIDE. THE VEHICLE IS CURRENTLY IN THE SHOP FOR A SUSPENSION ISSUE. THE CONTACT BELIEVES THAT HER 2003 VEHICLE SHOULD NOT BE EXPERIENCING SO MANY FAILURES. THE FAILURE MILEAGE WAS 30,000 AND CURRENT MILEAGE WAS 80,000.

- NHTSA COMPLAINT: [2004 Range Rover] ALL RANGE ROVERS FROM 2003-2005 HAVE A FULL AIR RIDE SUSPENSION THAT SUPPORTS THE VEHICLE ON ALL FOUR CORNERS. THE CONCERN IS THAT THE AIRBAG THAT SUPPORTS THE FRONT OF THE VEHICLE, RUPTURES AND THROWS THE VEHICLE OFF BALANCE WHILE CORNERING CAUSES A LOSS OF CONTROL OF THE VEHICLE. WHEN THE AIR SUSPENSION FAILS IT ALSO DEACTIVATES THE ANTI-LOCK BRAKES MAKING THE VEHICLE UNSAFE TO DRIVE BECAUSE OF A LACK OF ABS CONTROL. THIS IS A PROBLEM THAT LAND ROVER IS AWARE OF AND ARE NOT MAKING ANY ATTEMPT TO ADDRESS. THIS IS A $1200.00-$1500.00 REPAIR FOR ONE SIDE (LEFT OR RIGHT) NOT BOTH FRONT AIR BAGS THAT SUPPORT THE FRONT OF THE VEHICLE. IF THIS CONCERNED IS RESEARCHED YOU WILL BE AMAZED AT THE NUMBER OF REPAIRS THAT ARE DONE AND PAID FOR BY RANGE ROVER OWNERS, BECAUSE THIS SAFETY ISSUE IS NOT REPORTED OR ADDRESSED. I AM EXPERIENCING THIS ISSUE NOW. *TR

- NHTSA COMPLAINT: [2006 Range Rover] THE CONTACT OWNS A 2006 LAND ROVER. THE CONTACT STATES THAT WHEN DRIVING THE VEHICLE 55MPH ON THE FREEWAY THE VEHICLE STARTED

GOING SLOW AND THEN FELT THE SUSPENSION DROP TO THE GROUND .ALL THE LIGHTS IILUMINATED AND THE VEHICLE WENT TO THE SIDE. THEY HAD TOLD HER THAT HER SUSPENSION HAD A BIG DEFECT. THE DEALER TOLD HER TO CALL THE INSURANCE SO THAT IT WILL NOT BE REPORTED AS A DEFECT FROM THE MANUFACTURE.THE FAILURE AND CURRENT MILEAGE WAS 23000.

- INTERNET COMPLAINT: The car was a 2004 Land Rover Range Rover. The VIN of this vehicle was SALME11424_. All Range Rovers from 2003-2005 have a full air ride suspension that supports the vehicle on all four corners. The concern is that the airbag that supports the front of the vehicle, ruptures and throws the vehicle off balance while cornering causes a loss of control of the vehicle. When the air suspension fails it also deactivates the anti-lock brakes making the vehicle unsafe to drive because of a lack of abs control. This is a problem that Land Rover is aware of and are not making any attempt to address. This is a $1200. 00-$1500. 00 repair for one side (left or right) not both front air bags that support the front of the vehicle. If this concerned is researched you will be amazed at the number of repairs that are done and paid for by Range Rover owners, because this safety issue is not reported or addressed. I am experiencing this issue now. This issue happened on 12/20/08.

- INTERNET COMPLAINT: My 2004 Range Rover started leaking air from the front right suspension (I think) and the car started to lower but I am not getting a air suspension inactive message and my tire  is not flat. What could be the problem and the fix?

- INTERNET COMPLAINT: I have a 2006 Rover that has a leak in the front drivers side air suspension. I can raise the vehicle and hear and feel the air coming out of it.  I've ordered a replacement from Arnott but I started wondering. If I have a whole in the front driver side would that cause the whole Rover to lower or just that front left corner? I guess I don't know if the whole system is connected so the air from the other bags can get out if there are any leaks.  Thank you for your help.

34.     The Defect poses an unreasonable safety risk for Class Members, as well as

the drivers, passengers, and pedestrians sharing the road with Class Vehicles.  A vehicle's

ability to balance weight properly while traveling, turning, and braking, to travel in a straight

line, and to avoid dropping while in operation are each critical to the safe operation of a

motor vehicle.  A defect that causes one or more of these negative characteristics clearly

poses a safety hazard to the general public as well as the driver and occupants of the affected vehicles, and increases the risk of automobile collisions.

**B.    LAND ROVER HAS EXCLUSIVE KNOWLEDGE OF THE DEFECT**

35.    Land Rover had superior and exclusive knowledge of the Defect, and knew or should have known that the Defect was not known or reasonably discoverable by Plaintiffs and Class Members prior to their purchase or lease of the Class Vehicles.

36.    Plaintiffs are informed and believe and based thereon allege that before Plaintiffs purchased their vehicles and since 2003, if not before, Land Rover knew about the Defect through sources not available to consumers, including pre-release testing data, early consumer complaints about the Defect to Land Rover and their dealers, testing conducted in response to those complaints, high failure rates and replacement part sales data contained in Defendants' warranty databases, as well as high reimbursement claims paid to Land Rover dealers pursuant to warranty claims, aggregate data from Land Rover dealers, including calls from Land Rover dealers who directly reported to Land Rover consumers' high failure rates and seeking assistance for repairs, among other internal sources of aggregate information about the problem.[4]

37.    Moreover, it is indisputable that Defendants were aware of the Defect at the time Plaintiffs purchased their vehicles, yet did not disclose the defect to the Plaintiffs and also failed to repair the defect prior to selling them the vehicles.

---

[4] Plaintiffs are informed and believe and thereon allege that Land Rover NA, like other distributors in the United States and around the  world, during its normal course of business routinely  reports and communicates to the designer and manufacturer of the Class Vehicles, Land Rover PLC., warranty reimbursement claims and other internal information (e.g. consumer complaints and dealer technical contacts, reimbursement and failure rates, replacement sales data, among other internal information).   Similarly, Land Rover P.C. provides Land Rover N.A. and other distributors around the world with design and technical information concerning the Land Rover vehicles.

38.     The existence of the Defect is a fact that would be considered material to a reasonable consumer deciding whether to purchase or lease a vehicle that was equipped with electronic air suspension.  Had Plaintiffs and other Class Members known about the Defect while they were in the market for a vehicle, they would not have purchased the Class Vehicles equipped with the electronic air suspension or, at the very least, would have paid less for them to account for the need to monitor and repair the problem on an ongoing basis before the Defect could manifest.

