**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| SIMON MAJDIPOUR and PAMELA AUSTIN, individually and on behalf of a class of similarly situated individuals, | : : : : | |
| | : | **OPINION** |
| Plaintiffs, | : : | Civ. No. 2:12-cv-07849 (WHW) |
| v. | : : | |
| JAGUAR LAND ROVER NORTH AMERICA, LLC and JAGUAR LAND ROVER AUTOMOTIVE, PLC, | : : : : | |
| Defendants. | : : | |

<u>**Walls, Senior District Judge**</u>

Defendant Jaguar Land Rover North America, LLC ("Land Rover") moves for dismissal of Plaintiffs' First Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b). Under Federal Rule of Civil Procedure 78(b), this motion is decided without oral argument. The motion to dismiss is granted in part and denied in part.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs Simon Majdipour and Pamela Austin bring this action individually and on behalf of putative classes of similarly situated individuals against Land Rover and Jaguar Land Rover Automotive, PLC for various causes of action related to an alleged defect in the electronic air

**NOT FOR PUBLICATION**

suspension system in Range Rover sport utility vehicles for the 2003 through 2006 model years (the "Subject Vehicles").[1] ECF No. 14, First Am. Compl. ¶¶ 1-8.

Plaintiffs are California citizens who each purchased a certified pre-owned ("CPO") 2006 Range Rover from a Land Rover authorized dealer in California – Land Rover Encino. *Id.* ¶¶ 19, 45, 52. Land Rover is a limited liability company with its headquarters and principal place of business in Mahwah, New Jersey. *Id.* ¶ 20.

Plaintiffs allege that Land Rover sold Subject Vehicles containing a suspension defect (the "Defect"), which "causes the suspension system's rubber air bellows . . . to develop leaks, releasing air pressure and losing their ability to properly hold the vehicle's weight," resulting in "a serious safety hazard, including the sudden loss of suspension on one side of the vehicle (rendering it lopsided while it is in motion), a loss of handling and the consequent inability to steer the vehicle in a straight line." *Id.* ¶ 27. The Defect has also resulted in "the vehicles suddenly dropping while being driven, sitting unevenly and leaning to one side, and/or suddenly losing the ability to travel in a straight line." *Id.* ¶ 30.

Plaintiffs' individual allegations are similar. Plaintiff Austin purchased her CPO 2006 Range Rover in February 2008, and Plaintiff Majdipour purchased his vehicle in October 2009. *Id.* ¶¶ 46, 52. Both Plaintiffs "considered Land Rover marketing materials concerning the subject vehicle, including Land Rover television commercials which failed to disclose . . . the alleged Defect." *Id.* ¶¶ 46, 53. Austin also reviewed "Land Rover's website and Range Rover brochures." *Id.* ¶ 53. Both Plaintiffs spoke with Land Rover Encino employees before purchasing their vehicles. *Id.* ¶¶ 46, 53. Majdipour was informed that his vehicle had "passed Land Rover's comprehensive 140-point inspection and was certified to be in good condition." *Id.* ¶ 46. Austin

---

[1] Although Plaintiffs label these "Class Vehicles," no class has been certified at this point.

**NOT FOR PUBLICATION**

also received and reviewed the 140-point checklist. *Id.* ¶ 53. Neither the employees with whom

Plaintiffs spoke nor the 140-point certification warned of the alleged Defect. *Id.* ¶¶ 46, 54.

When Plaintiffs purchased their vehicles, Land Rover provided a CPO Limited Warranty

for the earlier of 6 years or 75,000 miles – measured from the original in-service date and zero

miles. *Id.* ¶ 79-80, Ex. B, pg. 5. This warranty supplements Land Rover's 4 year/50,000 mile

express warranty for new vehicles. *Id.* ¶ 80. The CPO Limited Warranty provides:

> Land Rover North America, Inc., through its authorized retailers, will
> repair, replace or reimburse the policy holder for the reasonable cost to
> repair or replace any of the parts covered, if required due to a mechanical
> breakdown or failure. . . . MECHANICAL BREAKDOWN OR FAILURE
> is defined as the inability of any covered part(s) to perform the function(s)
> for which it (they) was (were) designed due to defects in material or
> workmanship.

*Id.* ¶ 80, Ex. B, pg. 5. The CPO Limited Warranty also explains that "[t]here is a $100 deductible

per repair visit, for which the customer is responsible." First Am. Compl. Ex. B, pg. 5.

Each Plaintiff alleges two manifestations of the Defect. Plaintiff Majdipour first

encountered a problem on November 17, 2010 with approximately 47,986 miles on the odometer,

when his vehicle "suddenly dropped to one side while being driven, and suspension warning lights

illuminated on the dashboard." First Am. Compl. ¶ 47. An authorized Land Rover dealer concluded

there was a "'leak at right front air spring,'" which the dealer replaced under the CPO Limited

Warranty in addition to making other suspension-related repairs. *Id.* ¶ 48. Majdipour paid the $100

deductible. *Id.* Majdipour further asserts that he was never told during the repair visit "that this

was a known systemic defect in the [Subject] Vehicles that may manifest again," and he alleges

that "the dealer failed to repair all the defective air suspension parts at this repair visit." *Id.*

Majdipour's second experience occurred on April 6, 2012 with approximately 65,783 miles

on the odometer, when his vehicle "suddenly and without warning dropped to one side while being

**NOT FOR PUBLICATION**

driven, thereby rendering it immobile and inoperable." *Id.* ¶ 49. Madjipour alleges that his wife was informed by a Land Rover dealer that the alleged Defect was not covered under warranty. *Id.* ¶ 50. An independent mechanic "found the left air spring leaking and failing to hold pressure," *id.*, and a different mechanic charged Majdipour $1,409.45 to "replace[] both defective front air springs with aftermarket components," *id.* ¶ 51.

Plaintiff Austin first "visited Land Rover Encino complaining that her suspension had dropped" on November 26, 2011 with approximately 57,633 miles on her vehicle's odometer. *Id.* ¶ 56. The dealer "verified [her] concern and replaced the 'leaking [] right front spring,'" charging Austin the deductible. *Id.* Austin alleges that the dealer "failed to repair or replace other defective air suspension parts." *Id.* Austin's second visit to Land Rover Encino came on December 14, 2011 with approximately 58,046 miles on her vehicle's odometer because "her suspension fault message was on." *Id.* ¶ 57. The dealer found that the "left front spring was leaking" and replaced it, again charging Austin a deductible. *Id.* Austin asserts that she was not informed during either visit that "this was a known systemic defect in the [Subject] Vehicles that may manifest again." *Id.*

Plaintiffs draw on their individual experiences and seek to represent two classes: (1) a "Nationwide Class" consisting of "[a]ll persons or entities in the United States who are current or former owners and/or lessees of a [Subject] Vehicle," and (2) a "California Sub-Class" comprised of "[a]ll persons or entities in California who are current or former owners and/or lessees of a [Subject] Vehicle." *Id.* ¶ 59. To support their claims, Plaintiffs rely on "complaints to the National Highway Traffic Safety Administration ('NHTSA') and on the internet," in order to assert that "an extraordinary number of purchasers and lessees of the [Subject] Vehicles have experienced problems with the electronic air suspension as a result of the Defect." *Id.* ¶ 31. According to

**NOT FOR PUBLICATION**

Plaintiffs, these complaints "reveal that the Defect is widespread and dangerous and that it manifests without warning." *Id.*

Plaintiffs allege that Land Rover had exclusive and superior knowledge of the Defect and has been aware of it since 2003, yet failed to disclose its existence to Plaintiffs or other purchasers of Subject Vehicles or to repair the Defect. *Id.* ¶ 29. Plaintiffs assert this placed them and others at risk and forced them to pay the costs of necessary repairs, which Plaintiffs claim can total up to $2,500. *Id.* ¶¶ 29, 32, 37.

Plaintiffs support these contentions in three ways. First, Plaintiffs set forth seven "examples of consumer safety complaints on the internet or to NHTSA that have been posted on [NHTSA's] website concerning the Defect . . . ." *Id.* ¶ 33. Second, Plaintiffs allege, based on information and belief:

> Land Rover knew about the Defect through sources not available to consumers, including pre-release testing data, early consumer complaints about the Defect to Land Rover and their dealers, testing conducted in response to those complaints, high failure rates and replacement parts sales data contained in [Land Rover's] warranty databases, as well as high reimbursement claims paid to Land Rover dealers who directly reported to Land Rover consumers' high failure rates and seeking assistance for repairs, among other sources of aggregate information about the problem.

*Id.* ¶ 36.

Third, Plaintiffs allege that in August 2006, "Land Rover quietly acknowledged the existence of the Defect to only their dealers in a Technical Service Bulletin ('TSB')." *Id.* ¶ 4. The TSB applied to vehicles through model year 2004 and explained that although "[n]o obvious system leaks may be found," vehicles "may develop hairline cracks in the rubber material of the front air spring." *Id.* Ex. A, pg. 1. The TSB called for a "leak" test and a replacement with "upgraded spring material." *Id.* Although Plaintiffs acknowledge that the TSB only applied to vehicles through model year 2004, they allege that the vehicles for the remaining model years

**NOT FOR PUBLICATION**

suffered from the same Defect. First Am. Compl. ¶ 5. In addition, Plaintiffs allege that the "upgraded spring materials" also contained the Defect, and that Land Rover called for this "temporary fix to prolong the amount of time that will elapse before the [Subject] Vehicles again experience the Defect . . . thus helping to ensure that the Defect occurs outside the express warranty period . . . ." *Id.* ¶ 6.

