**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| SIMON MAJDIPOUR, PAMELA AUSTIN, BRIAN FUCHS, CHARLES MANIS, JASON MANOWITZ, and MARVINA ROBINSON, individually, and on behalf of a class of similarly situated individuals, | : : : : : : | **OPINION** Civ. No. 12-07849 (WHW) (CLW) |
| Plaintiffs, | : : | |
| v. | : : | |
| JAGUAR LAND ROVER NORTH AMERICA, LLC, | : : : | |
| Defendant. | : : | |

**Walls, Senior District Judge**

This matter arises from Plaintiffs' Second Amended Complaint, which includes new plaintiffs and raises new claims against Defendant Jaguar Land Rover North America, LLC ("Land Rover"). Land Rover moves to dismiss the Second Amended Complaint's new claims under Federal Rule of Civil Procedure 12(b)(6). Without oral argument under Federal Rule of Civil Procedure 78(b), the Court denies Land Rover's motion in part and grants it in part. In the accompanying order, the Court denies dismissal of the new plaintiffs' common law fraud claims, but grants dismissal of the Second Amended Complaint's other new claims.

### FACTUAL AND PROCEDURAL BACKGROUND

This action was initiated by Plaintiff Simon Majdipour, individually and on behalf of a proposed class of similarly situated individuals, on December 26, 2012. Compl., ECF No. 1. Mr. Majdipour amended the initial complaint to add plaintiff Pamela Austin on April 17, 2013. First

**NOT FOR PUBLICATION**

Am. Compl. ("FAC"), ECF No. 14. Defendant Land Rover moved to dismiss it under Federal Rule of Civil Procedure 12(b)(6). Def.'s Mot. to Dismiss FAC, ECF No. 17. The Court granted Land Rover's motion to dismiss in part and denied it in part on October 9, 2013. Opinion on Mot. to Dismiss FAC ("FAC Opinion"), ECF No. 26. After the Court issued its opinion, Plaintiffs sought and obtained leave to submit a Second Amended Complaint, which they filed on August 11, 2014. Second Am. Compl. ("SAC"), ECF No. 44. The SAC includes four new named plaintiffs who each assert three claims against Land Rover: (1) violation of state consumer protection statutes, (2) common law fraud, and (3) breach of the duty of good faith and fair dealing. *Id.* ¶¶ 101-08, 144-60. The SAC also adds a new claim brought by the existing plaintiffs; Mr. Majdipour, Ms. Austin, and a sub-set of putative class members; for failure to recall or retrofit. *Id.* ¶¶ 161-69.

Because the Court's earlier opinion summarized the facts asserted in the FAC, the Court limits its discussion here to the new factual allegations in the SAC. In the SAC, new plaintiffs Brian Fuchs, Charles Manis, Jason Manowitz, and Marvina Robinson ("New Plaintiffs") each allege that they purchased a Land Rover Range Rover sport utility vehicle, from the 2003 to 2006 model-years, which had a defective electronic air suspension system. *Id.* ¶¶ 1-8. They allege that their Range Rovers' suspension systems "are defective in material, manufacturing and/or design which causes them to develop leaks in the rubber air bellows used in those systems." *Id.* ¶ 1. The leaks "cause a loss of air pressure in the suspension system that renders Class Vehicles suddenly unable to travel in a straight line, which poses a serious risk of injury and death." *Id.* ¶ 2. The SAC contends that "Land Rover knew or should have known about the Defect since 2003" and "failed to disclose" it before and after New Plaintiffs bought their Range Rovers. *Id.* ¶ 3.

In July 2003, new plaintiff Brian Fuchs, a New York citizen, purchased a 2003 model-year Range Rover in New York. *Id.* ¶ 63. Before purchasing the vehicle, according to the SAC, Mr.

**NOT FOR PUBLICATION**

Fuchs viewed a similar model-year Range Rover at the New York Auto Show "and at no time during the car show was it disclosed to him that the vehicle suffered from the alleged Suspension Defect." *Id.* ¶ 64. In September and October 2008, when Mr. Fuchs's Range Rover had accumulated over 50,000 miles, Mr. Fuchs brought it to an authorized Land Rover dealer in New York "complaining that the vehicle's electronic air suspension light was on." *Id.* ¶¶ 65-66. The dealer made repairs which cost Mr. Fuchs $1,665. *Id.* Mr. Fuchs also had the suspension system repaired in January 2009, at approximately 55,908 miles, and in July 2010, at approximately 70,857 miles. *Id.* ¶¶ 67-68. These repairs cost him $4,739. *Id.* The SAC alleges that Mr. Fuchs was never told during his repair visits "that this was a known systemic defect" that might recur. *Id.* ¶ 69.

New plaintiff Marvina Robinson, also a New York citizen, bought a certified pre-owned 2006 model-year Range Rover in or about May 2006 from an authorized Land Rover dealer in Glen Cove, New York. *Id.* ¶ 85. The SAC alleges that she attended the New York Auto Show and reviewed promotional materials about the vehicle, including Land Rover's website, television commercials, and brochures. *Id.* ¶ 86. She also "spoke to Land Rover Glen Cove's sales representative" about the vehicle, but none of these information sources disclosed that the vehicle suffered from the alleged suspension defect. *Id.* ¶¶ 86-87. In July 2012 and November 2013, Ms. Robinson brought her Range Rover to third-party repair facilities "complaining that the front suspension had dropped," and they made repairs that cost her $4,674. *Id.* ¶¶ 88-89.

In July 2005, new plaintiff Charles Manis, a Georgia citizen, purchased a used 2006 model-year Range Rover in Florida. *Id.* ¶ 71. The SAC alleges that, before making the purchase, Mr. Manis reviewed Land Rover sales and promotional materials about the vehicle, but they did not disclose the alleged suspension defect. *Id.* ¶¶ 72-73. In October 2011, when Mr. Manis's Range

3

**NOT FOR PUBLICATION**

Rover had over 90,000 miles, an authorized Land Rover dealer in Florida found that "the right front air spring was leaking, and replaced the right front air spring" after the vehicle's "front suspension had dropped." *Id.* ¶ 74. The repair cost Mr. Manis over $1,600. *Id.* The SAC alleges that the problem recurred in December 2013 and that a third party repaired it for $1,172. *Id.* ¶ 75. Neither repair facility informed Mr. Manis "that this was a known systemic defect." *Id.* ¶ 76.

In or about December 2006, new plaintiff Jason Manowitz, a Florida citizen, purchased a certified pre-owned 2004 model-year Range Rover from a Land Rover dealer in Florida. *Id.* ¶ 78. Before his purchase, according to the SAC, Mr. Manowitz "reviewed Land Rover's sales and promotion materials" and spoke to a sales representative at the dealership, but no person or document informed him of the alleged defect. *Id.* ¶¶ 79-80. In October 2011, when Mr. Manowitz's Range Rover had over 80,000 miles, an authorized Land Rover dealer found "that the front air spring was leaking" and replaced it for $1,523. *Id.* ¶ 81. In March 2013, the SAC alleges that a third party made repairs that cost $1,115 because "the front suspension had dropped." *Id.* ¶ 82. The repair facilities never advised Mr. Manowitz that his vehicle had a "known systemic defect" which might recur. *Id.* ¶ 83.