39.     Reasonable consumers, like Plaintiffs, expect and assume that a vehicle's suspension system is safe, will function in a manner that will not pose a safety hazard, and is free from defects.  Plaintiffs and members of the proposed class also expect and assume that Land Rover will not sell or lease vehicles with known safety defects, such as the Defect, and will disclose any such defects to consumers when they learns of them.  They did not expect Land Rover to conceal problems such as the Defect from them, to continually deny its existence, or that Land Rover would refuse to bear thousands of dollars of repair costs that become necessary to correct the problems resulting from defective electronic air suspension systems.

**C.    LAND ROVER HAS ACTIVELY CONCEALED THE DEFECT**

40.     Land Rover has been fully aware of the Defect in the Class Vehicles, but it has actively concealed the existence and nature of the defect from Plaintiffs and members of the proposed class at the time of purchase, lease or repair and thereafter.  Specifically, Land Rover has failed to disclose or actively concealed at and after the time of purchase, lease, or repair:

> (a)    any and all known material defects or material nonconformity of the Class Vehicles, including the defects relating to the electronic air

suspension;

(b)     that the Class Vehicles, including their electronic air suspension, were not in good in working order, were defective, and were not fit for their intended purposes; and

(c)     that the Class Vehicles and their electronic air suspension were defective, despite the fact that Land Rover learned of such defects through alarming failure rates, customer complaints, as well as through other internal sources, as early as 2003.

41.     Land Rover has caused Plaintiffs and Members of the Class to expend money at their dealerships to repair or replace the Class Vehicles' electronic air suspension components, despite Defendants' knowledge of the defect.

42.     When consumers present the Class Vehicles to an authorized Land Rover N.A. dealer for repair of the electronic air suspension, consumers are typically told that they must pay for the repair.

43.     To this day, Land Rover still has not notified Plaintiffs and the Class Members that the Class Vehicles suffer from a systemic defect that causes the electronic air suspension to malfunction.

44.     Land Rover has caused Plaintiffs and Class Members to expend money at their dealerships to diagnose, repair or replace the Class Vehicles' electronic air suspension systems, despite Land Rover's knowledge of the Defect.

**D.     PLAINTIFFS' EXPERIENCES WITH THE DEFECT**

**PLAINTIFF MAJDIPOUR**

45.     In or about October 2009, with approximately 36,271 on its odometer, Plaintiff Majdipour purchased a Certified Pre-Owned ("CPO") 2006 Range Rover with approximately 36,271 on its odometer from Land Rover authorized dealer in California, Land Rover Encino.  Majdipour purchased this vehicle primarily for personal, family, or household

purposes.

46.     Prior to purchasing the subject vehicle, Majdipour considered Land Rover marketing materials concerning the subject vehicle, including Land Rover television commercials which failed to disclose that the subject vehicles suffered from the alleged Defect.  Mr. Majdipour also spoke with Land Rover Encino's sales representatives, as well as its manager, who advised him that the subject vehicle had passed Land Rover's comprehensive 140-point inspection and was certified to be in good condition.  However, like the TV commercials, these individuals with whom Majdipour spoke with and the CPO certification Majdipour received did not disclose that the subject vehicles suffer from the Defect alleged herein.

47.     On or about November 17, 2010, the Defect manifested in Majdipour's 2006 model-year Range Rover, which suddenly dropped to one side while being driven, and suspension warning lights illuminated on the dashboard.  The mileage on the odometer was approximately 47,986.

48.     Shortly after this failure occurred, Majdipour's vehicle was towed to an authorized Land Rover dealer.  The dealer found a "leak at right front air spring."  The dealer replaced Majdipour's right front air spring and made various related repairs to the suspension system.    Fortunately,  Majdipour's  vehicle  was  covered  by  the  Certified  Pre-Owned Warranty, but Majdipour was nonetheless forced to pay a $100 deductible before those repairs were covered by the warranty.  At no time during this repair was Plaintiff advised that this was a known systemic defect in the Class Vehicles that may manifest again.  Moreover, the dealer failed to repair all the defective air suspension parts at this repair visit.

49.     On  or  around  April  6,  2012,  with  approximately  65,783  miles  on  the

odometer, Majdipour's vehicle suddenly and without warning dropped to one side while being driven, thereby rendering it immobile and inoperable.

50.     After Plaintiff's wife was advised by Land Rover's dealer that the alleged suspension defect was not covered under the CPO warranty, Majdipour had his vehicle towed to an independent repair facility, where the mechanic found the left air spring leaking and failing to hold pressure.  The mechanic further found that the air spring would "collapse" upon the vehicle starting up, as well as while the vehicle was being driven.

51.     Ultimately, Majdipour's vehicle was repaired by a second mechanic who replaced both defective front air springs with aftermarket components designed to repair and remedy the deficiencies in the original air suspension components.  Majdipour had to pay $1,409.45 out of pocket for this repair.  At all times, Majdipour, like all Class Members, has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

**PLAINTIFF AUSTIN**

52.     In or about February 2008, Plaintiff Pamela Austin purchased a CPO 2006 Range Rover with approximately 20,895 miles on its odometer from Land Rover's authorized dealer, Land Rover Encino.  Ms. Austin purchased this vehicle primarily for her personal, family, or household purposes.

53.     Prior to purchasing the subject vehicle, Ms. Austin reviewed Land Rover's sales and promotional materials concerning the subject vehicle, including television commercials, Land Rover's website and Range Rover brochures.   Prior to purchasing the subject vehicle, in February 2008, Ms. Austin also spoke to Land Rover Encino's sales representative about the subject vehicle and received and reviewed Land Rover's 140 point

Certified Pre-Owned Inspection checklist for her vehicle.

54.     However, all the materials that Ms. Austin consulted and the individuals with whom she spoke with prior to purchasing the subject vehicle, did not disclose that the subject vehicles suffer from the Defect alleged herein.

55.     Since she purchased the vehicle, Ms. Austin has made several repair visits and has paid hundreds of dollars concerning the suspension defect contained in her vehicle, including but not limited to out-of pocket repair visits that took place at 57,633 miles and 58,046 miles. [5]

56.     On November 26, 2011, at approximately 57,633 miles, Ms. Austin visited Land Rover Encino complaining that her suspension had dropped.  The dealer verified Ms. Austin's concern and replaced the "leaking [] right front spring."    At no time during this repair was Plaintiff advised that this was a known systemic defect in the Class Vehicles that may manifest again.  Additionally, the dealer failed to repair or replace the other defective air suspension parts on her vehicle at this repair visit despite charging Ms. Austin her out-of-pocket deductible.