Plaintiffs also allege that Land Rover has "actively concealed the existence and nature of the [D]efect from Plaintiffs and members of the proposed class at the time of purchase, lease or repair and thereafter." *Id.* ¶ 40. Plaintiffs contend that "Land Rover has failed to disclose or actively concealed" the Defect "at and after the time of purchase, lease or repair." *Id.* They also claim that Land Rover failed to disclose or actively concealed "that the [Subject] Vehicles and their electronic air suspension were defective," and that they "were not fit for their intended purposes . . . despite the fact that Land Rover learned of such defects through alarming failure rates, customer complaints, as well as through other internal sources, as early as 2003." *Id.*

In short, Plaintiffs declare that "Land Rover has caused Plaintiffs and Members of the [Proposed] Class to expend money at their dealerships to repair or replace the [Subject] Vehicles' electronic air suspension components, despite Defendants' knowledge of the defect." *Id.* ¶ 41.

From these factual assertions, Plaintiffs bring eight causes of action: (1) violation of the New Jersey Consumer Fraud Act ("NJCFA"); (2) breach of express warranty; (3) common law fraud; (4) breach of the duty of good faith and fair dealing; (5) unjust enrichment; (6) breach of the implied warranty of merchantability under California's Song-Beverly Act (on behalf of the California Sub-Class only); (7) violation of California's Consumer Legal Remedies Act ("CLRA") (on behalf of the California Sub-Class only); and (8) violation of sections of the California

NOT FOR PUBLICATION

Business & Professional Code, commonly referred to as the Unfair Competition Law ("UCL") (on behalf of the California Sub-Class only).

Defendant Land Rover moves to dismiss the First Amended Complaint in its entirety pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b). ECF No. 17, Mem. of Law in Support of Def. Jaguar Land Rover N. Am., LLC's Mot. to Dismiss Pls.' Am. Compl. ("Def.'s Mem.") pg. 7. Land Rover argues that counts three, seven, and eight fail to meet Rule 9(b)'s pleading standards applicable to fraud-based claims and insufficiently allege that Land Rover owed Plaintiffs a duty to disclose. *Id.* at 1-2, 13, 17. Land Rover also contends that Plaintiffs have failed to state a claim on counts two, four, five, and six. *Id.* at 2, 27, 32, 35, 38-40. In addition, the parties dispute whether New Jersey or California law applies to several causes of action, and Land Rover argues that a choice of law determination should result in the dismissal of count one. *Id.* at 1, 7-13.

## STANDARD OF REVIEW

On a motion to dismiss for failure to state a claim upon which relief can be granted, Fed. R. Civ. P. 12(b)(6), the court is required to "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 306 (3d Cir. 2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

**NOT FOR PUBLICATION**

"[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). Thus, "a district court weighing a motion to dismiss asks 'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Id.* at 563 n.8 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

In evaluating the plaintiffs' claims, the court may consider the allegations of the complaint, as well as documents attached to or specifically referenced in the complaint. *See Sentinel Trust Co. v. Universal Bonding Ins. Co.*, 316 F.3d 213, 216 (3d Cir. 2003); Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1357 at 299 (2d ed. 1990). "A 'document integral to or explicitly relied on in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment.'" *Mele v. Fed. Reserve Bank of N.Y.*, 359 F.3d 251, 255 n.5 (3d Cir. 2004) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)).

Federal Rule of Civil Procedure 9(b) requires that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake": The plaintiff must "state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the precise misconduct with which it is charged." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007); *see also Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F. 2d 786, 791 (3d Cir. 1984) (explaining that the purpose of the rule is to "place the defendants on notice of the precise misconduct with which [they are] charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior"). "To satisfy this heightened standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise

**NOT FOR PUBLICATION**

inject precision or some measure of substantiation into a fraud allegation." *Frederico*, 507 F.3d at 200.

Normally, "Rule 9(b) requires, at a minimum, that plaintiffs support their allegations . . . with all of the essential factual background that would accompany the first paragraph of any newspaper story – that is, the who, what, when, where and how of the events at issue." *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 276-77 (3d Cir. 2006) (citations and quotation marks omitted). "Courts should, however, apply the rule with some flexibility and should not require plaintiffs to plead issues that may have been concealed by the defendants." *Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644, 658 (3d Cir. 1998) (citation omitted). Moreover, "[m]alice, intent, knowledge and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

## DISCUSSION

Defendant Land Rover's Motion to Dismiss and Plaintiffs' opposition require this Court to proceed in several steps. First, the Court decides the choice of law issues raised by the parties, including the implications of those decisions for the remaining issues before the Court. Next, the Court addresses the sufficiency of Plaintiffs' allegations with respect to their fraud-based claims. Finally, the Court address the sufficiency of Plaintiffs' remaining pleadings.

### Choice of Law

A federal court applies the choice of law rules of its forum state – here, New Jersey – to determine which law controls in cases under its diversity jurisdiction. *Klaxon Co. v. Stentor Elec. Mfg. Co., Inc.*, 313 U.S. 487, 496 (1941); *Maniscalco v. Brother Int'l (USA) Corp.*, 709 F.3d 202, 206 (3d Cir. 2013). "New Jersey has adopted the 'most significant relationship' test set forth in the Restatement (Second) of Conflict of Laws. This is a two-part test." *Maniscalco*, 709 F.3d at 206

**NOT FOR PUBLICATION**

(citing *P.V. ex rel. T.V. v. Camp Jaycee*, 197 N.J. 132, 142-43 (2008)). "[T]he first step is to determine whether an actual conflict exists. That is done by examining the substance of the potentially applicable laws to determine whether 'there is a distinction' between them." *Camp Jaycee*, 197 N.J. at 143 (quoting *Lebegern v. Forman*, 471 F.3d 424, 430 (3d Cir. 2006) (further citation omitted)). "If there is not an actual conflict, the inquiry is over and, because New Jersey would apply its own law in such a case, a federal court sitting in diversity must do the same." *Lebegern*, 471 F.3d at 428. "If, however, an actual conflict is found to exist, the inquiry proceeds to the second step." *Cooper v. Samsung Elecs. Am., Inc.*, 374 F. App'x 250, 254 (3d Cir. 2010).

"Under the second part of the inquiry, the court must determine which jurisdiction has the 'most significant relationship' to the claim." *Maniscalco*, 709 F.3d at 207 (quoting *Camp Jaycee*, 197 N.J. at 144). To make that determination, courts look to the Second Restatement, which "provides specific guidance for resolving particular types of cases." *Camp Jaycee*, 197 N.J. at 140; *see also Montich v. Miele USA, Inc.*, 849 F. Supp. 2d 439, 446 (D.N.J. 2012) (court "must weigh the factors set forth in the Restatement section that corresponds to Plaintiff's cause of action"). "The Second Restatement assessment takes place on an issue-by-issue basis. It is qualitative, not quantitative." *Camp Jaycee*, 197 N.J. at 143 (citations omitted). "[I]n balancing the relevant elements of the most significant relationship test," courts should "apply the law of the state that has the strongest connection to the case." *Id.* at 155.

In this case, there are several choice of law issues. First, the Court addresses Defendant Land Rover's argument that "the consumer fraud laws of California, not New Jersey, apply here," and therefore Plaintiffs' claim under count one for a violation of the NJCFA should be dismissed. Def.'s Mem. at 7-8. Second, the Court resolves the parties' dispute over which law – that of New Jersey or California – applies to Plaintiffs' claim for breach of express warranty. As explained

NOT FOR PUBLICATION

later, the law that applies to this claim will also necessarily apply to Plaintiffs' claim for breach of the duty of good faith and fair dealing. Third, although not briefed by the parties, the Court addresses the remaining choice of law issues, which relate to Plaintiffs' allegations of common law fraud and unjust enrichment.

### 1. The New Jersey Consumer Fraud Act

Land Rover argues that count one, alleging a violation of the NJCFA, should be dismissed because the consumer fraud laws of California and New Jersey conflict, a choice of law analysis is necessary and appropriate at this time, and California's consumer fraud laws, and not those of New Jersey, should apply. Def.'s Mem. at 7-13. Plaintiffs disagree. They respond that a choice of law analysis is "premature at this early stage of litigation," that Land Rover has failed to demonstrate that the NJCFA conflicts with California's consumer protection laws, and that if the Court does conduct the choice of law inquiry and finds a conflict, New Jersey has the "most significant relationship" to this case. ECF No. 18, Pls.' Mem. of Law in Opp'n to Def. Jaguar Land Rover N. Am., LLC's Mot. to Dismiss Pls.' Am. Compl.("Pls.' Opp'n") pgs. 6-12. Plaintiffs argue that the Court should uphold the NJCFA claim. *Id.*

For the reasons that follow, the Court finds that the NJCFA and California's consumer protection laws do conflict, that conducting the choice of law analysis is appropriate at this time, and that California's consumer protection laws should apply because it has the most significant relationship to this case. As a result, the Court grants Land Rover's motion to dismiss count one.