Alleging these facts, New Plaintiffs and putative classes of similarly situated individuals seek to recover from Land Rover for violations of the New York and Florida consumer protection statutes, common law fraud, and breach of the duty of good faith and fair dealing. *Id.* ¶¶ 101-08, 144-60. Plaintiffs Majdipour and Austin, in addition to re-alleging the claims that survived Land Rover's motion to dismiss the FAC,[1] also seek to recover for Land Rover's alleged failure to recall or retrofit its 2003 to 2006 model-year Range Rovers. *Id.* ¶¶ 161-69. The SAC asserts that despite

---

[1] Defendant's present motion does not seek to dismiss, and the Court does not address, the claims re-alleged in the SAC which were presented in the FAC.

**NOT FOR PUBLICATION**

knowing that the defective suspension systems pose "serious safety risks" to consumers and other drivers, Land Rover has unreasonably "refused to recall or retrofit the Class Vehicles and their unsafe front air suspensions." *Id.* ¶ 165-68. Land Rover moves to dismiss each of the SAC's new causes of action for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (internal quotations and alterations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—that the pleader is entitled to relief." *Id.* at 679.

As the Third Circuit Court of Appeals has explained, the analysis "unfolds in three steps." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). "First, we outline the elements a plaintiff must plead to state a claim for relief. Next, we peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth. Finally, we look for well-pled factual allegations, assume their veracity, and then 'determine whether they plausibly give rise to an entitlement to relief.'" *Id.* (citing and quoting *Iqbal*, 556 U.S. at 675-79, and *Argueta v. U.S. Immigration and Customs Enforcement*, 643 F.3d 60, 73 (3d Cir. 2011)). As a general matter, the court's inquiry "is not whether plaintiffs will ultimately prevail in a trial on the merits, but whether

5

**NOT FOR PUBLICATION**

they should be afforded an opportunity to offer evidence in support of their claims." *In re Rockefeller Ctr. Prop., Inc.*, 311 F.3d 198, 215 (3d Cir. 2002).

## DISCUSSION

### 1.  New Plaintiffs' State Consumer Protection Statute Claims

#### a.  New Plaintiffs' Claims Under Florida's Consumer Protection Statute Are Time-Barred

The SAC alleges that Land Rover violated the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. Ann. § 501.201 *et seq.*, by "failing to disclose and concealing" the alleged suspension defects in Plaintiffs' Range Rovers. SAC ¶ 150. Plaintiffs indicate in their briefing that this claim is brought by new plaintiffs Manis and Manowitz ("Florida Plaintiffs") on behalf of themselves and a putative Florida sub-class. Pls.'s Opp. 17. Defendant argues that the Florida Plaintiffs' FDUTPA claims should be dismissed as time-barred.[2]

Generally, statute of limitations defenses cannot be raised on a motion to dismiss unless the "complaint facially shows noncompliance with the limitations period and the affirmative defense clearly appears on the face of the pleading." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.1 (3d Cir. 1994).[3] The statute of limitations for claims under FDUTPA is

---

[2] The parties do not dispute that Florida law applies to the statutory consumer protection claims of Plaintiffs Manis and Manowitz or that New York law applies to the statutory consumer protection claims of Plaintiffs Fuchs and Robinson. Def.'s Mem. in Supp. Mot. to Dismiss the SAC ("Def.'s Mem. 7-21, ECF No. 49; Pls.' Br. in Opp. ("Pls.' Opp.") 17-32, ECF No. 52. As such, the Court does not conduct a choice of law analysis for these claims.

[3] Plaintiffs' argument that "[p]leading requirements do not compel a litigant to anticipate potential affirmative defenses, such as statutes of limitations, and to affirmatively plead facts in avoidance of such defenses," Pl.'s Opp. 23 (quoting *Abbas v. Dixon*, 480 F.3d 636, 642 (2d Cir. 2007)), is inapposite. *Abbas* held that a district court must not dismiss a complaint *sua sponte* on statute of limitations grounds without giving the plaintiff "notice and an opportunity to be heard." *Abbas*, 480 F.3d at 640. Such is not the case here. Defendant's motion to dismiss Plaintiffs' claims on statutes of limitations grounds has been fully briefed.

**NOT FOR PUBLICATION**

four years. Fla. Stat. § 95.11(3)(f); *Brown v. Nationscredit Fin. Servs. Corp.*, 32 So. 3d 661, 662 n.1 (Fla. Dist. Ct. App. 2010). There is no "delayed discovery rule" applicable to FDUTPA claims. *Marlborough Holdings Group, Ltd. v. Azimut-Benetti*, 505 Fed. Appx. 899, 906 (11th Cir. 2013); *Yusuf Mohamad Excavation, Inc. v. Ringhaver Equipment Co.*, 793 So.2d 1127 (Fla. Dist. Ct. App. 2001), approved by *Davis v. Monahan*, 832 So.2d 708, 711 (Fla. 2002). FDUTPA claims accrue when a plaintiff purchases an allegedly defective product, not when they discover the alleged defect. *Matthews v. Am. Honda Motor Co.*, No. 12-60630, 2012 WL 2520675, at *3 (S.D. Fla. June 6, 2012); *Point Blank Solutions, Inc. v. Toyobo Am., Inc.*, No. 09-61166, 2011 WL 1833366, at *6 (S.D. Fla. May 13, 2011) ("Plaintiffs' FDUTPA claim accrued when they purchased the [product], not when they discovered that the [product] was unusable.").

Although there is no delayed discovery rule, the four-year statute of limitations for FDUTPA claims can be tolled if a defendant fraudulently concealed a product's alleged defect. "A plaintiff seeking to toll the statute of limitations as a result of fraudulent concealment 'must allege . . . (1) successful concealment of the cause of action, (2) fraudulent means to achieve that concealment, and (3) plaintiff exercised reasonable care and diligence in seeking to discover the facts that form the basis of his claim.'" *Licul v. Volkswagen Grp. of Am., Inc.*, No. 13-61686, 2013 WL 6328734, at *6 (S.D. Fla. Dec. 5, 2013). The "fraudulent means to achieve the concealment" must go beyond mere non-disclosure, and must constitute willful concealment. *Raie v. Cheminova, Inc.*, 336 F.3d 1278, 1282 n.1 (11th Cir. 2003).

The applicability of the four-year statute of limitations to the Florida Plaintiffs' FDUTPA claims is apparent on the face of the SAC. Plaintiffs Manis and Manowitz bought their Range Rovers in July 2005 and December 2006. SAC ¶¶ 71, 78. Because there is no delayed discovery rule for FDUTPA claims, the Florida Plaintiffs' claims accrued on their purchase dates—well more

**NOT FOR PUBLICATION**

than four years before this action was commenced on December 26, 2012. It follows that the SAC's FDUTPA claims are time-barred unless the four-year statute of limitations was tolled. Plaintiffs contend that the statute of limitations was tolled under the doctrines of fraudulent concealment and equitable estoppel. Pls.' Opp. 20-22.

Arguing first for tolling under the fraudulent concealment doctrine, Plaintiffs claim that "Defendants actively concealed the Suspension Defect by at least the following: [1] withholding information about the systemic nature of the defect from consumers . . . and [2] when attempting to 'fix' the defect, [Defendant] would do so using a temporary fix." *Id.* at 21. These allegations fail to support tolling for fraudulent concealment. First, the allegation that Land Rover withheld information about the defect asserts only non-disclosure, not the type of active and willful concealment required by Florida courts for tolling. *See Raie*, 336 F.3d at 1282 n.1; *see also Speier-Roche v. Volkswagen Grp. of Am. Inc.*, No. 14-20107, 2014 WL 1745050, at *7 (S.D. Fla. Apr. 30, 2014). Second, Plaintiffs' allegation that Defendant made illusory repairs to hide the defect fails because neither Mr. Manis nor Mr. Manowitz actually alleges that he received repairs during the statute of limitations period. The four-year statute of limitations for Mr. Manis's FDUTPA claim would have run by July 2009, but his first repair was in October 2011. SAC ¶¶ 71, 74. Likewise, the statute of limitations for Mr. Manowitz's claim would have run by December 2010, but he did not get any repairs until October 2011. *Id.* ¶¶ 78, 81. Plaintiffs' argument for tolling on the grounds that Land Rover fraudulently concealed the defect with illusory repairs is defeated by the SAC's admission that no such repairs took place.