57.     On December 14, 2011, at approximately 58,046 miles, Ms. Austin again visited Land Rover Encino complaining that her suspension fault message was on.   In response, the dealer performed a diagnostic leak test and confirmed that the subject vehicle's left front spring was leaking.  As a result, the dealer replaced the left front air spring and again charged Ms. Austin an out-of-pocket deductible.  At no time during this repair was Plaintiff advised that this was a known systemic defect in the Class Vehicles that may manifest again.

---

[5] In addition to complaining to the dealer, Ms. Austin also contacted Land Rover to express her dissatisfaction with the suspensions problems alleged herein.

58.    At all times, Ms. Austin, like all Class Members, has driven his vehicle in a foreseeable manner and in the manner in which it was intended to be used.

## CLASS ACTION ALLEGATIONS

59.    Plaintiffs bring this action on behalf of themselves, and on behalf of a nationwide class, pursuant to Fed. R. Civ. Pr. P. 23(a), 23(b)(2), and/or 23(b)(3); specifically, the following Class and Sub-Class:

Nationwide Class:     All persons or entities in the United States who are current or former owners and/or lessees of a Class Vehicle (the "Nationwide Class").

California Sub-Class:     All persons or entities in California who are current or former owners and/or lessees of a Class Vehicle (the "California Sub-Class").

60.    Excluded from the Nationwide Class and the California Sub-Class are Defendants, their affiliates, employees, officers and directors, persons or entities that purchased the Class Vehicles for resale, and the Judge(s) assigned to this case.  Plaintiffs reserve the right to modify the Nationwide Class and California Sub-Class definitions if discovery and/or further investigation reveal that they should be expanded or otherwise modified.

61.    There is a well-defined community of interest in the litigation and the Class is readily ascertainable.

62.    Numerosity: Although the exact number of Class Members is uncertain and can only be ascertained through appropriate discovery, the number is great enough such that joinder is impracticable.  The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court.  The Class Members are readily identifiable from information and records in Defendants' possession, custody, or control, as well as from records kept by the Departments of Motor Vehicles.

63.   <u>Typicality</u>: The claims of the representative Plaintiffs are typical of the claims of the Class in that the representative Plaintiffs, like all Class Members, purchased and leased a Class Vehicle designed and distributed by Land Rover, and equipped with electronic air suspension.  The representative Plaintiffs, like all Class Members, have been damaged by Defendants' misconduct in that they have incurred or will incur the cost of repairing or replacing the defective electronic air suspension.  Furthermore, the factual bases of Land Rover's misconduct are common to all Class Members and represent a common thread resulting in injury to all Class Members.

64.   <u>Commonality</u>: There are numerous questions of law and fact common to Plaintiffs and the Class that predominate over any question affecting only individual Class Members.  These common legal and factual issues include the following:

(A)   Whether class vehicles suffer from defects relating to the electronic air suspension;

(B)   Whether the defects relating to the electronic air suspension constitutes an unreasonable safety risk;

(C)   Whether Defendants know about the defects relating to the electronic air suspension and, if so, how long Defendants have known of the defect;

(D)   Whether the defective nature of the electronic air suspension constitutes a material fact;

(E)   Whether Defendants have a duty to disclose the defective nature of the electronic air suspension to plaintiffs and class members;

(F)   Whether Plaintiffs and the other class members are entitled to equitable relief, including but not limited to a preliminary and/or permanent injunction;

(G)   Whether Defendants knew or reasonably should have known of the defects relating to the electronic air suspension before it sold and leased class vehicles to class members;

(H)   Whether Defendants should be declared financially responsible for notifying all class members of the problems with the class vehicles and for

the costs and expenses of repairing and replacing the defective electronic air suspension;

(I)    Whether defendants are obligated to inform class members of their right to seek reimbursement for having paid to diagnose, repair, or replace their defective electronic air suspension;

(J)    Whether Defendants' conduct violates the New Jersey Consumer Fraud Act and the other statutes asserted herein;

(K)    Whether Defendants breached the implied warranty of merchantability pursuant to the Song-Beverly Act.

(L)    Whether Defendants' conduct violates the California Legal Remedies Act;

(M)    Whether Defendants' conduct violates California's Secret Warranty Law;

(N)    Whether, as a result of Defendants' omissions and/or misrepresentations of material facts related to the Defect, Plaintiffs and class members have suffered ascertainable loss of moneys, property, and/or value; and

(O)    Whether Plaintiffs and class members are entitled to monetary damages and/or other remedies, and if so the nature of any such relief.

65.    <u>Adequacy</u>:  Plaintiffs will fairly and adequately protect the interests of the Class Members.  Plaintiffs have retained attorneys experienced in the prosecution of class actions, including consumer and product defect class actions, and Plaintiffs intend to prosecute this action vigorously.

66.    Plaintiffs and the Class Members have all suffered and will continue to suffer harm and damages as a result of Defendants' unlawful and wrongful conduct.  A class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law.  Because of the relatively small size of the individual Class Members' claims, it is likely that only a few Class Members could afford to seek legal redress for Defendants' misconduct.  Absent a class action, Class Members will continue to incur damages, and

Defendants' misconduct will continue without remedy.   Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants and will promote consistency and efficiency of adjudication.

67.     In the alternative, the Class may be certified because:

(A)     The prosecution of separate actions by the individual members of the class would create a risk of inconsistent or varying adjudication with respect to individual class members, which would establish incompatible standards of conduct for Land Rover;

(B)     The prosecution of separate actions by individual class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and

(C)     Land Rover has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final and injunctive relief with respect to the members of the class as a whole.

## VIOLATIONS ALLEGED

## COUNT I
## VIOLATION OF THE NJCFA
### (On Behalf of the Nationwide Class)

68.     Plaintiffs and the Nationwide Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

69.     The NJCFA protects consumers against "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise . . . ."  N.J.S.A. 56:8-2.

70.     Plaintiffs and Class Members are consumers who purchased and/or leased Class

Vehicles for personal, family, or household use.

71.     Defendants engaged in unlawful conduct, made affirmative misrepresentations and material omissions, or otherwise violated the NJCFA.  Specifically, Defendants were aware that the Class Vehicles suffered from a common defect resulting in failure of the air suspension system in the Class Vehicles, but purposefully failed to disclose this to Plaintiffs and Class Members during the purchase of the vehicle or thereafter.  Defendants failed to disclose the Defect with the knowledge that many Class Members may not discover the Defect until after the expiration of their warranties.  .

72.     Defendants also engaged in unlawful conduct in violation of the NJCFA by making knowing and intentional omissions.  Defendants purposefully and knowingly failed to disclose the Defect in the Class Vehicles in order to secure the sale of these vehicles at a premium price and also to mislead owners during the limited warranty period to avoid having to perform their contractual duties under the warranty.