### a. The NJCFA and California's Consumer Protection Laws Conflict

The first step in the choice of law inquiry is to determine whether the "substance of the potentially applicable laws" conflict. *Camp Jaycee*, 197 N.J. at 143. Plaintiffs do not dispute Land

**NOT FOR PUBLICATION**

Rover's assertion that the potentially applicable laws are the NJCFA and California's CLRA and UCL. Def.'s Mem. at 8. The Court finds that these laws clearly conflict.

The NJCFA, N.J. Stat. Ann. § 56:8-2 (West 2013), requires Plaintiffs to prove three elements: "1) unlawful conduct by defendant; 2) an ascertainable loss by plaintiff; and 3) a causal relationship between the unlawful conduct and the ascertainable loss." *Bosland v. Warnock Dodge, Inc.*, 197 N.J. 543, 557 (2009). The law "does not require proof that a consumer has actually relied on a prohibited act in order to recover." *Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co., Inc.*, 192 N.J. 372, 391 (2007). "In place of the traditional reliance element of fraud and misrepresentation," the act "require[s] that plaintiffs demonstrate that they have sustained an ascertainable loss." *Id.*

By contrast, both the UCL and CLRA require a showing of reliance: "[A] plaintiff must plead and prove actual reliance to satisfy the standing requirement of section 17204 [of the UCL]," *In re Tobacco II Cases*, 207 P.3d 20, 40 (Cal. 2009), and "actual reliance must be established for an award of damages under the CLRA," *Cohen v. DIRECTV, Inc.*, 101 Cal. Rptr. 3d 37, 47-48 (Cal. Ct. App. 2009). Therefore, the "substance" of the laws conflict, *Camp Jaycee*, 197 N.J. at 143, and the Court must proceed to the second step of the analysis. *See also Feldman v. Mercedes-Benz USA, LLC*, No. 2:11-cv-00984 (WJM), 2012 WL 6596830, at *6 (D.N.J. Dec. 18, 2012) ("Courts in this District have recognized that the NJCFA materially conflicts with the consumer protection statutes of California, the CLRA and UCL.").

> **b.  A Choice of Law Analysis is Appropriate at this Time and California has the "Most Significant Relationship" to this Case**

Under the second step of the analysis, the Court looks to the applicable section of the Second Restatement to determine which state has the "most significant relationship" to this case with respect to the consumer fraud allegations. *Maniscalco*, 709 F.3d at 207; *Camp Jaycee*, 197

**NOT FOR PUBLICATION**

N.J. at 140. "Where a fraud or misrepresentation claim has been alleged, the court looks to the factors found in § 148 of the Restatement (Second) of Conflict of Laws." *Maniscalco*, 709 F.3d at 207. Subsection (2) is applicable because "the plaintiff[s'] action[s] in reliance took place in whole or in part in a state other than that where the false representations" are alleged to have been made. Restatement (Second) of Conflict of Laws § 148(2) (1971); *see Maniscalco*, 709 F.3d at 207-08. Under this subsection, the Court considers the following factors:

> (a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations,
> (b) the place where the plaintiff received the representations,
> (c) the place where the defendant made the representations,
> (d) the domicil[e], residence, nationality, place of incorporation and place of business of the parties,
> (e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and
> (f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

Restatement (Second) of Conflict of Laws § 148(2). "The relative importance of each of the factors in a given case 'should be determined in light of the choice-of-law principles stated in § 6 [of the Restatement].'" *Maniscalco*, 709 F.3d at 207 (quoting Restatement (Second) of Conflict of Laws § 148 cmt. e). Those principles are "(1) the interests of interstate comity; (2) the interests of the parties; (3) the interests underlying the field of tort law; (4) the interests of judicial administration; and (5) the competing interests of the states." *Camp Jaycee*, 197 N.J. at 147 (internal citation and quotation marks omitted).

As an initial matter, Plaintiffs argue that this inquiry "requires the court to engage in a fact-sensitive analysis that cannot be undertaken on a record consisting solely of a complaint and motion to dismiss." Pls.' Opp'n at 7. In support, they cite statements by other courts in this district stating that, in the context of those cases, the factual record was not developed enough to make the

**NOT FOR PUBLICATION**

choice of law determination. *See id.* In response, Land Rover acknowledges that "some cases defer a choice-of-law analysis where a relevant factual deficit exists," but contends that postponing the inquiry is inappropriate "when no additional facts are needed for the analysis." ECF No. 24, Reply Mem. of Law in Support of Def. Jaguar Land Rover N. Am., LLC's Mot. to Dismiss Pls.' Am. Compl. ("Def.'s Reply") pg. 1. Land Rover argues that this case falls into the latter category. *Id.*

Land Rover is correct. Plaintiffs have failed to show how further development of the record would affect the choice of law analysis. Specifically, they have failed to demonstrate even the possibility that additional information concerning any of the six factors in section 148 might impact the Court's inquiry. *See Montich*, 849 F. Supp. 2d at 447-48 ("Plaintiff's Complaint provides all necessary facts for the Restatement analysis. Indeed, Plaintiff's conclusory position that the Court cannot engage in a choice-of-law analysis is belied by her inability to indicate what other facts are necessary to decide this issue."); *see also Cooper*, 374 F. App'x at 255 n.5 (rejecting similar argument "that the District Court erred in resolving the choice-of-law determination as to his statutory consumer fraud act claim at the motion to dismiss stage").

Plaintiffs argue for postponing a choice of law analysis because more facts are needed regarding Restatement section 148 factor (c), "the place where the defendant made the representations." § 148(2)(c). They point to a portion of the Third Circuit's opinion in *Maniscalco* in which the court distinguished an earlier district court opinion, *In re Mercedes-Benz Tele Aid Contract Litig.*, 257 F.R.D. 46 (D.N.J. 2009). The Third Circuit explained that in *Tele Aid*, "the court was bound at the motion to dismiss stage to accept as fact that the defendant's marketing team was solely responsible for any alleged misrepresentations and omissions, and that all of the misconduct took place in New Jersey." *Maniscalco*, 709 F.3d at 211. Therefore, in *Tele Aid*, factor (c) pointed toward New Jersey law. In *Maniscalco*, however, discovery had revealed that the

**NOT FOR PUBLICATION**

representations were actually made in Japan, and not New Jersey, and therefore factor (c) did not weigh in favor of New Jersey law. *Id.*

Maniscalco does not help Plaintiffs. Plaintiffs argue that New Jersey law should apply. Pls.' Opp'n at 8-12. Discovery might confirm that New Jersey was "the place where the defendant made the representations." Restatement § 148(2)(c). Or, as in *Maniscalco*, discovery might show that the alleged representations were made elsewhere, thus weakening the connection to New Jersey. As explained more fully later, even accepting that factor (c) weighs in favor of New Jersey law, this Court finds that the balance of factors weighs clearly in favor of applying California consumer fraud law. The Court agrees with Land Rover that discovery is unnecessary because "[w]hether it confirmed Plaintiffs' allegations or disproved them, their home state's law would still apply." Def.'s Reply at 2.

Turning to the section 148(2) factors, the parties do not appear to dispute the result of analyzing each individual factor. Rather, they differ over the weight to assign the factors in light of the relevant precedent and the principles in section 6 of the Restatement. Factors (a), (b), and (e) – the place where Plaintiffs acted in reliance, where they received the representations, and where the subject of the transactions were located – clearly point to California, where both Plaintiffs allege they purchased their vehicles after reviewing marketing material and interacting with Land Rover employees. First Am. Compl. ¶¶ 45-46, 52-53. Factor (c) – where defendant made the representations – weighs in favor of New Jersey because the Court must accept as true Plaintiffs' allegation that "New Jersey is where the conduct causing injury to the Plaintiffs . . . occurred and from where it emanated." *Id.* ¶ 17. Factor (d) – the domicile, residence, nationality, place of incorporation and place of business of the parties – does not weigh strongly in favor of either state, as Plaintiffs are citizens of California and Land Rover is headquartered in New Jersey.

15

**NOT FOR PUBLICATION**

*Id.* ¶¶ 19-20. It may weigh slightly in favor of California. *See Maniscalco*, 709 F.3d at 208 (emphasizing comment i to section 148, which states "[t]he domicil, residence and place of business of the plaintiff are more important than are similar contacts on the part of the defendant" because "financial loss will usually be of greatest concern to the state with which the person suffering the loss has the closest relationship"). Finally, factor (f) "is inapplicable since there is no contract performance required by Plaintiff[s]." *Montich*, 849 F. Supp. 2d at 448. In sum, three factors clearly favor application of California law, one favors New Jersey law, one does not weigh heavily in either direction, and one is inapplicable.