Nor does the equitable estoppel doctrine provide tolling to save Plaintiffs' FDUTPA claims. "Equitable estoppel . . . only applies when a plaintiff is aware that he has a cause of action during the limitations period, but forbears from bringing suit because of the defendant's

8

**NOT FOR PUBLICATION**

misrepresentations." *Licul*, 2013 WL 6328734, at *6; *see also Black Diamond Props., Inc. v. Haines*, 69 So.3d 1090, 1093–94 (Fla. Dist. Ct. App. 2011). Plaintiffs make no allegation that either Mr. Manis or Mr. Manowitz was aware that he had a cause of action during the limitations period.

On its face, the SAC shows that the four-year statute of limitations bars the Florida Plaintiffs' FDUTPA claims and provides no factual basis that could support tolling. The Court will dismiss Plaintiffs' FDUTPA claims as time-barred.

### b. New Plaintiffs' Claims Under New York's Consumer Protection Statute Are Time-Barred

Plaintiffs also claim that, with respect to new plaintiffs Fuchs and Robinson ("New York Plaintiffs") and a putative New York sub-class, Land Rover violated the New York Consumer Protection from Deceptive Acts and Practices statute ("NYCPDAP" or "Section 349"). SAC ¶ 160; Pls.' Opp. 22. Defendant argues that the New York Plaintiffs' NYCPDAP claims should be dismissed as time-barred. Def.'s Mem. 13-17.

In New York, "General Business Law § 349 prohibits '[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service,' and allows any person injured by a violation of the section to recover damages." *Corsello v. Verizon New York, Inc.*, 967 N.E.2d 1177, 1184 (N.Y. 2012); N.Y. Gen. Bus. Law § 349 *et seq.* A three-year statute of limitations applies to Section 349 claims and runs from the time of accrual, which is the moment when a "plaintiff has been injured by a deceptive act or practice violating section 349." *Gaidon v. Guardian Life Ins. Co. of Am.*, 750 N.E.2d 1078, 1083 (N.Y. 2001). A plaintiff is injured "when all of the factual circumstances necessary to establish a right of action have occurred, so that the plaintiff would be entitled to relief." *Id.* There is no applicable delayed discovery rule, and "accrual

9

**NOT FOR PUBLICATION**

occurs when Plaintiff first suffered injury." *Statler v. Dell, Inc.*, 775 F. Supp. 2d 474, 484 (E.D.N.Y. 2011); *see also M & T Mortgage Corp. v. Miller*, Civ. No. 02-05410, 2009 WL 3806691, at *1-2 (E.D.N.Y. Nov. 13, 2009).

"Under New York law, the doctrines of equitable tolling or equitable estoppel may be invoked to defeat a statute of limitations defense." *Abbas v. Dixon*, 480 F.3d 636, 642 (2d Cir. 2007). "Equitable tolling applies where a defendant's fraudulent conduct results in a plaintiff's lack of knowledge of a cause of action." *Marshall v. Hyundai Motor Am.*, No. 12-3072, 2014 WL 5011049, at *7 (S.D.N.Y. Sept. 30, 2014) (citing cases). To obtain equitable tolling, "a plaintiff may not rely on the same act that forms the basis for the claim," but rather must allege a "later fraudulent misrepresentation [made] . . . for the purpose of concealing the former tort." *Ross v. Louise Wise Servs., Inc.*, 868 N.E.2d 189, 198 (N.Y. 2007). "[M]ere silence or failure to disclose the wrongdoing is insufficient'" *Id.* (quoting *Zoe G. v. Frederick F.G.*, 208 A.D.2d 675, 675-76 (2d Dept. 1994)). Alternatively, equitable estoppel permits tolling of a statute of limitations in extraordinary circumstances where the plaintiff knew of the existence of his cause of action but the defendant's misconduct caused the plaintiff to delay in bringing suit. *See Conklin v. Jeffrey A. Maidenbaum, Esq.*, Civ. No. 12-3606, 2013 WL 4083279, at *5 (S.D.N.Y. Aug. 13, 2013).

Without the benefit of equitable tolling or equitable estoppel, it is apparent on the face of the SAC that the New York Plaintiffs' Section 349 claims are time-barred. Mr. Fuchs's and Ms. Robinson's claims accrued when they purchased their Range Rovers because that is when they received vehicles which they allege are "defective and fail prematurely" instead of non-defective vehicles. SAC ¶¶ 155-56. Since Mr. Fuchs was first injured by Land Rover's deceptive practices when he purchased his Range Rover in July 2003 and Ms. Robinson was first injured when she bought hers in May 2006, their respective three-year statutes of limitations expired in July 2006

**NOT FOR PUBLICATION**

and May 2009—before this action was initiated in December 2012. *See Statler*, 775 F. Supp. 2d at 484.

Plaintiffs argue that "Defendant should be estopped from asserting a statute of limitations defense," because "Defendant's active concealment is ongoing." Pls.' Opp. 24. This argument for equitable tolling fails because Plaintiffs do not allege any facts that point to active concealment. The allegation that "Defendant have [*sic*] knowingly and intentionally concealed material facts" is conclusory and insufficient. SAC ¶ 154. Nor do Plaintiffs properly allege that Land Rover conducted active concealment through illusory repairs, as the SAC does not assert that either New York Plaintiff received repairs during his or her respective limitation period. Plaintiffs' argument for active concealment boils down to their claim that "Defendant failed to disclose the defect to Plaintiffs through either warnings or recall notices." Pls.' Opp. 24. But "mere silence or failure to disclose the wrongdoing is insufficient" for equitable tolling. *Ross*, 868 N.E.2d at 198. Plaintiffs cite *General Stencils v. Chiappa*, 219 N.E.2d 169 (N.Y. 1966), for support, but this case does not help them because the New York Court of Appeals has explicitly distinguished it from cases like this one "where the alleged concealment consisted of nothing but defendants' failure to disclose the wrongs they had committed." *Corsello*, 967 N.E.2d at 1184. Where plaintiffs only allege failure to disclose previous wrongs, defendants are "not estopped from pleading a statute of limitations defense." *Id.* The Court finds no factual basis in the SAC that supports equitable tolling or equitable estoppel.