73.     Defendants did not fully and truthfully disclose to their customers the true nature of the inherent defect in the air suspension system, which was not readily discoverable until years later, sometimes after the warranty has expired.  In fact, on the date Plaintiffs purchased their vehicles, Defendants had acknowledged the defect to their dealers years earlier and described how to remedy the defect, and yet Plaintiffs' vehicles were never modified and they were never advised about the defect.

74.     Defendants intended that Plaintiffs and all Class Members rely on the acts of concealment and omissions, so that they would purchase the Class Vehicles and not have the defects remedied under warranty.

75.     As a result of Defendants' conduct, Plaintiffs and Class Members have suffered

an ascertainable loss.  In addition to direct monetary losses to repair the Defect, which can be thousands of dollars, Plaintiffs and Class Members have also suffered an ascertainable loss by receiving less than what was promised.

76.     A causal relationship exists between Defendants' unlawful conduct and the ascertainable losses suffered by Plaintiffs and the Class Members.  Had the Defect in the Class Vehicles been disclosed, consumers would not have purchased them, would have paid less for the Class Vehicles had they decided to purchase them, or would have presented their vehicles for repair of the Defect under warranty.

**COUNT II**
**BREACH OF EXPRESS WARRANTY**
**(On Behalf of the Nationwide Class or,**
**Alternatively, the California Sub-Class)**

77.     Plaintiffs and the Classes incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

78.     Plaintiffs bring this cause of action against Land Rover NA only.

79.     Land Rover NA expressly warranted that the Class Vehicles were of high quality and, at a minimum, would actually work properly.  Land Rover NA further warranted that through is 140 point certified pre-owned vehicle inspection that any defects in the vehicle were repaired.  Land Rover NA also expressly warranted that they would repair or replace defects in material and/or workmanship free of charge if they manifested during the warranty period.

80.     The length of Land Rover NA's express warranty is 4 years/50,000 miles, while the length of Land Rover NA CPO warranty is 6 years/75,000 miles.    Attached here to as

Exhibit B is a true and correct copy of Land Rover NA's CPO warranty.[6]

81.    Land Rover NA breached this warranty by selling to Plaintiffs and Class Members the Class Vehicles with known defects, including but not limited to the Defect affecting the air suspension.

82.    Land Rover NA further breached this warranty by failing to repair and/or replace Plaintiffs' and other putative Class Members' air suspension systems while the vehicles were still under warranty.  In fact, both Plaintiffs presented their vehicles to authorized Land Rover dealers during the CPO warranty period complaining of the Defect and despite such complaints Land Rover NA failed to repair or replace all the defective air suspension components under warranty.  As a result of these failure and the breach of the CPO warranty, Plaintiffs were forced in incur additional expenses to repair the Defect at later repair visits.

83.    Land Rover NA knew of the aforesaid defects by early 2003, if not before, and continues to have knowledge of the Defect and breaches of its express warranty, yet has intentionally failed to notify Plaintiffs and Class Members.

84.    This intended failure to disclose the known Defect is malicious, and was carried out with willful and wanton disregard for the rights and economic interests of Plaintiffs and Class Members.

85.    As a result of Land Rover NA's actions, Plaintiffs and Class Members have suffered economic damages including but not limited to costly repairs, loss of use of the vehicles, substantial loss in value and resale value of the vehicles, and other damage.

86.    Land Rover NA's attempt to disclaim or limit these express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here.  Specifically,

---

[6] In addition to purchasing a Certified Pre-Owned vehicle that came with a 6 years/75,000 miles warranty, Ms. Austin, as well as many other prospective class members, also purchased Land Rover Assured Certified Plus Extended Coverage Program which is for 8 years/96,000.

defendant's warranty limitation is unenforceable because they knowingly sold a defective product without informing consumers about the defect and purposefully concealed the defect until such time that the Class Vehicles were out of warranty.

87.    The time limits contained in Land Rover NA's warranty period were also unconscionable and inadequate to protect Plaintiffs and Class Members.  Among other things, Plaintiffs and Class Members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Land Rover NA.  A gross disparity in bargaining power existed between defendant and Class Members, and Land Rover NA knew or should have known that the Class Vehicles were defective at the time of sale and would fail well before their useful lives.

88.    Plaintiffs and Class Members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Land Rover NA's conduct described herein.

**COUNT III**
**COMMON LAW FRAUD**
**(On Behalf of the Nationwide Class or,**
**Alternatively, the California Sub-Class)**

89.    Plaintiffs and the Classes incorporate by reference each proceeding and succeeding paragraph as though fully set forth at length herein.

90.    Defendants made material misrepresentations and omissions concerning a presently existing or past fact.  For example, Defendants did not fully and truthfully disclose to their customers the true nature of the Defect in the Class Vehicles, which was not readily discoverable until years later, sometimes after the warranty has expired.  As a result, Plaintiffs and the other Class Members were fraudulently induced to lease and/or purchase the Class Vehicles with the said defects and all of the resultant problems, and also not present their

vehicles to an authorized repair facility during the warranty period to have the defect remedied at no cost.

91.     These omissions and statements were made by Defendants with knowledge of their falsity, and with the intent that Plaintiffs and Class Members rely on them.

92.     Plaintiffs and Class Members reasonably relied on these statements and omissions, and suffered damages as a result.

## COUNT IV

### BREACH OF THE DUTY OF GOOD FAITH
### AND FAIR DEALING
### (On Behalf of the Nationwide Class or,
### Alternatively, the California Sub-Class)

93.     Plaintiffs and the Classes incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

94.     Every contract in New Jersey contains an implied covenant of good faith and fair dealing.  The implied covenant of good faith and fair dealing is an independent duty and may be breached even if there is no breach of a contract's express terms.

95.     Defendants breached the covenant of good faith and fair dealing by, *inter alia*, failing to notify Plaintiffs and Class Members of the Defect in the Class Vehicles, and failing to fully and properly repair this defect.

96.     Defendants acted in bad faith and/or with a malicious motive to deny Plaintiff sand Class Members some benefit of the bargain originally intended by the parties, thereby causing them injuries in an amount to be determined at trial.

**COUNT V**
**UNJUST ENRICHMENT**
**(On Behalf of the Nationwide Class or,**
**Alternatively, the California Sub-Class)**

97.     Plaintiffs and the Nationwide Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

98.     As a direct and proximate result of Defendants' failure to disclose known defects and material misrepresentations regarding known defects, and the scope of the Warranty coverage in the Class Vehicles, Land Rover has profited through the sale and lease of said vehicles.

99.     Additionally, as a direct and proximate result of Defendants' failure to disclose known defects and material misrepresentations regarding known defects in the Class Vehicles, Plaintiffs and Class Members have incurred substantial costs to repair the defects, which requires the replacement of the defective parts with "updated" parts also sold be Defendants. As a result of having to purchase these "updated" parts to fix the Defect, plaintiffs and class members have conferred an unjust substantial benefit upon Land Rover.