Land Rover argues that it is "legally insufficient" for factor (c) alone to result in the application of New Jersey law, Def.'s Reply at 2, and that "the Third Circuit has [so] held," Def.'s Mem. at 10. That is an overstatement. While the Third Circuit in *Maniscalco* did hold that, in that case, "this single factor – factor (c) – d[id] not warrant applying New Jersey law," 709 F.3d at 209, it did not lay down a blanket rule. The Third Circuit voiced skepticism at the rationale of the *Tele Aid* court, which had found that New Jersey's "interest in deterring misconduct by corporations headquartered within its borders" justified the application of New Jersey law. *Maniscalco*, 709 F.3d at 210. The court, however, stopped short of explicitly rejecting such an approach. *See id.* ("But even were we to find the reasoning of the *Tele Aid* court persuasive, the case before us is distinguishable."). It might, therefore, be possible to envision a case in which the *Tele Aid* approach is appropriate.

This is not that case. In *Maniscalco*, the Third Circuit emphasized that "[n]othing else about the relationship between the parties, other than the fortuitous location of [defendant's] headquarters, took place in the state of New Jersey." 709 F.3d at 208. Rather, plaintiff's "home state, in which he received and relied on [defendant's] alleged fraud, ha[d] the 'most significant

**NOT FOR PUBLICATION**

relationship' to his consumer fraud claim." *Id.* at 209. Here, Plaintiffs' only allegations related to New Jersey arise out of the fact that Land Rover is headquartered there. *See* First Am. Compl. ¶ 17 ("Land Rover NA's marketing and advertising efforts, warranty and goodwill policies and procedures, and maintenance schedules and recommendations were all likely created in and orchestrated from the location of Land Rover NA's present headquarters in New Jersey."). Plaintiffs have not alleged any other connection with the state, other than this "fortuitous location" of Land Rover's headquarters. *Maniscalco*, 709 F.3d at 208. As a result, Plaintiffs have failed to distinguish this case from *Maniscalco* and other similar cases in this jurisdiction. *See also Cooper*, 374 F. App'x at 255 ("The transaction in question bears no relationship to New Jersey other than the location of Samsung's headquarters. Cooper's claim bears the most significant relationship with Arizona, the state in which the television was marketed, purchased, and used.").

The Court also rejects Plaintiffs' invitation to apply New Jersey law by relying on the principles in section 6 of the Restatement or on the *Tele Aid* court's public policy rationale. Pls.' Opp'n at 9-12. Under similar circumstances, the *Maniscalco* court found that "[a]pplying Section 6 of the Restatement" in fact "bolsters the conclusion" that the law of Plaintiffs' home state should apply. 709 F.3d at 209; *see also id.* at 209-10 (analyzing each principle). As for the *Tele Aid* decision, the Third Circuit commented, "New Jersey's deterrent interest might well be served by actions involving in-state plaintiffs or actions involving additional contacts within New Jersey without opening the floodgates to nation-wide consumer fraud class actions brought by out-of-state plaintiffs involving transactions with no connection to New Jersey other than the location of the defendant's headquarters." *Id.* at 210.

**NOT FOR PUBLICATION**

The Court finds that application of the factors in section 148(2) of the Restatement results in the clear choice of California's UCL and CLRA, which are already pled in counts seven and eight. Land Rover's motion to dismiss count one alleging a violation of the NJCFA is granted.

**2.  Breach of Express Warranty**

Land Rover argues that there is a conflict between the express warranty laws of New Jersey and California, and that under the applicable section of the Restatement, this Court should find that California law applies to Plaintiffs' breach of express warranty claim. Def.'s Mem. at 26-27. Plaintiffs counter that a choice of law analysis is premature and that Land Rover "fails to meet its burden to demonstrate that New Jersey and California warranty laws conflict." Pls.' Opp'n at 30. As such, Plaintiffs ask the Court to apply New Jersey law. *Id.* at 31. Because the Court concludes that Land Rover has not demonstrated a conflict in the express warranty laws of New Jersey and California, New Jersey law applies to Plaintiffs' breach of express warranty claim. This conclusion also means that New Jersey law applies to Plaintiffs' claim for breach of the duty of good faith and fair dealing.

As an initial matter, Land Rover's citation to an opinion of another court of this district for the proposition that "courts have held that an actual conflict exists between the laws of New Jersey and California governing contract claims," Def.'s Mem. at 26 (quoting *Feldman v. Mercedes-Benz USA, LLC*, No. 2:11-cv-00984 (WJM), 2012 WL 6596830, at *7 (D.N.J. Dec. 18, 2012)), is insufficient to meet its burden. It is possible that the "substance," *Camp Jaycee*, 197 N.J. at 143, of some contract laws will conflict between different states while others will not. As example, the laws on express warranty might conflict while the laws on implied warranty do not. That is why "[t]he Second Restatement assessment takes place on an issue-by-issue basis." *Id.* Land Rover does better on reply, arguing that California law on breach of express warranty requires an

**NOT FOR PUBLICATION**

allegation of reasonable reliance on the terms of the warranty, whereas there is no requirement of reliance under New Jersey law. Def.'s Reply at 10. The Court finds, however, that Land Rover has failed to demonstrate a conflict.

In New Jersey, "[a]s a rule, no proof of the buyer's reliance on the warranty is necessary other than that the seller's statements were of a kind which naturally would induce the purchase. The warranty need not be the sole inducement." *Elias v. Ungar's Food Products, Inc.*, 252 F.R.D. 233, 239 (D.N.J. 2008) (citation omitted). Rather, to state an express warranty claim in New Jersey, Plaintiffs must establish an "affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain." N.J. Stat. Ann. § 12A:2-313 (West 2013). "[A] promise is presumed to be a 'part of the basis of the bargain' under New Jersey law 'once the buyer has become aware of the affirmation of fact or promise . . . .'" *Liberty Lincoln-Mercury, Inc. v. Ford Motor Co.*, 171 F.3d 818, 825 (3d Cir. 1999) (quoting *Cipollone v. Liggett Group, Inc.*, 893 F.2d 541, 568 (3d Cir.1990), *overruled on other grounds*, 505 U.S. 504 (1992)). In determining whether the "basis of the bargain" requirement is met, "the focus is not on any particular language at a particular point in time but whether the seller's actions or language when viewed in light of his relationship with the buyer were fairly regarded as part of the contract to purchase the good." *Id.* A defendant may rebut the presumption by showing "clear affirmative proof . . . that the buyer knew that the affirmation of fact or promise was untrue." *Cipollone*, 893 F.2d at 568.

In California, the statutory language is identical, and also requires that there be an "affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain." Cal. Com. Code § 2313 (West 2013). However, the case

**NOT FOR PUBLICATION**

law raises some question as to whether a stronger form of reliance – different from the "basis of the bargain" requirement under New Jersey law – is required.

The matter appeared to be resolved by California state courts. The California Supreme Court has observed: "The basis of the bargain requirement represents a significant change in the law of warranties. Whereas plaintiffs in the past have had to prove their reliance upon specific promises made by the seller . . . the Uniform Commercial Code requires no such proof." *Hauter v. Zogarts*, 534 P.2d 377, 383 (Cal. 1975) (citation omitted). The California Courts of Appeal have expanded upon that comment. In *Keith v. Buchanan*, the court explained:

> The change of the language in section 2313 of the California Uniform Commercial Code modifies both the degree of reliance and the burden of proof in express warranties under the code. The representation need only be part of the basis of the bargain, or merely a factor or consideration inducing the buyer to enter into the bargain. A warranty statement made by a seller is presumptively part of the basis of the bargain, and the burden is on the seller to prove that the resulting bargain does not rest at all on the representation.

220 Cal. Rptr. 392, 398 (Cal. Ct. App. 1985). This description of the law closely mirrors the express warranty law of New Jersey. More recently, in *Weinstat v. Dentsply Int'l, Inc.*, the Court of Appeal stated, "[B]reach of express warranty arises in the context of contract formation in which reliance plays no role." 103 Cal. Rptr. 3d 614, 625 (Cal. Ct. App. 2010). In addition, the court found "persuasive[]" a description of the "basis of the bargain" requirement as relating "to the essence of the contract." *Id.* (quoting *Autzen v. John C. Taylor Lbr. Sales, Inc.*, 572 P.2d 1322, 1326 (Or. 1977) (emphasis removed)). *Keith* and *Weinstat*'s description of California's express warranty law does not conflict with the express warranty law of New Jersey.

However, some federal district courts in California have read these cases narrowly. In *Coleman v. Boston Scientific Corp.*, No. 1:10-cv-01968-OWW, 2011 WL 3813173, at *4-5 (E.D. Cal. Aug. 29, 2011), the court distinguished *Keith* and *Weinstat* on the basis that in both cases

**NOT FOR PUBLICATION**

there was privity of contract between the buyer and seller, concluding, "[n]either *Weinstat* nor *Keith* supports Plaintiff's erroneous contention that reliance is not required where privity is absent." The court also found the "invocation of California Commercial Code section 2313 . . . unavailing, as it does not alter the requirement that reliance (or some other substitute for privity) is required for an express warranty claim against a non-selling manufacturer of a product." *Id. See also Keegan v. Am. Honda Motor Co., Inc.*, 284 F.R.D. 504, 546 (C.D. Cal. 2012) ("[I]n the absence of privity, California law requires a showing that a plaintiff relied on an alleged omission or misrepresentation.").