Plaintiffs also argue that their Section 349 claims are timely because Defendants' "post-sale conduct" is "actionable under section 349" independently of their pre-sale conduct. Pls.' Opp. 24 (citing *Marshall v. Hyundai Motor Am.*, No. 12-3072, 2014 WL 5011049, at *10 (S.D.N.Y. Sept. 30, 2014)). This argument is that Defendant's "fail[ure] to disclose the defect to Plaintiffs

**NOT FOR PUBLICATION**

through either warnings or recall notices" is itself a deceptive practice actionable under Section 349, rather than a basis for equitable tolling. Pls.' Opp. 24. The Court disagrees that Land Rover's alleged post-sale failure to disclose is independently actionable under Section 349. Plaintiffs' pre-sale and post-sale allegations are the same: that Land Rover failed to disclose the suspension defect. The Court sees no reason to distinguish Land Rover's alleged pre-sale and post-sale failure to disclose. According to the factual assertions in the SAC, the New York Plaintiffs each had a right of action against Land Rover under Section 349 when they incurred injury by paying more for their Range Rovers than they would have if they had known about the alleged defect. SAC ¶¶ 155-56. This is when their Section 349 claim accrued and the statute of limitations started running. *See Gaidon*, 750 N.E.2d at 1083. To allow Plaintiffs to file an independent Section 349 claim for each subsequent moment in which Land Rover did not disclose the alleged defect would render the three-year statute of limitations meaningless.

In *Marshall*, where the district court distinguished pre-sale and post-sale deceptive conduct, the decision relied not only on the defendant's ongoing failure to disclose an alleged defect but also on the defendant's refusal to cover the defect under its warranty. *Marshall*, 2014 WL 5011049, at *10; *see also Statler*, 775 F. Supp. 2d at 484-85 (denying dismissal of post-sale deceptive practices claim where plaintiff alleged that defendant committed deceptive conduct in handling plaintiff's warranty claim). Here, the New York Plaintiffs' argument for post-sale liability does not include any allegations beyond ongoing non-disclosure. The Court finds that the New York Plaintiffs' Section 349 claim accrued when they purchased their Range Rovers.

Because the New York Plaintiffs' three-year limitations periods expired before this suit began and the SAC presents no factual basis to support tolling, the Court finds the New York Plaintiffs' Section 349 claims untimely.

**NOT FOR PUBLICATION**

#### 2. New Plaintiffs' Common Law Fraud Claims

##### a. New York Plaintiffs Have Adequately Alleged Common Law Fraud

###### i. Choice of Law

The parties dispute whether New York's or New Jersey's law applies to the New York Plaintiffs' common law fraud claims.

A federal court applies the choice of law rules of its forum state—here, New Jersey—to determine which law controls in cases under its diversity jurisdiction. *Klaxon Co. v. Stentor Elec. Mfg. Co., Inc.*, 313 U.S. 487, 496 (1941); *Maniscalco v. Brother Int'l (USA) Corp.*, 709 F.3d 202, 206 (3d Cir. 2013). "New Jersey has adopted the 'most significant relationship' test set forth in the Restatement (Second) of Conflict of Laws. This is a two-part test." *Maniscalco*, 709 F.3d at 206. (citing *P.V. ex rel. T.V. v. Camp Jaycee*, 197 N.J. 132, 142-43 (2008)). "[T]he first step is to determine whether an actual conflict exists. That is done by examining the substance of the potentially applicable laws to determine whether 'there is a distinction' between them." *Camp Jaycee*, 197 N.J. at 143 (quoting *Lebegern v. Forman*, 471 F.3d 424, 430 (3d Cir. 2006) (further citation omitted)). "If there is not an actual conflict, the inquiry is over and, because New Jersey would apply its own law in such a case, a federal court sitting in diversity must do the same." *Lebegern*, 471 F.3d at 428. "If, however, an actual conflict is found to exist, the inquiry proceeds to the second step." *Cooper v. Samsung Elecs. Am., Inc.*, 374 F. App'x 250, 254 (3d Cir. 2010).

"Under the second part of the inquiry, the court must determine which jurisdiction has the 'most significant relationship' to the claim." *Maniscalco*, 709 F.3d at 207 (quoting *Camp Jaycee*, 197 N.J. at 144). To make that determination, courts look to the Second Restatement, which "provides specific guidance for resolving particular types of cases." *Camp Jaycee*, 197 N.J. at 140; *see also Montich v. Miele USA, Inc.*, 849 F. Supp. 2d 439, 446 (D.N.J. 2012) (court "must weigh

**NOT FOR PUBLICATION**

the factors set forth in the Restatement section that corresponds to Plaintiff's cause of action"). "The Second Restatement assessment takes place on an issue-by-issue basis. It is qualitative, not quantitative." *Camp Jaycee*, 197 N.J. at 143 (citations omitted). "[I]n balancing the relevant elements of the most significant relationship test," courts should "apply the law of the state that has the strongest connection to the case." *Id.* at 155.

In the present case, the first step of the choice of law inquiry is to determine whether there is a conflict between New Jersey and New York law regarding the New York Plaintiffs' common law fraud claims. Plaintiffs' fraud claims are primarily predicated on an omission theory: they assert that Defendants fraudulently induced their Range Rover purchases by failing to disclose the alleged suspension defect. SAC ¶ 102. Under either New York or New Jersey law, such fraudulent omission claims require that the defendant have had a duty to disclose the omitted information. *See Stockroom, Inc. v. Dydacomp Dev. Corp.*, 941 F. Supp. 2d 537, 546 (D.N.J. 2013) (citing New Jersey cases for proposition that "a fraudulent omission under common law requires a duty to disclose"); *see also Nissan Motor Acceptance Corp. v. Scialpi*, 944 N.Y.S.2d 160, 161 (N.Y. App. Div. 2012) ("Where the fraud claim at issue is based on an omission or concealment of a material fact, the plaintiff must demonstrate that the defendant had a duty to disclose material information and failed to do so").

After examining the substance of New Jersey and New York law regarding a defendant's duty to disclose, the Court finds that there is an actual conflict in this case: a duty to disclose arises from a seller's superior knowledge in New York, but not in New Jersey. Under New York law, an affirmative duty to disclose arises where: "(1) one party has superior knowledge of certain information; (2) that information is not readily available to the other party; and (3) the first party knows that the second party is acting on the basis of mistaken knowledge." *Banque Arabe et*

**NOT FOR PUBLICATION**

*Internationale D'Investissement v. Maryland Nat. Bank*, 57 F.3d 146, 155 (2d Cir. 1995). Such superior knowledge does not create a duty to disclose under New Jersey law. "[W]here a claim for fraud is based on silence or concealment, New Jersey courts will not imply a duty to disclose, unless such disclosure is necessary to make a previous statement true or the parties share a 'special relationship.'" *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1185 (3d Cir. 1993) (citing *Berman v. Gurwicz*, 458 A.2d at 1313). Under New Jersey law, "[t]hree categories of relationships give rise to a duty to disclose: (1) fiduciary relationships, such as principal and agent, client and attorney, or beneficiary and trustee; (2) relationships where one party expressly reposits trust in another party, or else from the circumstances, such trust necessarily is implied; and (3) relationships involving transactions so intrinsically fiduciary that a degree of trust and confidence is required to protect the parties." *Id.* "New Jersey Courts have found no special relationship between individual consumers and automobile manufacturers that would impose a duty to disclose on the manufacturers." *Coba v. Ford Motor Co.*, No. 12-1622 (DRD), 2013 WL 244687, at *12 (D.N.J. Jan. 22, 2013) (citing cases); *see also Glass v. BMW of N. Am., LLC*, No. 10-5259 (ES), 2011 WL 6887721, at *17 (D.N.J. Dec. 29, 2011). As they would apply to this case, New York and New Jersey law conflict regarding whether Land Rover had a duty to disclose the alleged suspension defect.