100.     Moreover, as a direct and proximate result of defendants' failure to disclose known defects and material misrepresentations regarding known defects in the Class Vehicles, Land Rover has profited to the extent that Plaintiffs and Class Members purchased and leased Defendant's vehicles, purchased certified parts directly from the Defendants to repair the defects, and had to pay for repairs out of their own pocket that should have been covered under warranty.

101.     Land Rover has therefore been unjustly enriched due to the known defects in the Class Vehicles through the use of funds that earned interest or otherwise added to Defendants' profits when said money should have remained with Plaintiffs and Class

Members.

102.    As a result of the Defendants' unjust enrichment, Plaintiffs and Class Members have suffered damages.

**COUNT VI**
**BREACH OF THE IMPLIED**
**WARRANTY OF MERCHANTABILITY**
**(On Behalf of the California Sub-Class, Pursuant to the**
**Song-Beverly Act California Civil Code Section 1791.1)**

103.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

104.    Plaintiffs bring this cause of action against Defendants on behalf of themselves and on behalf of the members of the California Sub-Class.

105.    Defendants were at all relevant times the manufacturer, distributor, warrantor, and/or seller of the Class Vehicles.  Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased.

106.    Defendants provided Plaintiffs and Class Members with an implied warranty that the Class Vehicles and any parts thereof are merchantable and fit for the ordinary purposes for which they were sold.  However, the Class Vehicles are not fit for their ordinary purpose of providing reasonably reliable and safe transportation because, *inter alia*, the Class Vehicles and their electronic air suspension suffered from an inherent defect at the time of sale and thereafter are not fit for their particular purpose of providing safe and reliable transportation.

107.    Defendants impliedly warranted that the Class Vehicles were of merchantable quality and fit for such use.  This implied warranty included, among other things: (i) a warranty that the Class Vehicles and their electronic air suspensions were manufactured, supplied, distributed, and/or sold by Land Rover were safe and reliable for providing

transportation; and (ii) a warranty that the Class Vehicles and their electronic air suspensions would be fit for their intended use while the Class Vehicles were being operated.

108.    Contrary to the applicable implied warranties, the Class Vehicles and their electronic air suspensions at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiffs and the Class Members with reliable, durable, and safe transportation.  Instead, the Class Vehicles are defective, including but not limited to the defective design and manufacture of their electronic air suspensions.

109.    Defendants' actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use in violation of California Civil Code §§ 1792 and 1791.1.

**COUNT VII**
**Violation of California's Consumer Legal Remedies Act,**
**California Civil Code section 1750 *et seq*.**
**(On Behalf of the California Sub-Class)**

110.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

111.    Plaintiffs bring this cause of action on behalf of themselves and on behalf of the members of the California Sub-Class.

112.    Defendants are "persons" as defined by California Civil Code § 1761(c).

113.    Plaintiffs and Class Members are "consumers" within the meaning of California Civil Code § 1761(d).

114.    By failing to disclose and concealing the defective nature of the Class Vehicles' electronic air suspension from Plaintiffs and prospective Class Members, Defendants violated California Civil Code § 1770(a), as it represented that the Class Vehicles and their electronic air suspension had characteristics and benefits that they do not have, and

represented that the Class Vehicles and their electronic air suspension were of a particular standard, quality, or grade when they were of another. *See* Cal. Civ. Code §§ 1770(a)(5) & (7).

115.    Defendants' unfair and deceptive acts or practices occurred repeatedly in Defendants' trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

116.    Defendants knew that the Class Vehicles and their electronic air suspension suffered from an inherent defect, were defectively designed or manufactured, would fail prematurely, and were not suitable for their intended use.

117.    Defendants were under a duty to Plaintiffs and the Class Members to disclose the defective nature of the electronic air suspension and/or the associated repair costs because:

    a.  Defendants were in a superior position to know the true state of facts about the safety defect in the Class Vehicles' electronic air suspension;

    b.  Plaintiffs and the Class Members could not reasonably have been expected to learn or discover that their electronic air suspension had a dangerous safety defect until the Defect manifested; and

    c.  Defendants knew that Plaintiffs and the Class Members could not reasonably have been expected to learn or discover the safety defect.

118.    In failing to disclose the defective nature of the electronic air suspension, Defendants have knowingly and intentionally concealed material facts and breached their duty not to do so.

119.    The facts concealed or not disclosed by Defendants to Plaintiffs and the Class Members are material in that a reasonable consumer would have considered them to be important in deciding whether or not to purchase the Class Vehicles or pay a lesser price. Had Plaintiffs and other Class Members known that the Class Vehicles' electronic air

suspension was defective, they would not have purchased the Class Vehicles or would have paid less for them.

120.   Plaintiffs and the Class Members are reasonable consumers who do not expect the electronic air suspension installed in their vehicles to fail prematurely.   This is the reasonable and objective consumer expectation relating to vehicle suspension.

121.   As a result of Defendants' conduct, Plaintiffs and Class Members have been harmed and have suffered actual damages in that the Class Vehicles have experienced and will continue to experience premature electronic air suspension failures.

122.   As a direct and proximate result of Defendants' unfair or deceptive acts or practices, Plaintiffs and Class Members have suffered and will continue to suffer actual damages.

123.   Plaintiffs and the Class are entitled to equitable relief.

124.   Plaintiff Majdipour on behalf of himself and all prospective Class Vehicle owners provided Land Rover NA with notice of its alleged violations of the CLRA pursuant to California Civil Code § 1782(a).   However, Land Rover NA failed  to provide appropriate relief for their violations of the CLRA.   Accordingly, Plaintiffs are now amending this Complaint to seek monetary, compensatory, and punitive damages from Land Rover NA in addition to the injunctive and equitable relief that they sought before.

125.   Plaintiffs also sent Land Rover PLC a notice of its alleged violations of the CLRA pursuant to California Civil Code § 1782(a).  If Land Rover PLC fails to timely provide appropriate relief for the violations of the CLRA, Plaintiffs intend to amend their Complaint to seek monetary, compensatory, and punitive damages from Land Rover PLC in addition to the injunctive and equitable relief currently being sought.

**COUNT VIII**
**Violation of California Business & Professions Code § 17200, *et seq.***
**(On Behalf of the California Sub-Class)**

126.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

127.    Plaintiffs bring this cause of action on behalf of themselves and on behalf of all Class Members.

128.    California Business & Professions Code § 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

129.    Plaintiffs and the Class Members are reasonable consumers who do not expect their electronic air suspension to prematurely fail.