These courts appear to draw on developments in the law concerning whether *privity* is necessary in express warranty cases. There is a "general rule . . . that privity of contract is required in an action for breach of either express or implied warranty and that there is no privity between the original seller and a subsequent purchaser who is in no way a party to the original sale." *Burr v. Sherwin Williams Co.*, 268 P.2d 1041, 1048 (Cal. 1954). There are "[s]ome particularized exceptions to the rule," such as "when the plaintiff *relies on* written labels or advertisements of a manufacturer." *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008) (emphasis added). The courts reason, therefore, that *either* privity or reliance is required to state a claim for breach of express warranty. If that were so, the laws of California and New Jersey would conflict, since neither privity nor reliance is required in New Jersey. *See Elias*, 252 F.R.D. at 239; *Alloway v. Gen. Marine Indus., L.P.*, 149 N.J. 620, 642 (1997) ("Under the U.C.C. as construed by this Court, moreover, the absence of privity no longer bars a buyer from reaching through the chain of distribution to the manufacturer.").

While there is logic to this argument, it finds no support in the opinions of the California state courts. Neither *Keith* nor *Weinstat* purport to limit their statements to situations in which there

**NOT FOR PUBLICATION**

is privity. Rather, they refer to what the California Supreme Court called the "significant change in the law of warranties," *Hauter*, 534 P.2d at 383, resulting from California's adoption of the Uniform Commercial Code. *See Weinstat*, 103 Cal. Rptr. 3d at 626 ("Pre-Uniform Commercial Code law governing express warranties required the purchaser to prove reliance on specific promises made by the seller. . . . The Uniform Commercial Code, however, does not require such proof." (citation omitted)); *Keith*, 220 Cal. Rptr. at 397 ("Under former provisions of law, a purchaser was required to prove that he or she acted in reliance upon representations made by the seller. California Uniform Commercial Code section 2313 indicates only that the seller's statements must become 'part of the basis of the bargain.'" (citations omitted)).

The Court finds that Land Rover has not established that California law requires a showing of reliance in a breach of express warranty claim, and so Land Rover has failed to demonstrate that the express warranty laws of New Jersey and California conflict. The Court will apply New Jersey law to Plaintiffs' breach of express warranty claim.

In addition, because a claim for breach of the duty of good faith and fair dealing may not "arise absent an express or implied contract," *Wade v. Kessler Inst.*, 172 N.J. 327, 345 (2002), the law of the state governing the express contract must also govern that claim. Because the Court finds New Jersey law applies to the express warranty claim, New Jersey law also applies to their claim for breach of the duty of good faith and fair dealing.

### 3. Remaining Issues

Although not briefed by either party, there are also choice of law considerations with respect to Plaintiffs' two remaining causes of action relating to the putative Nationwide Class: common law fraud and unjust enrichment.

NOT FOR PUBLICATION

The elements of common law fraud are the same in New Jersey and California. *Compare Robinson Helicopter Co., Inc. v. Dana Corp.*, 102 P.3d 268, 274 (Cal. 2004) ("The elements of fraud are: (1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage."), *with Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 610 (1997) ("The five elements of common-law fraud are: (1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages."). The Court will therefore apply New Jersey law to Plaintiffs' cause of action for common law fraud.

As for Plaintiffs' cause of action for unjust enrichment, there is some uncertainty over whether there is a conflict between California and New Jersey law on this issue. *See Montich v. Miele USA, Inc.*, 849 F. Supp. 2d 439, 459-61 (D.N.J. 2012) (surveying case law to conclude "a conflict may exist between New Jersey's and California's application of the law of unjust enrichment," but declining to decide the issue absent briefing by the parties). However, the Court finds it unnecessary to engage in this choice of law inquiry because, as explained below, Plaintiffs' cause of action for unjust enrichment must be dismissed under the law of either state.

Finally, the Court notes that because counts six, seven, and eight are brought individually and on behalf of only the putative California Sub-Class under specific California statutory provisions, they raise no choice of law issues.

### Plaintiffs' Fraud-Based Claims

Land Rover argues that Plaintiffs' claims in counts three, seven, and eight for common law fraud, violation of the CLRA, and violation of the UCL should be dismissed for failure to satisfy

**NOT FOR PUBLICATION**

the pleading requirements of Federal Rule of Civil Procedure 9(b). Def.'s Mem. at 13-16. Land Rover also contends that dismissal is warranted because Plaintiffs have failed to adequately allege that Land Rover owed them a duty to disclose the existence of the alleged Defect. *Id.* at 17-25. Nonetheless, the Court finds that Plaintiffs' allegations meet the heightened pleading requirements of Rule 9(b) and that Plaintiffs have adequately alleged that Land Rover owed them a duty to disclose based on allegations that Land Rover had exclusive knowledge of the Defect.

> **1.  Federal Rule of Civil Procedure 9(b)**

Land Rover argues that Plaintiffs' fraud-based claims lack the particularity required by Federal Rule of Civil Procedure 9(b). Def.'s Mem. at 13-16. In particular, Land Rover suggests that Plaintiffs must identify specific samples of representations on which they relied which did not contain the allegedly omitted information. *Id.* at 13-14 (citing *Eisen v. Porsche Cars N. Am., Inc.*, No. CV 11-9405 (CAS), 2012 WL 841019, at *3 (C.D. Cal. Feb. 22, 2012)). Land Rover also contends that Plaintiffs have failed to sufficiently specify the "where" and "when," *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 276-77 (3d Cir. 2006), of the allegedly omitted information. Def.'s Mem. at 15-16; Def.'s Reply at 4 ("[T]hey attempt to skirt the 'when' and 'where' requirements of Rule 9(b) . . . ."). The Court disagrees and finds that Plaintiffs' allegations satisfy Rule 9(b).

As several courts have noted, Rule 9(b)'s "heightened standard is somewhat relaxed in a case based on a fraudulent omission," rather than one based on misrepresentation. *Montich v. Miele USA, Inc.*, 849 F. Supp. 2d 439, 451 (D.N.J. 2012); *see also Feldman v. Mercedes-Benz USA, LLC*, No. 2:11-CV-00984 (WJM), 2012 WL 6596830, at *10 (D.N.J. Dec. 18, 2012) ("[P]laintiffs pleading a fraud by omission claim are not required to plead fraud as precisely as they would for a false representation claim."). This is because "a plaintiff in a fraud by omission suit will not be

**NOT FOR PUBLICATION**

able to specify the time, place, and specific content of an omission as precisely as would a plaintiff in a false representation claim." *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1098-99 (N.D. Cal. 2007). Land Rover does not quarrel with these statements, but argues that Plaintiffs have failed to meet even this "relaxed" standard because "[l]ess specificity does not mean *no* specificity." Def.'s Mem. at 16; Def.'s Reply at 4. Luckily for Plaintiffs, their allegations rise far above the level of "no specificity."

Plaintiffs have alleged "the who, what, when, where and how of the events at issue." *Suprema Specialties*, 438 F.3d at 276-77. They allege the "who" – Land Rover, and the "what" and "how" – failing to disclose and actively concealing the Defect which "causes the suspension system's rubber air bellows . . . to develop leaks, releasing air pressure and losing their ability to properly hold the vehicle's weight," resulting in "a serious safety hazard, including the sudden loss of suspension on one side of the vehicle (rendering it lopsided while it is in motion), a loss of handling and the consequent inability to steer the vehicle in a straight line." First Am. Compl. ¶ 27. They also allege the "when" and "where." Plaintiff Austin purchased her CPO 2006 Range Rover in February 2008, and Plaintiff Majdipour purchased his vehicle in October 2009 at Land Rover Encino. *Id.* ¶¶ 46, 52. Each Plaintiff spoke with Land Rover employees and allegedly relied on Land Rover's CPO 140-point checklist, but none of the representations made to them warned of the Defect. *Id.* ¶¶ 46, 53-54. The Plaintiffs also allege specific occasions on which they took their vehicles to Land Rover authorized dealers for repair, and that the dealers failed to disclose "that this was a known systemic defect in the [Subject] Vehicles that may manifest again." *Id.* ¶¶ 48, 57. Plaintiffs have certainly satisfied the requirement that they "inject precision or some measure of substantiation into [the] fraud allegation," by providing "sufficient particularity to

**NOT FOR PUBLICATION**

place the defendant on notice of the precise misconduct with which it is charged." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007).