Plaintiffs argue that there is no actual conflict here because New York and New Jersey employ equivalent definitions of common law fraud. Pls.' Opp. 34-35. Plaintiffs cite several of this Court's choice of law analyses in unrelated cases. *Id.* Unfortunately for Plaintiffs, the analyses in those cases are irrelevant to the Court's choice of law in this case. The present question is whether "there is a distinction" between New York law and New Jersey law as they would apply

**NOT FOR PUBLICATION**

to Plaintiffs' common law fraud claims. *Camp Jaycee*, 962 A.2d at 460-61. There is a distinction

regarding Land Rover's duty to disclose the alleged defect. This creates an actual conflict.

Because there is an actual conflict between New Jersey and New York law, the Court must

conduct the second step of the choice of law analysis and determine which state has the most

significant relationship to the New York Plaintiffs' claims. "Where a fraud or misrepresentation

claim has been alleged, the court looks to the factors found in § 148 of the Restatement (Second)

of Conflict of Laws." *Maniscalco*, 709 F.3d at 207. Subsection (2) is applicable because

"plaintiff[s'] action[s] in reliance took place in whole or in part in a state other than that where the

false representations" are alleged to have been made. Restatement (Second) of Conflict of Laws §

148 (1971). These factors are:

> (a) the place, or places, where the plaintiff acted in reliance upon the defendant's
> representations,
> (b) the place where the plaintiff received the representations,
> (c) the place where the defendant made the representations,
> (d) the domicil[e], residence, nationality, place of incorporation and place of
> business of the parties,
> (e) the place where a tangible thing which is the subject of the transaction between
> the parties was situated at the time, and
> (f) the place where the plaintiff is to render performance under a contract which he
> has been induced to enter by the false representations of the defendant.

Restatement (Second) of Conflict of Laws § 148(2). "The relative importance of each of the factors

in a given case 'should be determined in light of the choice-of-law principles stated in § 6 [of the

Restatement].'" *Maniscalco*, 709 F.3d at 207 (quoting Restatement (Second) of Conflict of Laws

§ 148 cmt. e). Those principles are "(1) the interests of interstate comity; (2) the interests of the

parties; (3) the interests underlying the field of tort law; (4) the interests of judicial administration;

and (5) the competing interests of the states." *Camp Jaycee*, 197 N.J. at 147 (internal citation and

quotation marks omitted).

16

**NOT FOR PUBLICATION**

When the Section 148 factors are applied to Mr. Fuchs's case, it is clear that factors (a), (b), (c), and (e) favor New York. Mr. Fuchs (a) acted in reliance by buying his Range Rover in New York, and (b) received representations about the Range Rover at the New York Auto Show. SAC ¶¶ 63-64. Land Rover (c) made representations at the New York Auto Show in New York, and (e) Mr. Fuchs's Range Rover was located in New York. *Id.* Factor (d) does not weigh strongly either way, as Mr. Fuchs is a New York citizen and Land Rover is headquartered in New Jersey. *Id.* ¶¶ 22-23. Factor (f) "is inapplicable since there is no contract performance required by Plaintiff[s]." *Montich*, 849 F. Supp. 2d at 448. The Court finds that New York has the most significant relationship to Mr. Fuchs's common law fraud claim.

Applying the Section 148 factors to Ms. Robinson's circumstances, factors (a), (b), and (e) favor New York. Ms. Robinson (a) acted in reliance by buying her Range Rover in New York, where (b) she allegedly received Defendant's representations, and where (e) the vehicle was located. SAC ¶¶ 85-86. Factor (c) is equivocal because Plaintiffs allege that Land Rover made representations in both states—at the New York Auto Show and from its headquarters in New Jersey. *Id.* ¶¶ 17, 86. Factor (d) is similarly neutral, as the parties' citizenship is split, and factor (f) is inapplicable. Because the unequivocal factors favor New York, the Court finds that New York has the most significant relationship to Ms. Robinson's common law fraud claim.

The Court will apply New York law to evaluate the New York Plaintiffs' common law fraud claims under Federal Rule of Civil Procedure 12(b)(6).

### ii. New York Plaintiffs Have Alleged Common Law Fraud Under New York Law

Land Rover argues that the New York Plaintiffs have failed to state a common law fraud claim because they "rely on an omission theory" but do not allege that Land Rover had a duty to

17

**NOT FOR PUBLICATION**

disclose the alleged suspension defect to them. Def.'s Mem. 28-32. Plaintiffs contend that their common law fraud claims should proceed because they "properly allege that Land Rover had a duty to disclose the Suspension Defect." Pls.' Opp. 38-39.

The SAC adequately states a cause of action for common law fraud under New York law by alleging that Land Rover breached a duty to disclose the alleged suspension defect. As the Court previously found regarding the FAC, the Court now finds that the SAC's allegations concerning Land Rover's exclusive knowledge contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678; *see* FAC Opinion at 28-31. The SAC alleges that Land Rover has known about the suspension defect "since 2002 at the latest" but "failed and refused to disclose the existence, nature, or scope of the Defect to Plaintiffs." SAC ¶ 32. As discussed in the Court's earlier opinion, FAC Opinion 29-30, Plaintiffs substantiate this assertion with factual allegations supporting Defendants' exclusive knowledge of the defect through "pre-release testing data, early consumer complaints about the Defect to Land Rover and their dealers, testing conducted in response to those complaints, high failure rates and replacement parts sales data contained in [Land Rover's] warranty databases, as well as high reimbursement claims paid to Land Rover dealers." SAC ¶ 40. These allegations are sufficient to state a plausible claim that Land Rover had superior knowledge of the suspension defect and, under New York law, was duty-bound to disclose it to the New York Plaintiffs. *Banque Arabe*, 57 F.3d at 155. Defendant's argument that no such duty exists is predicated on applying New Jersey law, which the Court has found non-applicable. The New York Plaintiffs' common law fraud claims will not be dismissed.

**NOT FOR PUBLICATION**

### iii.  Mr. Fuchs's Common Law Fraud Claim is Not Time-Barred

Land Rover also contends that Mr. Fuchs's common law fraud claim is time-barred under New York's statute of limitations. Def.'s Mem. 26. The Court agrees that Mr. Fuchs's common law fraud claim is subject to New York's statute of limitations,[4] but disagrees that the Court must dismiss Mr. Fuchs's claim on statute of limitations grounds at this time. "Under New York law, the statute of limitations for a fraud claim is 'the longer of either six years from when the cause of action accrued or two years from the time plaintiff discovered the fraud or could have with reasonable diligence discovered it.'" *Denny v. Ford Motor Co.*, 959 F. Supp. 2d 262, 272 (N.D.N.Y. 2013) (quoting *Cruden v. Bank of N.Y.*, 957 F.2d 961, 973 (2d Cir. 1992)). "To determine when the fraud was or should have been discovered, New York courts apply an objective test. If the circumstances of the alleged fraud would suggest to a person of ordinary intelligence the probability that he has been defrauded, a duty of inquiry arises. . . . When a plaintiff shuts his eyes to the facts which call for investigation, knowledge of the fraud will be imputed to him." *Cruden*, 957 F.2d at 973 (internal quotations and citations omitted). The Court cannot conclusively determine from the face of the SAC when Mr. Fuchs discovered or should have discovered Defendant's alleged fraud. Without knowing when to start the two-year statute of limitations period for Mr. Fuchs's fraud claim, the Court cannot dismiss it as time-barred.

### b.  Florida Plaintiffs Have Adequately Alleged Common Law Fraud

### i.  Choice of Law

Undertaking the first step of the choice of law analysis, the Court looks for a conflict between New Jersey and Florida law regarding the Florida Plaintiffs' common law fraud claims.