130.    Defendants knew the Class Vehicles and their electronic air suspension suffered from inherent defects, were defectively designed or manufactured, would fail prematurely, and were not suitable for their intended use.

131.    In failing to disclose the defects with the electronic air suspension, Defendants have knowingly and intentionally concealed material facts and breached their duty not to do so.

132.    Defendants were under a duty to Plaintiffs and the Class Members to disclose the defective nature of the Class Vehicles and their electronic air suspension:

a.    Defendants were in a superior position to know the true state of facts about the safety defect in the Class Vehicles' electronic air suspensions;

b.    Defendants made partial disclosures about the quality of the Class Vehicles without revealing the defective nature of the Class Vehicles and their electronic air suspensions; and

c.    Defendants actively concealed the defective nature of the Class Vehicles and their electronic air suspensions from Plaintiffs and the Class.

133.    The facts concealed or not disclosed by Defendants to Plaintiffs and the Class Members are material in that a reasonable person would have considered them to be

important in deciding whether to purchase Class Vehicles.  Had Plaintiffs and other Class Members known that the Class Vehicles' electronic air suspensions were defective and posed a safety hazard, then Plaintiffs and the other Class Members would not have purchased Class Vehicles equipped with electronic air suspensions, or would have paid less for them.

134.   Defendants continued to conceal the defective nature of the Class Vehicles and their electronic air suspensions even after Class Members began to report problems. Indeed, Defendants continue to cover up and conceal the true nature of the problem.

135.   By their conduct, Defendants have engaged in unfair competition and unlawful, unfair, and fraudulent business practices.

136.   Defendants' unfair or deceptive acts or practices occurred repeatedly in Defendants' trade or business, and were capable of deceiving a substantial portion of the purchasing public.

137.   As a direct and proximate result of Defendants' unfair and deceptive practices, Plaintiffs and the Class have suffered and will continue to suffer actual damages.

138.   Defendants have been unjustly enriched and should be required to make restitution to Plaintiffs and the Class pursuant to §§ 17203 and 17204 of the Business & Professions Code.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and members of the Class, respectfully requests that this Court:

a.   An order certifying the proposed Class and  Sub-Classes, designating Plaintiffs as named representative of the Class, and designating the undersigned as Class Counsel;

b.   A declaration that Defendants are financially responsible for notifying all Class Members about the defective nature of the electronic air suspension, including the need for period maintenance;

c.   An order enjoining Defendants from further deceptive distribution, sales, and lease practices with respect to Class Vehicles, and to remove and

replace Plaintiffs and Class Members' electronic air suspensions with a suitable alternative product;

d.      A declaration requiring Defendants to comply with the various provisions of the Song-Beverly Act alleged herein and to make all the required disclosures;

e.      An award to Plaintiffs and the Class for compensatory, exemplary, and statutory damages, including interest, in an amount to be proven at trial, except that for now, Plaintiffs seeks only equitable and injunctive relief from Land Rover PLC with respect to his claims under California's Consumer Legal Remedies Act, California Civil Code section 1750 *et seq*.;

f.      Any and all remedies provided pursuant to the Song-Beverly Act, including California Civil Code section 1794;

g.      A declaration that Defendants must disgorge, for the benefit of the Class, all or part of the ill-gotten profits it received from the sale or lease of the Class Vehicles, or make full restitution to Plaintiffs and Class Members;

h.      An award of attorneys' fees and costs, as allowed by law;

i.      An award of attorneys' fees and costs pursuant to California Code of Civil Procedure § 1021.5;

j.      An award of pre-judgment and post-judgment interest, as provided by law;

k.      Leave to amend the Complaint to conform to the evidence produced at trial; and

l.      Such other relief as may be appropriate under the circumstances.

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury on all claims and issues so triable.

Dated:  April 17, 2013

By: _____

Matthew Mendelsohn
**MAZIE SLATER KATZ & FREEMAN, LLC**
103 Eisenhower Parkway
Roseland, New Jersey 07068
Telephone:  (973) 228-9898
Facsimile: (973) 228-0303
e-mail: mmendelsohn@mskf.n

## LOCAL CIVIL RULE 11.2 CERTIFICATION

I hereby further certify that to the best of my knowledge, the matter in controversy is not the subject of any other action pending in any court or of any pending arbitration or administrative proceeding.

MAZIE SLATER KATZ & FREEMAN, LLC
Attorneys for Plaintiffs

_____
MATTHEW R. MENDELSOHN

Dated:  April 17, 2013

# EXHIBIT A

Case 2:12-cv-07849-MWF-CW Document 14-3 Filed 04/07/13 Page 37 of 53 Page ID: 172

# TECHNICAL BULLETIN

**No:** LM204-006
**Issue:** 1
**Date:** 16 Aug 2006

| CIRCULATE: TO | Service Mgr X | Warranty X | Workshop X | Body Shop X | Parts X |
|---|---|---|---|---|---|

**SECTION:** 204-05 – SUSPENSION SYSTEM

## Vehicle Lowers Overnight – Air-Spring Leak

**AFFECTED VEHICLE RANGE:**

Range Rover (LM)          **VIN:** up to 4A160029

**CONDITION SUMMARY:**

**FRONT AIR-SPRING LEAK CAUSES VEHICLE RIDE HEIGHT TO LOWER OVERNIGHT**

A customer may report a concern that the vehicle ride height lowers overnight.

**Situation:** No obvious system leaks may be found, however, vehicles in a higher mileage range of 30,000-60,000 miles may develop hairline cracks in the rubber material of the front air-spring. The cracks are likely located at the point where the air-spring rolls over the plastic base.

**Action:** Should a customer express concern regarding the above, refer to the Repair Procedure detailed in this bulletin to verify the cause and replace the air-spring as necessary.

**PARTS:**

⚠ **NOTE:** Replacement air-springs have an upgraded spring material. The part numbers of the latest specification air-springs have not been changed. Front air-springs built to the latest specification are identified by manufacturer marking specified later in this bulletin.

RNB000740 .............Damper assembly (including air-spring) - front RH      Qty 1
RNB000750 .............Damper assembly (including air-spring) - front LH      Qty 1

**WARRANTY:**

⚠ **NOTE:** Repair procedures are under constant review, and therefore times are subject to change; those quoted here must be taken as guidance only. Always refer to DDW to obtain the latest repair time.