Land Rover places particular emphasis upon its reading of the Ninth Circuit case *Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009), for its contention that Plaintiffs must provide samples of the representations or advertisements on which they relied. Def.'s Mem. at 13-14. But as Plaintiffs rightly point out, *Kearns* involved misrepresentations, not alleged fraudulent omissions. Pls.' Opp'n at 27. *See Kearns*, 567 F.3d at 1125 ("Kearns alleges that Ford's marketing materials and representations led him to believe that CPO vehicles were inspected by specially trained technicians and that the CPO inspections were more rigorous and therefore more safe."). To be sure, *Kearns* also summarily dismissed, with little discussion, Plaintiff's non-disclosure claims, *id.* at 1127, but the discussion and standard on which Land Rover relies dealt specifically with the claims for affirmative misrepresentations. Moreover, even were *Kearns* an applicable precedent, Plaintiffs' pleading would be sufficient. The *Kearns* plaintiff "failed to specify which sales material he relied upon in making his decision to buy a CPO vehicle." *Id.* at 1126. Here, Plaintiffs have specifically referred to the CPO 140-point checklist and discussions with Land Rover employees, all of which allegedly failed to disclose the defect. First Am. Compl. ¶¶ 46, 53-54.[2]

Finally, Land Rover argues that Plaintiffs' allegations concerning the remaining Subject Vehicles (i.e., those in the putative classes) fail to meet Rule 9(b)'s particularity requirement because they "ignore time and place entirely" or "imply that all times and places are relevant." Def.'s Mem. at 15. However, in circumstances such as these, where Plaintiffs allege that there was a failure to disclose a particular Defect in various advertisements and representations throughout

---

[2] The Court has reviewed the remaining district court cases relied on by Land Rover and finds them either inapplicable or clearly distinguishable.

**NOT FOR PUBLICATION**

a relevant time period, their allegations suffice where they allege their individual experiences in detail and also allege the omitted information that should have been disclosed in those advertisements and representations. *See Lynch v. Tropicana Products, Inc.*, No. 2:11-CV-07382 (DMC), 2013 WL 2645050, at *5 (D.N.J. June 12, 2013) ("Plaintiffs assert that the alleged misrepresentations appeared on the labels, packaging, and advertisements for Tropicana's orange juice throughout the Class Period. Therefore, the 'where' requirement may be satisfied by the misrepresentations allegedly contained on Tropicana's labels or packages; there need not be strict identification of one particular store location where it is alleged that the labeling and packaging in question was sold in thousands of locations throughout the country."); *Gutierrez v. TD Bank*, No. 11-5533 (JLL), 2012 WL 272807, at *7 (D.N.J. Jan. 27, 2012) ("Plaintiffs need only state with particularity the who, what, when and where of the false misrepresentations or omissions made by Defendants based on their familiarity with said misrepresentations as experienced by them in the mortgage transactions . . . .").

The Court finds that Plaintiffs' allegations satisfy the requirements of Federal Rule of Civil Procedure 9(b).

### 2.  Allegations of Land Rover's Duty to Disclose

Land Rover also challenges Plaintiffs' fraud-based claim by arguing that Plaintiffs have failed to adequately allege that Land Rover owed them a duty to disclose the existence of the Defect. Def.'s Mem. at 17. Under both the CLRA and UCL, "a manufacturer is not liable for a fraudulent omission concerning a latent defect . . . unless the omission is 'contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose.'" *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1141 (9th Cir. 2012) (quoting *Daugherty v. Am. Honda Motor Co., Inc.*, 51 Cal. Rptr. 3d 118, 126 (Cal. Ct. App. 2006); *see also*

**NOT FOR PUBLICATION**

*Baba v. Hewlett-Packard Co.*, No. C 09-05946 RS, 2010 WL 2486353, at *3 (N.D. Cal. June 16, 2010) ("A duty to disclose under UCL requires the same showing as a duty to disclose under CLRA."). A duty to disclose can arise in four ways: "(1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts." *LiMandri v. Judkins*, 60 Cal. Rptr. 2d 539, 543 (Cal. Ct. App. 1997). Plaintiffs have not alleged a fiduciary relationship. Land Rover challenges the adequacy of their allegations with respect to the remaining possibilities.[3]

The Court finds that Plaintiffs' allegations concerning Land Rover's exclusive knowledge contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). Plaintiffs allege that Range Rovers for the 2003 through 2006 model years contain a Defect that Land Rover has known about since 2003. First Am. Compl ¶¶ 1, 36. They also allege that "the Defect cannot be detected until after it manifests," and therefore "Plaintiffs and other members of the proposed class were not reasonably able to discover the problem . . . ." *Id.* ¶ 23. To support this allegation, Plaintiffs rely on complaints to the NHSTA and on the internet, the TSB issued by Land Rover, and a long list of "internal sources of aggregate information about the problem" that were "not available to consumers." *Id.* ¶¶ 4-5, 33, 36.

As an initial matter, the Court agrees with Land Rover that the "undated, anonymous comments" from the NHSTA and internet, Def.'s Mem. at 21, do nothing to bolster Plaintiffs' allegations. That is because "plaintiffs must sufficiently allege that a defendant was aware of a

---

[3] Land Rover does not challenge that the existence of the Defect would be a "material fact." Def.'s Reply at 6 ("Land Rover has not raised the issue of materiality.").

**NOT FOR PUBLICATION**

defect at the time of sale to survive a motion to dismiss," *Wilson*, 668 F.3d at 1145, and "[n]one

of those postings or complaints . . . include any dates, and therefore shed no light on when [Land

Rover] knew of the alleged defects." *Baba*, 2010 WL 2486353, at *5. Plaintiffs also fail to allege

that Land Rover ever read these comments or that they were forwarded *to* Land Rover.

      This is not fatal to Plaintiffs' claim, as the Court finds that Plaintiffs' remaining allegations,

taken together, adequately plead Land Rover's exclusive knowledge. Plaintiffs' allegations

concerning "pre-release testing data, early consumer complaints about the Defect to Land Rover

and their dealers, testing conducted in response to those complaints, high failure rates and

replacement parts sales data contained in [Land Rover's] warranty databases, as well as high

reimbursement claims paid to Land Rover dealers," First Am. Compl. ¶ 36, are similar to

allegations found sufficient in analogous cases. *See Feldman v. Mercedes-Benz USA, LLC*, No.

2:11-CV-00984 (WJM), 2012 WL 6596830, at *11 (D.N.J. Dec. 18, 2012) (finding sufficient

allegations that "Defendants had exclusive knowledge of material facts not known to Plaintiffs,

through pre-release testing data, early consumer complaints about the AIS Defect . . . testing

conducted in response to those complaints, warranty and post-warranty claims, replacement part

sales data, aggregate data from Mercedes dealers, and from other internal sources" (quotation

marks omitted)); *Ehrlich v. BMW of N. Am., LLC*, 801 F. Supp. 2d 908, 918-19 (C.D. Cal. 2010)

("pre-release testing data, early consumer complaints to BMW and dealers, testing done in

response to complaints, replacement part sales data, aggregate data from BMW dealers, and other

internal sources"); *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1096-97 (N.D. Cal. 2007)

("'[o]nly GM had access to the aggregate data from its dealers[,] only GM had access to pre-release

testing data[, and] only GM had access to the numerous complaints from its customers'").

**NOT FOR PUBLICATION**

These allegations are not conclusory. Land Rover does not deny that it engages in the types of testing alleged or maintains the other types of aggregate data asserted. Plaintiffs have no way of knowing what these data showed, but have adequately alleged that they showed a Defect and gave Land Rover exclusive knowledge of it. Moreover, Plaintiffs support their contention by submitting the TSB, issued by Land Rover, which warned that vehicles "may develop hairline cracks in the rubber material of the front air spring." First Am. Compl. Ex. A, pg. 1. The TSB supports Plaintiffs allegations that Land Rover engaged in testing or otherwise learned of the Defect through internal sources: Land Rover issued an internal bulletin advising dealers on how to repair the very Defect Plaintiffs complain of. The TSB makes Plaintiffs' allegation that Land Rover had "internal sources of aggregate information about the problem" that were "not available to consumers," First Am. Compl. ¶ 36, entirely plausible.

Land Rover challenges Plaintiffs' reliance on the TSB in two ways. It argues that the TSB, by its terms, only applies to vehicles through model year 2004, and therefore does nothing to support Plaintiffs' claims with respect to their model year 2006 Range Rovers. Def.'s Reply at 7, 8. Plaintiffs, however, allege that all vehicles for model years 2003 through 2006 contain the same Defect. First Am. Compl. ¶ 5. Moreover, the TSB not only supports Plaintiffs' allegations concerning the existence of the Defect, it also supports Plaintiffs' allegations that Land Rover engaged in internal testing and otherwise maintained internal sources of aggregate information about the problem. *Id.* ¶ 36.

Land Rover also argues that "courts in this District have repeatedly refused to view TSBs as evidence of a defect or consumer fraud," Def.'s Mem. at 20, because it "may discourage manufacturers from responding to customers in the first place," *id.* (quoting *Chan v. Daimler AG*, No. 11-5391, 2012 WL 5827448, at *7 (D.N.J. Nov. 9, 2012) (citation omitted)). This argument

**NOT FOR PUBLICATION**

is off mark. The Court, at this stage, is not making findings as to whether the TSB should be considered as evidence or an admission of liability in evaluating the claim on the merits. Rather, the question is whether the TSB, together with the allegations of "internal sources of aggregate information about the problem," First Am. Compl. ¶ 36, support a claim that is "plausible on its face." *Iqbal*, 556 U.S. at 678. Even if there is a public policy rationale for excluding TSBs as evidence of a defect or an admission of liability, the Court will not now stretch that rationale to raise the bar that Plaintiffs must meet at the pleading stage, especially when they allege that the information showing the Defendant's exclusive knowledge is within the Defendant's exclusive control.