---

[4] New Jersey "borrows" the statute of limitations of the state whose substantive law applies to a claim. *Warriner v. Stanton*, 475 F.3d 497, 500 (3d Cir. 2007).

**NOT FOR PUBLICATION**

Defendant contends that there are differences between the statutes of limitations applicable under Florida and New Jersey law. Def.'s Mem. 22-23. The Court agrees and finds that the states' contradictory statutes of limitations create an actual conflict of law.

Common law fraud claims in Florida are subject to a four-year statute of limitations period. Fla. Stat. § 95.11(3)(j). "This period commences at the time the facts giving rise to the cause of action were discovered or should have been discovered with the exercise of due diligence." *Speier-Roche*, No. 14-20107, 2014 WL 1745050, at *6 (S.D. Fla. Apr. 30, 2014) (internal quotations omitted). By contrast, the statute of limitations for fraud is six years under New Jersey law, N.J. Stat. Ann. § 2A:14-1, and a cause of action accrues when a plaintiff knows or should know of its existence. *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 425 (3d Cir. 1999). This distinction between Florida's and New Jersey's statutes of limitations presents an actual conflict. *See Curtiss-Wright Corp. v. Rodney Hunt Co.*, No. 13-2799 (SDW), 2014 WL 651980, at *4 (D.N.J. Feb. 18, 2014) (finding conflict of law based on differences in statutes of limitations applicable to fraud claims).

In the second step of the choice of law analysis, the Court finds that Florida law has the most significant relationship to each of the Florida Plaintiffs' common law fraud claims. For Mr. Manowitz's claim, the Section 148 factors (a), (b), and (e) favor Florida law over New Jersey law. Mr. Manowitz (a) acted in reliance by buying his Range Rover in Florida, where (b) he allegedly received Defendant's representations, and where (e) the vehicle was located. SAC ¶¶ 78-79. Factor (c) is ambivalent because Plaintiffs allege that Land Rover made representations in both states— at the Land Rover Warren Henry dealership in Miami, Florida and from Land Rover's headquarters in New Jersey. *Id.* ¶¶ 17, 78. Factor (d) is also ambivalent, as the parties' citizenship is split between Florida and New Jersey, and factor (f) is inapplicable. Reviewing these factors, the Court

20

**NOT FOR PUBLICATION**

finds that Florida has the most significant relationship to Mr. Manowitz's common law fraud claim.

The Court also reviews the Section 148 factors with regard to Mr. Manis's common law fraud claim. Mr. Manis is a Georgia citizen who purchased his Range Rover from a Mercedes-Benz dealership in Tampa, Florida. *Id.* ¶ 71. Factor (a) weighs in favor of Florida law, as Mr. Manis acted in reliance by buying his Range Rover in Florida. Factor (b) is uncertain, because Mr. Manis does not allege that he received representations from Land Rover while buying his car at the Mercedes-Benz dealership in Florida, nor does he allege where he received Land Rover's promotional materials, television commercials, and website. *Id.* ¶¶ 71-72. Factor (c) supports both New Jersey and Florida law, as the SAC alleges that Land Rover made representations from its New Jersey headquarters but also at a Land Rover authorized dealership in Florida. *Id.* ¶¶ 17, 72, 74, 76. Factor (d) favors Georgia law and New Jersey law equally, as those are the states of the parties' citizenship. Factor (e) favors Florida, as the Range Rover Mr. Manis purchased was located in Florida at the time of the Mr. Manis's transaction. *Id.* ¶ 71. Factor (f) is inapplicable.

Weighing these factors, the Court finds that Florida law applies to Mr. Manis's fraud claim. The factors favoring New Jersey are Land Rover's New Jersey citizenship and its alleged conduct at its New Jersey headquarters, but Courts in this District often find that the New Jersey presence of a party's headquarters is insufficient to overcome factors favoring another state. *See Curtiss-Wright Corp.*, 2014 WL 651980, at *6; *see also Montich*, 849 F. Supp. 2d at 449 ("A majority of courts in this District have held that the mere fact that a company is headquartered in New Jersey or 'that unlawful conduct emanated from New Jersey' will not supersede the numerous contacts with the consumer's home state for purposes of determining which state has the most significant relationship").

**NOT FOR PUBLICATION**

ii. **Florida Plaintiffs Have Adequately Stated a Common Law Fraud**
**Claim Under Florida Law**

Land Rover aims the same argument at the Florida Plaintiffs' common law fraud claims as it did at the New York Plaintiffs' claims—that the Florida Plaintiffs have failed to allege that Land Rover had a duty to disclose the alleged defect. Def.'s Br. 26-32.

Under Florida law, a "defendant's knowing concealment or non-disclosure of a material fact may only support an action for fraud where there is a duty to disclose." *TransPetrol, Ltd. v. Radulovic*, 764 So. 2d 878, 879 (Fla. Dist. Ct. App. 2000). "[S]uch duty arises when one party has information that the other party has a right to know because of a fiduciary or other relation of trust or confidence between them." *Id.* at 880 (quoting *State v. Mark Marks, P.A.*, 654 So.2d 1184, 1189 (Fla. Dist. Ct. App. 1995)). In buyer-seller relationships, Florida courts have found that a duty to disclose may arise from a seller's exclusive knowledge of a material fact. *See Nessim v. DeLoache*, 384 So.2d 1341, 1344 (Fla. Dist. Ct. App. 1980) ("The classic illustration of fraud is where one party having superior knowledge intentionally fails to disclose a material fact, which is not discoverable by ordinary observation, especially where coupled with a trick or artifice" (internal citations omitted)); *Ramel v. Chasebrook Constr. Co.*, 135 So.2d 876, 882 (Fla. Dist. Ct. App. 1962) ("[N]ondisclosure of a material fact may be deemed fraudulent where the other party does not have equal opportunity to become apprised of the fact.").

The Court finds that the Florida Plaintiffs have adequately alleged common law fraud claims against Land Rover based on its failure to disclose the alleged defect despite a duty to do so. As discussed earlier, the SAC adequately alleges facts supporting an inference that Land Rover had superior knowledge of the alleged defect. Because such superior knowledge can establish a

**NOT FOR PUBLICATION**

duty to disclose under Florida law and thereby support an omission-based fraud claim, the Court will not dismiss the Florida Plaintiffs' cause of action for common law fraud.

### c. California Plaintiffs Have Adequately Alleged Common Law Fraud

#### i. Choice of Law

In its earlier opinion, the Court concluded that New Jersey law applies to Mr. Majdipour's and Ms. Austin's (the "California Plaintiffs") common law fraud claims after finding no conflict between relevant California and New Jersey law. FAC Opinion 23. Applying New Jersey law, the Court denied dismissal of the California Plaintiffs' common law fraud claims. *Id.* at 31. Land Rover now indicates that "the Court reached this conclusion without the benefit of briefing from the parties on the duty to disclose under New Jersey law governing fraud claims." Def.'s Mem. 29 n.16. Land Rover "submits that returning to this issue is appropriate now that it is squarely presented." *Id.* The Court agrees, and will re-conduct a choice of law analysis to determine whether California or New Jersey law should govern the California Plaintiffs' common law fraud claims now that the parties have briefed the question of whether these states impose distinctive duties to disclose.[5]

The Court finds that there is an actual conflict between New Jersey and California law with regard to the California Plaintiffs' common law fraud claims. As discussed, New Jersey law does not categorically imply a duty to disclose on the basis of a manufacturer's superior knowledge in cases where disclosure is not necessary to correct a prior statement and the parties are not in a

---

[5] The Court is not deterred by Plaintiffs' argument that re-analyzing this choice of law question is prohibited by the "law of the case." Pls.' Opp. 36-39. The Court's earlier opinion was interlocutory and did not address the issue of whether a duty to disclose exists under New Jersey law, as the issue was not then disputed by the parties. Fed. R. Civ. P. 54(b); *see Filebark v. U.S. Dep't of Transp.*, 555 F.3d 1009, 1013 (D.C. Cir. 2009). The Court revisits its choice of law analysis now to address this issue.