DDW requires the use of causal part numbers.
Labor only claims must show the causal part number with a quantity of zero.

| Description | SRO | Time (Hours) | Condition Code | Causal Part |
|---|---|---|---|---|
| Replace one air-spring assembly | 60.21.01 | 1.10 | 63 | RNB000060 |

*Normal warranty policy and procedures apply.*

---

**NOTE: The information in Technical Bulletins is intended for use by trained, professional technicians with the knowledge, tools, and equipment required to do the job properly and safely. It informs these technicians of conditions that may occur on some vehicles, or provides information that could assist in proper vehicle service. The procedures should not be performed by "do-it-yourselfers." If you are not a Retailer, do not assume that a condition described affects your vehicle. Contact an authorized Land Rover service facility to determine whether the bulletin applies to a specific vehicle.**



## TECHNICAL BULLETIN

**No:** LM204-006
Issue: 1

### _REPAIR PROCEDURE_

**REPLACE FRONT AIR-SPRING**

⚠ **NOTE: An air leak in the rubber material may be verified using a suitable leak detection fluid.**

1. Verify which front air-spring(s) has a leak and requires replacement.

⚠ **NOTE: The latest specification air-spring assembly is identified by the manufacturer markings printed on the air-spring air bag as shown in Figure 1.**

2. Verify the correct specification air-spring assembly has been ordered from the markings as shown in Figure 1 as follows:

   - Right-hand air springs must start with **DC01**.
   - Left-hand air springs must start with **DB01**.

Figure 1

E82329

⚠ **NOTE: GTR lookup sequence is as follows:**
**GTR Home > NAS > Service Information/ LM – Range Rover/2004 > Workshop Manuals > Range Rover - Workshop Manual – Service Procedures > Bookmark section "60 – Front Suspension" link "60.21.01 Air spring assembly"**

3. Refer to Global Technical Reference (GTR) Range Rover (LM) Workshop Manual Section 60 - Front Suspension, operation 60.21.01 Air spring assembly and replace the front air spring assembly.

# EXHIBIT B



**CERTIFIED PRE-OWNED** LIMITED WARRANTY INFORMATION



## OVERVIEW

☐ Manufacturer-backed New-Vehicle Limited Warranty up to 4 years/50,000 miles.

☐ Land Rover Certified Pre-Owned Vehicle Limited Warranty coverage up to 6 years/75,000 miles – calculated from the original in-service date and zero miles – whichever comes first (see warranty statement for details).

☐ Extended coverage with the Land Rover Assured Certified Plus Extended Coverage program.

☐ 24-hour Roadside Assistance coverage up to 6 years/75,000 miles – calculated from the original in-service date and zero miles – whichever comes first (see warranty statement for details). Includes emergency towing, trip-interruption expense benefits, computerized trip routing, and retailer locator service.

☐ Transferable warranty upon resale.

☐ $100 deductible per repair visit.

☐ A comprehensive 140-point inspection certification and reconditioning process.

## OUR COMMITMENT TO YOU

Land Rover is committed to ensuring your satisfaction with your Land Rover Certified Pre-Owned Vehicle. Your retailer wants you to be completely satisfied, and invites you to return for all your service needs, both during and after the Limited Warranty period. Considering the investment you've made in your Land Rover Certified Pre-Owned Vehicle, we know you'll want to operate and maintain it properly. We encourage you to follow the instructions outlined in your Owner's Handbook and Maintenance Schedule.

## OWNER'S RESPONSIBILITIES

Receipts and records covering the performance of regular maintenance or emergency repairs should be retained, in the event that questions arise. These receipts and records should be transferred to each subsequent owner. To keep this Limited Warranty valid, you must have your vehicle serviced as recommended by Land Rover. If requested, proof of required service including verifiable receipts showing date and mileage of the vehicle at the time of service must be presented in order to have repairs begun on your vehicle. Service within 3,000 miles and/or 90 days of the next recommended service shall be considered compliance under the terms of this Limited Warranty.

## ABOUT THE CERTIFIED PRE-OWNED VEHICLE LIMITED WARRANTY

This Land Rover Certified Pre-Owned Vehicle Limited Warranty supplements the coverages provided by any Land Rover New-Vehicle Limited Warranties that may still be in effect on this vehicle. Therefore, you will also want to become familiar with the "Land Rover New-Vehicle Limited Warranty." See retailer for details.

If you sell this vehicle and wish to transfer the Land Rover Certified Pre-Owned Vehicle Limited Warranty to the new owner, refer to page 11 for transfer information.

## CLAIMS

To obtain repair service, contact an authorized Land Rover Retailer.

☐ Those repairs qualifying under the Land Rover Certified Pre-Owned Vehicle Limited Warranty will be performed and you will be charged only the applicable deductible.

☐ No payment for repairs will be made without prior authorization from the Administrator.

☐ Repairs covered under any of the Land Rover New-Vehicle Limited Warranties that may still be in effect may be performed at any authorized Land Rover Retailer.

☐ Non-covered repairs that do not qualify will be the owner's responsibility.

## COVERAGE

The Land Rover Certified Pre-Owned Vehicle Limited Warranty supplements the coverages provided by any Land Rover New-Vehicle Limited Warranties that still may be in effect on the vehicle.

## WARRANTY PERIOD

☐ For Land Rover Certified Pre-Owned Vehicles under 4 years old and with fewer than 50,000 miles, the Land Rover New-Vehicle Limited Warranty remains in effect until the vehicle reaches 4 years or 50,000 miles, whichever comes first. There is a $100 deductible per repair visit, for which the customer is responsible.

☐ The Land Rover Certified Pre-Owned Vehicle Limited Warranty provides coverage for 6 years/75,000 miles – calculated from the original in-service date and zero miles – whichever comes first. There is a $100 deductible per repair visit, for which the customer is responsible.

## REPAIR COVERAGE

Land Rover North America, Inc., through its authorized retailers, will repair, replace or reimburse the policy holder for the reasonable cost to repair or replace any of the parts covered, if required due to a mechanical breakdown or failure. Items not covered by these vehicle service contracts are listed under the "WHAT IS NOT COVERED" section. MECHANICAL BREAKDOWN OR FAILURE is defined as the inability of any covered parts(s) to perform the function(s) for which it (they) was (were) designed due to defects in material or workmanship. MECHANICAL BREAKDOWN does not include the gradual reduction in operating performance due to normal wear and tear, where a FAILURE has not occurred. The manufacturer has established tolerances for the express purpose of defining FAILURE and service ability. When specifications exceed these manufacturer's tolerances, a FAILURE will be considered to have occurred.

## VEHICLE KIT COVERAGE

Land Rover Vehicle Kit accessories, when purchased at time of Certified Pre-Owned Vehicle purchase, are also covered by the Land Rover Certified Pre-Owned Vehicle Limited Warranty.