The Court denies Land Rover's motion to dismiss counts three, seven, and eight.

**Plaintiffs' Remaining Claims**

Land Rover moves to dismiss Plaintiffs' remaining claims for breach of express warranty, breach of the duty of good faith and fair dealing, breach of the implied warranty of merchantability, and unjust enrichment.

### 1. Breach of Express Warranty

Land Rover argues that Plaintiffs have not alleged a breach of the CPO Limited Warranty and their claim in count two should be dismissed. Def.'s Mem. at 27-29. Plaintiffs respond that "Land Rover . . . breached the [warranty] with respect to both Plaintiffs by failing to repair and/or replace Plaintiffs' air suspension systems while the vehicles were still covered under the CPO warranty." Pls.' Opp'n at 31. Plaintiffs argue that on each of their initial visits, the dealer breached the warranty by only partially repairing the suspension system, "after which the defect recurred." *Id.* The Court finds that Plaintiffs have failed to allege a breach of express warranty.

**NOT FOR PUBLICATION**

The CPO Limited Warranty required Land Rover to "repair, replace or reimburse" covered parts "if required due to a mechanical breakdown or failure." First Am. Compl. Ex. B at 5. According to Plaintiffs' First Amended Complaint, this is precisely what occurred. Plaintiff Majdipour's first incident involved his right front air spring, which a dealer replaced under warranty. First. Am. Compl. ¶¶ 47-48. Plaintiff Austin's first incident involved her right front spring, and her second incident involved the left front spring. *Id.* ¶¶ 56-57. Both of these problems were replaced by the dealer under warranty. *Id.*

As for Plaintiff Majdipour's second incident, in which he was allegedly informed that his repairs would not be covered under warranty, Land Rover is correct that he has not alleged that the incident occurred *during* the term of the warranty – the earlier of 6 years/75,000 miles from the original in-service date. While Majdipour does allege that there were 65,783 miles on the odometer, *id.* ¶ 49, he does not allege that April 6, 2012 – the date of the incident – was within 6 years from the original in service date for his 2006 Range Rover. *See Moulton v. LG Electronics USA, Inc.*, CIV.A. 11-4073 JLL, 2012 WL 3598760 (D.N.J. Aug. 21, 2012) ("In the Third Circuit, an express warranty does not cover repairs made after the applicable time has elapsed.").

Plaintiffs' suggestion that the repairs were incomplete because Land Rover did not replace parts of the suspension system that had not yet broken down runs against the express terms of the warranty. The Court agrees with Land Rover that the express warranty "does not require Land Rover to predict parts' possible future failures or replace parts prophylactically." Def.'s Reply at 11. *See Herbstman v. Eastman Kodak Co.*, 68 N.J. 1, 12 (1975) ("We do not agree . . . that Kodak's express 'warranty' was that the camera would be free of mechanical defects. Rather, the language used contemplated that such defects might occur and, if so, Kodak would repair them.").

**NOT FOR PUBLICATION**

The Court also finds Plaintiffs' claims that the terms of the express warranty were unconscionable to be without merit. There is nothing substantively unconscionable about a 6 year/75,000 mile warranty per se. *See Nelson v. Nissan N. Am., Inc.*, 894 F. Supp. 2d 558, 565-66 (D.N.J. 2012). The allegations that Land Rover knew that the Defect might manifest after the express warranty term do not implicate the conscionability of that term. The Second Circuit has persuasively explained the reason this is so:

> All parts will wear out sooner or later and thus have a limited effective life. Manufacturers always have knowledge regarding the effective life of particular parts and the likelihood of their failing within a particular period of time. Such knowledge is easily demonstrated by the fact that manufacturers must predict rates of failure of particular parts in order to price warranties and thus can always be said to "know" that many parts will fail after the warranty period has expired. A rule that would make failure of a part actionable based on such "knowledge" would render meaningless time/mileage limitations in warranty coverage.

*Abraham v. Volkswagen of Am., Inc.*, 795 F.2d 238, 250 (2d Cir. 1986); *see also Nelson*, 894 F. Supp. 2d at 566 ("Nissan's alleged knowledge of a transmission defect is an insufficient basis on which to find the warranty limit unconscionable."); *Alban v. BMW of N. Am.*, No. CIV. 09-5398 (DRD), 2011 WL 900114, at *9 (D.N.J. Mar. 15, 2011) ("[A]llegations that BMW knew that the sound insulation in his vehicle would fail after the expiration of the warranty agreement do not indicate that the time and mileage limitation clause was unconscionable.").

The Court also rejects Plaintiffs' claim that the warranty was procedurally unconscionable because they had "no meaningful choice" in determining the time limits and because a "gross disparity in bargaining power existed." First Am. Compl. ¶ 87. First, the clear weight of authority has rejected this argument. *See Smith v. Ford Motor Co.*, 462 F. App'x 660, 663-64 (9th Cir. 2011) ("Smith was presented with a meaningful choice, not just the option of purchasing a different vehicle from a different manufacturer, but also the option of purchasing a different warranty with an extended durational limit from Ford."); *Alban*, 2011 WL 900114, at *9 ("Alban's bare-bones

**NOT FOR PUBLICATION**

allegations that he 'had no meaningful choice in determining' the time and mileage limitation, and that 'a gross disparity in bargaining power existed between' him and BMW, are 'no more than conclusions [that] are not entitled to the assumption of truth.'" (quoting *Iqbal*, 556 U.S. at 679)). Second, Plaintiffs' own allegations make it clear that there was a choice – Plaintiff Austin chose to purchase an additional warranty for 8 years/96,000 miles. First Am. Compl. ¶ 80 n.6.

Because Plaintiffs have failed to allege a breach of the CPO Limited Warranty, the Court grants Land Rover's motion to dismiss count two.

### 2. Breach of the Duty of Good Faith and Fair Dealing

Land Rover moves to dismiss Plaintiffs' claim in count four for a breach of the duty of good faith and fair dealing. With respect to New Jersey law,[4] Land Rover argues that Plaintiffs have failed to allege facts showing bad faith and that the claim also fails because the "allegations of supposed bad faith are precisely those alleging breach of warranty." Def.'s Reply at 14. The Court finds that Plaintiffs have sufficiently alleged a breach of the duty of good faith and fair dealing under New Jersey law.

"A covenant of good faith and fair dealing is implied in every contract in New Jersey." *Wilson v. Amerada Hess Corp.*, 168 N.J. 236, 244 (2001). "Although the implied covenant of good faith and fair dealing cannot override an express term in a contract, a party's performance under a contract may breach that implied covenant even though that performance does not violate a pertinent express term." *Id.* "Good faith entails adherence to community standards of decency, fairness or reasonableness . . . and requires a party to refrain from destroying or injuring the right of the other party to receive its contractual benefits. A plaintiff must also prove the defendant's bad motive or intention." *Iliadis v. Wal-Mart Stores, Inc.*, 191 N.J. 88, 109-10 (2007) (citations

---

[4] Much of Land Rover's argument pertains to California law, but the Court has concluded that New Jersey law applies to this claim.

**NOT FOR PUBLICATION**

and quotation marks omitted). "[T]he breach of the implied covenant arises when the other party

has acted consistent with the contract's literal terms, but has done so in such a manner so as to

have the effect of destroying or injuring the right of the other party to receive the fruits of the

contract." *Wade v. Kessler Inst.*, 172 N.J. 327, 345 (2002) (citation and quotation marks omitted).

The Court has already concluded that Plaintiffs have failed to allege a violation of the

express terms of the contract – the CPO Limited Warranty. However, Plaintiffs have adequately

alleged a violation of the duty of good faith and fair dealing such that the Court will allow that

claim to go forward. Plaintiffs allege that during their repair visits, Land Rover dealers failed to

alert them to the fact that the suspension system was defective, and only repaired the parts that had

actually broken down, despite Land Rover's alleged knowledge that other parts of the suspension

system were defective and would break down in the future. First. Am. Compl. ¶¶ 47-48, 56-57,

82, 95. While Land Rover is correct that "[n]o *contractual* responsibilities obligate Land Rover to

notify Plaintiffs of any alleged defect," Def.'s Mem. at 37, New Jersey's implied covenant of good

faith and fair dealing may impose such an obligation. Plaintiffs have alleged that this action by

Land Rover injured their "right . . . to receive the fruits of the contract." *Wade*, 172 N.J. at 345.

And though the Court is mindful that a "plaintiff must also prove the defendant's bad motive or

intention," *Iliadis*, 191 N.J. at 110, "at the pleading stage all that is required is an allegation of bad

faith," *Alin v. Am. Honda Motor Co., Inc.*, No. CIV A 08-4825 (KSH), 2010 WL 1372308, at *11

(D.N.J. Mar. 31, 2010). *See Seidenberg v. Summit Bank*, 348 N.J. Super. 243, 263 (App. Div. 2002)

("[T]he presence of bad faith is to be found in the eye of the beholder or, more to the point, in the

eye of the trier of fact.").