**NOT FOR PUBLICATION**

special relationship. *Lightning Lube, Inc.*, 4 F.3d at 1185; *Coba*, No. 2013 WL 244687, at *12 ("New Jersey Courts have found no special relationship between individual consumers and automobile manufacturers that would impose a duty to disclose on the manufacturers"). In contrast, California law does. *LiMandri v. Judkins*, 60 Cal. Rptr. 2d 539, 543 (Cal. Ct. App. 1997) (stating that nondisclosure may constitute actionable fraud "when the defendant had exclusive knowledge of material facts not known to the plaintiff"). This distinction identifies an actual conflict. To decide which state's law should apply, the Court turns to the "most significant relationship" test. The Court previously conducted the "most significant relationship" test with respect to the California Plaintiffs' statutory consumer fraud claims, FAC Opinion at 15-18, and finds that the analysis would be identical for the California Plaintiffs' common law fraud claims. Because California law has the most significant relationship to the California Plaintiffs' common law fraud claims, they are governed by California law.

### ii. The California Plaintiffs Have Adequately Alleged Common Law Fraud Under California Law

The SAC adequately states common law fraud claims under California law. Under California law, "[t]he elements of fraud are: (1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage." *Robinson Helicopter Co., Inc. v. Dana Corp.*, 102 P.3d 268, 274 (Cal. 2004).

The Court previously found that Plaintiffs' allegations in the FAC were sufficient to state fraud-based claims under California's Consumer Legal Remedies Act ("CLRA") and Unfair Competition Law ("UCL"). FAC Opinion 23-31. This analysis applies equally to the California Plaintiffs' common law fraud claims. Like the FAC, the SAC makes out the elements of common

**NOT FOR PUBLICATION**

law fraud by contending that Defendants knowingly, and with intent to induce Plaintiffs' reliance, failed to "fully and truthfully disclose to their customers the true nature of the Defect in the Class Vehicles." SAC ¶¶ 102-03. It also alleges that Plaintiffs Majdipour and Austin justifiably relied on the omission and suffered damages as a result. *Id.* ¶¶ 50, 55, 58, 61, 104. The SAC substantiates these assertions with sufficient particularity to satisfy the pleading requirements of Rules 8 and 9(b). Fed. R. Civ. P. 8; 9(b). Indeed, the SAC retains the particularity of factual information which the Court found satisfactory in the FAC. FAC Opinion 23-31. The Court finds that Plaintiffs' common law fraud claims are adequately stated under California law to survive Land Rover's motion to dismiss.

### 3. New Plaintiffs' Claims for Breach of the Duty of Good Faith and Fair Dealing

Defendant argues that New York and Florida law apply to and require the dismissal of New Plaintiffs' claims for breach of the duty of good faith and fair dealing. Def.'s Mem. 33-38. Plaintiffs counter by arguing that New Jersey law applies to New Plaintiffs' good faith and fair dealing claims, and that they should survive. Pls.' Opp. 39-40. The Court must conduct a choice of law analysis to resolve the dispute.

#### i. The New York Plaintiffs' Claims Fail Under New York Law

Land Rover argues that New York law should apply to the New York Plaintiffs' claims for breach of the duty of good faith and fair dealing. Def.'s Mem. 36-38. In the first step of the choice of law inquiry, the Court looks for a distinction between the applicable substantive law of New York and New Jersey. Land Rover contends that there is a distinction between the states' laws because New Jersey law recognizes claims for breach of the duty of good faith and fair dealing in the absence of a breach of contract, whereas New York law does not. Def.'s Mem. 33-36. Defendant's position is not directly challenged by Plaintiffs, Pls.' Opp. 39-40, and is well-

**NOT FOR PUBLICATION**

supported by relevant law. *Compare Wilson v. Amerada Hess Corp.*, 773 A.2d 1121, 1126 (N.J. 2001) (finding that, under New Jersey law, "a party's performance under a contract may breach [the] implied covenant [of good faith and fair dealing] even though [the] performance does not violate a pertinent express term" of the contract)*, with Druyan v. Jagger*, 508 F. Supp. 2d 228, 238 (S.D.N.Y. 2007) (stating that, under New York law, "it is well-established that the implied covenant does not . . . provide an independent basis for recovery"), *and Rehman v. State Univ. of New York at Stony Brook*, 596 F. Supp. 2d 643, 659 (E.D.N.Y. 2009) ("under New York Law, a claim for breach of an implied covenant of good faith and fair dealing does not provide a cause of action separate from a breach of contract claim"). The Court finds that there is an actual conflict between New Jersey and New York law regarding whether the New York Plaintiffs can maintain a cause of action for breach of the duty of good faith and fair dealing without alleging any breach of contract.

The Court proceeds to the second step of the choice of law analysis. To determine which state has the most significant relationship with the New York Plaintiffs' claims for breach of the duty of good faith and fair dealing, the Court will analyze the factors laid out in Section 188 of the Restatement (Second) of Conflicts of Law. *Clark v. Prudential Ins. Co. of Am.*, No. 08-cv-06197 (DRD), 2009 WL 2959801, at *19 (D.N.J. Sept. 15, 2009). Section 188 provides that "[i]n the absence of an effective choice of law by the parties . . . the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

> (a) the place of contracting,
> (b) the place of negotiation of the contract,
> (c) the place of performance,
> (d) the location of the subject matter of the contract, and
> (e) the domicile, residence, nationality, place of incorporation and place of business of the parties.

26

**NOT FOR PUBLICATION**

Restatement (Second) of Conflict of Laws § 188. "These contacts are to be evaluated according to their relative importance with respect to the particular issue." *Id.* Additionally, the Court again considers the more general factors set forth in Section 6 of the Restatement: (1) interests of interstate comity, (2) interests of the parties, (3) interests underlying the field of law, (4) interests of judicial administration, and (5) competing interests of the states. *Id.* § 6; *Camp Jaycee*, 962 A.2d at 463.

Applying these factors to the factual circumstances supporting the New York Plaintiffs' claim for breach of the duty of good faith and fair dealing, it is clear that New York law applies. Mr. Fuchs and Ms. Robinson (a) contracted to purchase their Range Rovers in New York, which is also (b) where any negotiations took place. SAC ¶¶ 63-64, 85-86. New York is also (c) the only alleged place of performance and (d) the location of the Range Rovers at the time of purchase. *Id.* ¶¶ 63-68, 85-89. The final factor is neutral, as the parties' residences are split between New York and New Jersey. The Court finds that New York law governs the New York Plaintiffs' claims for breach of the duty of good faith and fair dealing. As such, the claim must be dismissed because the SAC does not allege that Land Rover breached any contract or warranty, and a claim for breach of the duty of good faith and fair dealing cannot stand alone under New York law.