## RENTAL COVERAGE

If you must rent a car due to the failure of a part covered by this Limited Warranty, you will be reimbursed for actual expenses incurred (excluding fuel, collision damage waiver and optional insurance charges) for substitute transportation up to the maximum rate of $35 per day. The total number of days of reimbursement for each occurrence cannot exceed six. The number of days of rental reimbursement will be determined by the nature of the failure and the reasonable time needed to repair that failure. Reimbursement is applicable only when substitute transportation has been rented as evidenced by a signed rental agreement with a licensed rental agency or Land Rover Retailer. **No deductible will be applied to this benefit.** In addition, Rental Car Reimbursement will be made for all failures covered by the Land Rover New-Vehicle Limited Warranty and not otherwise excluded by this Limited Warranty. Original receipts must be provided.

## ROADSIDE ASSISTANCE

Land Rover will pay your out-of-pocket emergency service expense if your vehicle is disabled (subject to certain limitations). **No deductible will be applied to this benefit.** This benefit applies only for the duration of the coverage. You can contact Land Rover's Roadside Assistance service 24 hours a day, toll-free. Call 1-800-637-6837 (option #1).

# WHAT IS NOT COVERED
# BY THE LAND ROVER CERTIFIED PRE-OWNED VEHICLE LIMITED WARRANTY?

Repairs specifically covered under a Land Rover New-Vehicle Limited Warranty (if applicable) that is still in effect.

## MAINTENANCE SERVICES AND PARTS

☐ Unless required as part of a covered repair: Parts and normal maintenance items/procedures such as engine tune-ups, spark plugs, spark plug wires, glow plugs, filters, brake pads, brake shoes, brake linings, brake rotors, suspension alignment, wheel balancing, hoses, air conditioning lines and hoses, belts and wiper blades.

☐ Unless required as part of a covered repair: Adjustments, lubricants, coolants and fluids.

☐ Other maintenance services and parts described in Land Rover's Maintenance Schedule for the covered vehicle.

## OTHER PARTS AND SERVICES

Other parts *not* covered include graphic equalizers, telephones, radar detectors and CB radios; non-factory-installed AM/FM radios, cassette players, CD players and speakers, bright metal, sheet metal, bumpers, ornamentation moldings, carpet, upholstery, paint, exhaust system, brake drums, MacPherson strut cartridge insert or shock absorbers, batteries, battery cables, lenses, light bulbs, sealed beams, glass, wheel covers, wheels, interior trim, carburetor, throttle body assembly, manual clutch components, body seals and gaskets (e.g., weather stripping), convertible tops, glass, plastic or framing.

## ADDITIONAL EXCLUSIONS

Under the Land Rover Certified Pre-Owned Vehicle Limited Warranty, Land Rover is not responsible:

☐ For damage due to accidents, misuse or alteration: Damage caused as a result of alteration or modification to the vehicle, including the body, chassis or other components after final assembly by Land Rover, is not covered. Note: The Land Rover Certified Pre-Owned Vehicle Limited Warranty is void on vehicles currently or previously titled as salvaged, junked, totaled or flood-damaged.

☐ For a failure due to lack of proper maintenance required by the Land Rover Maintenance Schedule.

☐ For a failure caused by collision, fire, theft, freezing, vandalism, riot or explosion.

☐ For a failure caused by lightning, earthquake, windstorm, hail, water or flood.

☐ For economic loss, including loss of time, inconvenience, lodging, food or other incidental or consequential loss or damage that may result from a failure.

☐ For storage charges.

☐ If the odometer has stopped, been changed, disconnected or mileage cannot be determined.

Please review your actual Limited Warranty for complete terms, conditions and exclusions.

## OWNER ASSISTANCE

Should you ever encounter a problem with your vehicle that is not resolved under a Land Rover warranty, a member of your retailer's management team will be happy to assist you. If the problem persists, please contact the Land Rover Customer Relationship Centre at 1-800-637-6837.

## OTHER TERMS

The Land Rover Certified Pre-Owned Vehicle Limited Warranty gives you specific legal rights, and you may also have other rights that vary from state to state.

Land Rover does not authorize any person to create for it any other obligation or liability in connection with these vehicles. ANY IMPLIED WARRANTY OR MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE APPLICABLE TO THIS VEHICLE IS LIMITED TO THE DURATION OF THIS WRITTEN WARRANTY. PERFORMANCE OR REPAIRS AND NEEDED ADJUSTMENTS ARE THE EXCLUSIVE REMEDIES UNDER THIS WRITTEN WARRANTY OR ANY IMPLIED WARRANTY. LAND ROVER SHALL NOT BE LIABLE FOR INCIDENTAL OR CONSEQUENTIAL DAMAGES (SUCH AS, BUT NOT LIMITED TO, LOST WAGES OR VEHICLE RENTAL EXPENSES) RESULTING FROM BREACH OF THIS WRITTEN WARRANTY OR ANY IMPLIED WARRANTY.[*]

[*] Some states do not allow limitations on how long an implied warranty will last or the exclusion or limitation of incidental or consequential damages, so the above limitations or exclusions may not apply to you.

## 140-POINT INSPECTION PROCESS

Your retailer puts every eligible pre-owned Land Rover vehicle through an extensive inspection process. This process takes place before any vehicle can be called Certified and placed for sale. We want to ensure that every Land Rover Certified Pre-Owned Vehicle sold is roadworthy and offers clean, comfortable and reliable transportation.

The inspection confirms that:

☐ The vehicle is no more than five model years old (including current model year), calculated from original in-service date.

☐ The vehicle has accrued less than 60,000 odometer miles, calculated from zero miles.

☐ Systems and features work properly.

☐ A road test has been conducted under varying operating conditions.

☐ Battery, starting system and charging systems are in good working order.

☐ A thorough diagnostic test with onboard computer has been conducted.

☐ The last recommended scheduled maintenance has been performed if it falls within 3,000 miles or 90 days of next needed service.

## HOW COVERAGE MAY BE TRANSFERRED

Should you sell your Land Rover Certified Pre-Owned Vehicle and the new owner wants to be covered by the Land Rover Certified Pre-Owned Vehicle Limited Warranty, you may transfer the limited warranty by:

☐ Returning to or contacting your local Land Rover Retailer, or

☐ Requesting a transfer directly from APCO at 1-888-799-5107 (option #5).

## LAND ROVER ROADSIDE ASSISTANCE

For Land Rover Roadside Assistance, please call 1-800-637-6837. Please have the following information ready:

- ☐ Your vehicle's VIN number.
- ☐ Current mileage on your Land Rover vehicle.
- ☐ Location of your Land Rover vehicle.
- ☐ Phone number of telephone nearest to your disabled vehicle.
- ☐ Nature of problem.



**1–800–FIND 4WD**
**Visit: landroverusa.com/cpo**

Land Rover North America, Inc.
555 MacArthur Blvd.
Mahwah, NJ 07430

♲ Printed in the USA on recycled paper.
Please recycle this brochure after use. LRN0735CPO
© 2007 Land Rover North America, Inc.



**CERTIFIED PRE-OWNED**