The Court finds Plaintiffs' allegations sufficient to allow this claim to proceed. *See Alin*,

2010 WL 1372308, at *12 (finding sufficient allegations that "Honda unfairly exercised its

**NOT FOR PUBLICATION**

discretion in not performing under the warranty by deciding not to notify Alin of the defects in the A/C system and by not covering the repair costs"). Land Rover's motion to dismiss count four is denied.

### 3. Breach of the Implied Warranty of Merchantability

Land Rover argues that "Plaintiffs' implied warranties expired before the events forming the basis of their claims occurred." Def.'s Mem. at 32. Land Rover relies on the Song-Beverly Act, under which Plaintiffs bring their claim in count six, which provides: "The duration of the implied warranty of merchantability . . . with respect to used consumer goods sold in this state, . . . in no event shall" be "less than 30 days nor more than three months following the sale of used consumer goods to a retail buyer." Cal. Civ. Code § 1795.5(c) (West 2013). As both Plaintiffs allegedly experienced the Defect more than three months following the purchase of their vehicles, Land Rover argues they have failed to state a claim for breach of implied warranty. Def.'s Mem. at 32-33. Plaintiffs respond that the durational limits of the statute do not apply where a latent defect that existed at the time of sale manifests after those limits expire. Pls.' Opp'n at 33. The Court agrees with Plaintiffs and denies Land Rover's motion to dismiss count six.

In *Mexia v. Rinker Boat Co., Inc.*, 95 Cal. Rptr. 3d 285, 290-91 (Cal. Ct. App. 2009), the California Court of Appeal held that "[t]he implied warranty of merchantability may be breached by a latent defect undiscoverable at the time of sale." The court explained that "[u]ndisclosed latent defects . . . are the very evil that the implied warranty of merchantability was designed to remedy," *id.* at 291 (citation omitted), and stressed the "distinction between unmerchantability caused by a latent defect and the subsequent discovery of the defect," *id.* at 293. "In the case of a latent defect, a product is rendered unmerchantable, and the warranty of merchantability is breached, by the existence of the unseen defect, not by its subsequent discovery." *Id.* at 291. As for the suggestion

**NOT FOR PUBLICATION**

"that latent defects must be discovered and reported to the seller within the specified time," the court concluded it "has no support in the text of the statute." *Id.* at 295.

Land Rover, faced with this authority, argues that the Court should disregard it. Relying principally on discussions in a handful of federal district court opinions, Land Rover asserts that "*Mexia* enjoys the limelight as a case 'contrary to established California case law with respect to the duration of the implied warranty of merchantability.'" Def.'s Mem. at 33 (quoting *Marchante v. Sony Corp. of Am.*, 801 F. Supp. 2d 1013, 1022 (S.D. Cal. 2011) (citation omitted)). Land Rover contends *Mexia* should not be followed because it "'renders meaningless any durational limits on implied warranties,' as '[e]very defect that arises could conceivably be tied to an imperfection existing during the implied warranty period.'" *Id.* at 34 (quoting *Marchante*, 801 F. Supp. 2d at 1022).

The Court declines Land Rover's invitation to ignore *Mexia*. "An intermediate appellate state court's decision 'is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.'" *Boyanowski v. Capital Area Intermediate Unit*, 215 F.3d 396, 406 (3d Cir. 2000) (quoting *West v. American Telephone & Tel. Co.*, 311 U.S. 223, 237 (1940)). *Mexia* is a thoroughly reasoned, published opinion by a California Court of Appeal that is less than five years old. The court took into account the statutory history, its language, and its purpose in reaching its decision. It ultimately concluded that applying the durational limits to latent defects that existed at the time of sale and manifest after those limits expire is "unsupported by the text of the statute, legal authority, or sound policy." *Mexia*, 95 Cal. Rptr. 3d at 296-97. The skepticism of a few federal district courts concerning the wisdom of that decision are not, in this Court's view, "persuasive data that the highest court of the state would decide otherwise." *Boyanowski*, 215 F.3d

**NOT FOR PUBLICATION**

at 406 (citation omitted). *See also Ehrlich v. BMW of N. Am., LLC*, 801 F. Supp. 2d 908, 924 (C.D.

Cal. 2010) ("The Court will follow *Mexia* . . . to find that Plaintiff can pursue his Song-Beverly

Act claim. *Mexia* directly addressed and rejected the precise argument BMW makes here, holding

that, so long as a latent defect existed within the one-year period, its subsequent discovery beyond

that time did not defeat an implied warranty claim.").

      Land Rover also argues that, even if *Mexia* is applicable, it only applies to "defects that

render the product unmerchantable from the outset." Def.'s Mem. at 34 (quoting *Marchante*, 801

F. Supp. 2d at 1021). To be sure, some courts have appeared to read this limitation into *Mexia*'s

holding. *See, e.g.*, *Ortega v. Toyota Motor Sales, U.S.A., Inc.*, 422 F. App'x 599, 601 (9th Cir.

2011) ("[T]he court suggested that to ultimately prevail, Mexia still needed to demonstrate a defect

existed at the time of sale."). Land Rover is incorrect, however, in its suggestion that Plaintiffs

must allege that their vehicles "failed to *work properly* from the outset." Def.'s Mem. at 34

(emphasis added). In making this argument, Land Rover makes the very mistake the *Mexia* court

warned against: It "ignores the distinction between unmerchantability caused by a latent defect

and the subsequent discovery of the defect" when it manifests. *Mexia*, 95 Cal. Rptr. 3d at 293.

Plaintiffs have adequately alleged that the vehicles were unmerchantable *at the time of sale* because

they contained the alleged Defect. *See* First Am. Compl. ¶ 1. This Defect was also allegedly

undiscoverable until it manifested; it was latent. *Id.* ¶¶ 23-24. It follows that the three month

durational limitation does not bar the claim, and the motion to dismiss count six is denied.

      **4.   Unjust Enrichment**

      Land Rover argues that Plaintiffs' cause of action in count five for unjust enrichment must

be dismissed under both California and New Jersey law. It asserts that there is no cause of action

for unjust enrichment in California, and that New Jersey law does not permit a cause of action for

**NOT FOR PUBLICATION**

unjust enrichment when the claim sounds in fraud. Def.'s Mem. at 38, 40; Def.'s Reply at 15.[5] The Court agrees with Land Rover and grants its motion to dismiss count five.

It is well-settled that "[t]here is no cause of action in California for unjust enrichment." *Durell v. Sharp Healthcare*,108 Cal. Rptr. 3d 682, 699 (Cal. Ct. App. 2010) (citation and quotation marks omitted). "Rather, it is a general principle underlying various doctrines and remedies, including quasi-contract." *Jogani v. Superior Court*, 81 Cal. Rptr. 3d 503, 511 (Cal. Ct. App. 2008) (citation omitted). *See also Bosinger v. Belden CDT, Inc.*, 358 F. App'x 812, 815 (9th Cir. 2009) ("In California there is no cause of action for unjust enrichment; it is a general principle, underlying various legal doctrines and remedies, rather than a remedy itself." (citation and quotation marks omitted)). A party may sometimes elect to *recover* based on unjust enrichment, but it is not a "freestanding cause of action." *Munoz v. MacMillan*,124 Cal. Rptr. 3d 664, 675 (Cal. Ct. App. 2011).

In New Jersey, "[u]njust enrichment is of course a familiar basis for imposition of liability in the law of contracts." *Castro v. NYT Television*, 370 N.J. Super. 282, 299 (App. Div. 2004). However, "New Jersey does *not* recognize unjust enrichment as an independent tort cause of action." *Warma Witter Kreisler, Inc. v. Samsung Electronics Am., Inc.*, No. CIV. 08-5380 (JLL), 2009 WL 4730187, at *7 (D.N.J. Dec. 3, 2009). This is because "the role of unjust enrichment in the law of torts is limited for the most part to its use as a justification for other torts such as fraud or conversion." *Castro*, 370 N.J. Super. at 299. *See also Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.*, 171 F.3d 912, 936-37 (3d Cir. 1999) ("In the tort setting, an unjust enrichment claim is essentially another way of stating a traditional tort claim (i.e., if defendant is permitted to keep the benefit of his tortious conduct, he will be unjustly enriched)."). In this matter,

---

[5] Land Rover also makes an argument, which Plaintiffs dispute, based on a lack of privity between the parties, Def.'s Mem. at 38-9. The Court finds it unnecessary to resolve this issue.

**NOT FOR PUBLICATION**

Plaintiffs' cause of action for unjust enrichment unquestionably relies on a tort theory sounding in fraud. *See* First Am. Compl. ¶¶ 98, 99, 100 ("As a direct and proximate result of Defendants' failure to disclose known defects and material misrepresentations . . ."). This cause of action for unjust enrichment is not permitted in New Jersey. *See Pappalardo v. Combat Sports, Inc.*, No. CIV.A. 11-1320 (MLC), 2011 WL 6756949, at \*12 (D.N.J. Dec. 23, 2011) (dismissing unjust enrichment claim because it was "presented as a tort-based theory of recovery").

Land Rover's motion to dismiss count five is granted.

## CONCLUSION

Land Rover's motion to dismiss is granted in part and denied in part. An appropriate Order follows.


Date: October 9, 2013




/s/ **William H. Walls**
United States Senior District Judge