### i.    The Florida Plaintiffs' Claims Fail Under Florida Law

Land Rover also contends that Florida law applies to the Florida Plaintiffs' claims for breach of the duty of good faith and fair dealing. Def.'s Mem. 33-38. Land Rover puts forward the same argument to distinguish New Jersey and Florida law—asserting that a distinction exists regarding whether a plaintiff's claim for breach of the duty of good faith and fair dealing can stand without corresponding breach of contract allegations. *Id.* at 33-36. Land Rover correctly states that Florida law does not recognize an independent claim for breach of the duty of good faith and fair

27

**NOT FOR PUBLICATION**

dealing. *See Centurion Air Cargo, Inc. v. United Parcel Serv. Co.*, 420 F.3d 1146, 1152 (11th Cir. 2005) ("a breach of the implied covenant of good faith and fair dealing cannot be maintained under Florida law in the absence of a breach of an express term of a contract"). Because a claim for breach of the duty of good faith and fair dealing cannot stand alone under Florida law, there is an actual conflict with New Jersey law. *See Wilson*, 773 A.2d at 1126.

Moving to the second step of the choice of law analysis, the Court applies the factors in Restatement Section 188 to the Florida Plaintiffs' claims for breach of the duty of good faith and fair dealing. Like the New York Plaintiffs, the Florida Plaintiffs (a) contracted to purchase their Range Rovers in Florida, which is also (b) where any negotiations took place. SAC ¶¶ 71, 78. Florida is also (c) the alleged place of performance and (d) location of the Range Rovers at the time of purchase. *Id.* The final factor is neutral as to Plaintiff Manowitz, as the parties' residences are split between Florida and New Jersey. Because Plaintiff Manis is a Georgia citizen, the final factor favors either Georgia or New Jersey in his case. Other than the final factor, which is inconclusive, all other factors point to Florida as having the most significant relationship to both Mr. Manis's and Mr. Manowitz's claims for breach of the duty of good faith and fair dealing. The Court finds that Florida law applies. As such, because Plaintiffs have not alleged any breach of contract, these claims will be dismissed because Florida law does not permit claims for breach of the duty of good faith and fair dealing to stand alone.

### 4. California Plaintiffs' Claims for Failure to Recall/Retrofit

The California Plaintiffs, including the putative California sub-class, also assert a new negligence claim in the SAC on the grounds that Land Rover violated an ongoing duty to recall or retrofit its model-year 2003 to 2006 Range Rovers. SAC ¶¶ 161-69. Land Rover argues that this

**NOT FOR PUBLICATION**

claim is barred by the "economic loss rule" under California law.[6] Def.'s Mem. 38-40. Plaintiffs respond that the economic loss rule does not bar the claim because Plaintiffs' Range Rovers exhibited a "safety risk" and because a "special relationship" existed between Plaintiffs and Defendant. Pls.' Opp. 11-16.

Under California law, the economic loss rule provides that there is "no recovery in negligence for purely economic losses caused by a defective product when the only damage is to the product itself." *Callaghan v. BMW of N. Am., LLC*, No. 13-CV-4794-RS, 2014 WL 1340085, at *6 (N.D. Cal. Apr. 2, 2014) (citing *Robinson Helicopter Corp. v. Dana Corp.*, 34 Cal.4th 979, 988 (2005)); s*ee Seely v. White Motor Co.*, 63 Cal.2d 9, 18 (1965); *see also Sharma v. BMW of N. Am., LLC*, No. C-13-2274 MMC, 2014 WL 2795512, at *6 (N.D. Cal. June 19, 2014). "Economic loss consists of damages for inadequate value, costs of repair and replacement of the defective product or consequent loss of profits—without any claim of personal injury or damages to other property." *Robinson Helicopter Corp.*, 34 Cal.4th at 988 (internal quotation and citation omitted).

The economic loss rule applies to the California Plaintiffs' claim for failure to recall or retrofit because this claim sounds in negligence and the only damage Plaintiffs allege was to their Range Rovers. Plaintiffs argue that their claims escape the economic loss rule. First, Plaintiffs contend that their claim is not barred because "the alleged defect posed a safety risk." Pls.' Opp. 12. Plaintiffs advance *Roberts v. Electrolux Home Products, Inc.*, Civ. No. 12-1644, 2013 WL 7753579, at *13 (C.D. Cal. Mar. 4, 2013), for the proposition that "a duty to recall or retrofit a product can arise due to . . . post-sale knowledge that puts a manufacturer on notice regarding a dangerous product defect." Although this case shows that a manufacturer may have a duty to issue

---

[6] The parties do not dispute that California law applies to this cause of action, and the Court does not conduct a choice of law analysis.

**NOT FOR PUBLICATION**

a warning or recall products when safety risks emerge, the existence of that duty does not change the fact that Plaintiffs allege no damages other than those to their Range Rovers. *Roberts* and other cases finding liability for post-sale failure to recall are distinguishable because plaintiffs' injuries in those cases were not limited to their defective products. *Roberts*, 2013 WL 7753579, at *13 (Plaintiffs alleged that defective dryer "caused a fire resulting in extensive property damage"); *see also Hernandez v. Badger Constr. Equip. Co.*, 34 Cal. Rptr. 2d 732 (Cal. Ct. App. 1994) (Plaintiff suffered physical injuries in on-the-job crane accident). Here, Plaintiffs do not allege any injuries other than those to their Range Rovers, and the economic loss rule bars recovery in tort for those damages. Plaintiffs cannot plead a cause of action for negligence without applicable damages.

Plaintiffs' second argument is that the California Plaintiffs had a "special relationship" with Defendant which makes the economic loss rule inapplicable. Pls.' Opp. 13-16. Even if Plaintiffs are correct that a "special relationship" would shield them from the economic loss rule, they have failed to establish that such a relationship existed. "To determine whether a special relationship exists, courts must examine six factors: 1) the extent to which the transaction was intended to affect the plaintiff; 2) the foreseeability of harm to the plaintiff; 3) the degree of certainty that the plaintiff suffered injury; 4) the closeness of the connection between the defendant's conduct and the injury suffered; 5) the moral blameworthiness of defendant's conduct; and 6) policy considerations to prevent future harm." *NuCal Foods, Inc. v. Quality Egg LLC*, 918 F. Supp. 2d 1023, 1030 (E.D. Cal. 2013) (citing *J'Aire Corp. v. Gregory*, 598 P.2d 60 (Cal. 1979)). The first factor requires that the relevant transaction have "affect[ed] the plaintiff in particular as opposed to similarly situated purchasers." *Kalitta Air, LLC v. Cent. Tex. Airborne Sys., Inc.*, No. 96-2494 CW, 2009 WL 1636036, at *5 (N.D. Cal. June 8, 2009); *Ott v. Alfa–Laval Agri, Inc.*, 37 Cal. Rptr. 2d 790, 802 (Cal. Ct. App. 1995). Here, the SAC alleges that Land Rover's failure to recall or retrofit its 2003

**NOT FOR PUBLICATION**

to 2006 model-year Range Rovers affected all owners equally, not Plaintiffs Majdipour and Austin in particular. SAC ¶¶ 161-69. The Court finds no factual basis in the SAC for an inference that the California Plaintiffs had a special relationship with Land Rover that would shield them from the economic loss rule.

The Court finds that Plaintiffs have failed to state a plausible cause of action for failure to recall or retrofit. Defendant's motion to dismiss this claim will be granted.

## CONCLUSION

The Court denies Land Rover's motion to dismiss the new claims in the SAC in part and grants it in part. An appropriate order follows.


Date: March 18, 2015


<u>**/s/ William H. Walls**</u>
United States Senior District Judge

31