## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SIMON MAJDIPOUR,  PAMELA AUSTIN, BRIAN FUCHS, CHARLES MANIS, JASON MANOWITZ, and MARVINA ROBINSON, individually, and on behalf of a class of similarly situated individuals,<br><br>          Plaintiffs,<br><br>  v.<br><br>JAGUAR LAND ROVER NORTH AMERICA, LLC,<br><br>        Defendant. | No.: 2:12-cv-07849-MCA-LDW |

## PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR
## AWARD OF ATTORNEYS' FEES, EXPENSES AND INCENTIVE AWARDS

Matthew Mendelsohn
**MAZIE SLATER KATZ & FREEMAN, LLC**
103 Eisenhower Parkway
Roseland, New Jersey 07068
Telephone:  (973) 228-9898
Facsimile: (973) 228-0303

Payam Shahian (*pro hac vice*)
**STRATEGIC LEGAL PRACTICES, APC**
1875 Century Park East, Suite 700
Los Angeles CA 90067
Telephone:  (310) 277-1040
Facsimile:  (310) 943-3838

*Attorneys for Plaintiffs and the Proposed Class*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................. iv

STATEMENT OF FACTS ....................................................................................1

    A.  Plaintiffs' Pre-Suit Investigation ...............................................................2

    B.  The Litigation ............................................................................................2

    C.  The Parties' Discovery ..............................................................................4

    D.  Settlement Efforts and Mediation .............................................................4

    E.  Terms of the Proposed Amended Settlement .............................................5

LEGAL ARGUMENT ..........................................................................................7

POINT I ...............................................................................................................7

THE REQUESTED ATTORNEYS' FEES ARE
REASONABLE AND SHOULD BE APPROVED .................................................7

    A.  The Requested Attorneys' Fees Are Reasonable
        Under the Percentage-of-Recovery Method .............................................8

        1.  Valuation of the Settlement .............................................................11

            a.  Reimbursements ....................................................................11

            b.  Administration Expenses .......................................................12

    B.  The Requested Attorneys' Fees Are Reasonable
        Under the Lodestar Method ....................................................................13

    C.  The Factors Governing Approval Of Attorneys' Fees
        and Expenses Support the Requested Amount .........................................16

        1.  The size of the fund created and the number of beneficiaries .........17

        2.  The presence or absence of substantial objections by members of the
            class to the settlement terms and/or fees requested by counsel .......17

        3.  The skill and efficiency of the attorneys involved .........................18

        4.  The complexity and duration of the litigation ................................19

5.  The risk of nonpayment ....................................................................................19

6.  The amount of time devoted to the case by Plaintiffs' counsel ......................................21

7.  The awards in similar cases ...............................................................................21

8.  The value of benefits attributable to the efforts of class counsel relative to the efforts of other groups, such as government agencies conducting investigations ..........22

9.  The percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained ...........................22

POINT II ................................................................................................................23

THE REQUEST FOR REIMBURSEMENT OF
COSTS IS REASONABLE AND SHOULD BE GRANTED ..................................................23

POINT III ...............................................................................................................24

THE REQUESTED SERVICE AWARDS
SHOULD BE APPROVED ..........................................................................................24

CONCLUSION ........................................................................................................25

CERTIFICATE OF SERVICE .....................................................................................26

## TABLE OF AUTHORITIES

<u>Cases</u>

*Alin v. Honda Motor Co., Ltd.*, 2012 WL 8751045 (D.N.J. Apr. 13, 2012)................................. 8,13

*Blum v. Witco Chem. Corp.,* 888 F.2d 975 (3d Cir.1989) .............................................................15

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980)....................................................................... 8,10

*Bradburn Parent Teacher Store, Inc.*, 513 F. Supp. 2d 322 (E.D. PA. 2007)...........................13,14,23

*Bredbenner v. Liberty Travel, Inc.,* 2011 WL 1344745 (D.N.J. April 08, 2011) ...........................18

*Careccio v. BMW of North America* LLC, 2010 WL 1752347 (D.N.J. April 29, 2010)................23

*Chakejian v. Equifax Information Services*, LLC 275 F.R.D. 201 (E.D.Pa. 2011) .....................22,23

*Chin v. Chrysler Corp.*, 182 F.R.D. 448 (D.N.J. 1998)................................................................20

*Cholakyan v. Mercedes-Benz, USA, LLC*, 281 F.R.D. 534 (C.D. Cal. 2012)................................20

*Daugherty v. American Honda Motor Co.*, 144 Cal. App. 4th 824 (2006) ....................................20

*David v. American Suzuki Motor Corp.*, 2010 WL 1628362 (S.D. Fla. April 15, 2010) ................8

*Demaria v. Horizon Healthcare Servs., Inc.*, No. 2:11-CV-07298 (WJM), 2016
    WL 6089713 (D.N.J. Oct. 18, 2016)........................................................................................14

*DeSantis v. Snap-on Tools Co.*, No. Civ. A. 06CV2231 (DMC), 2006 WL 3068584,
    (D.N.J. Oct. 27, 2006)..............................................................................................................24

*Dewey v. Volkswagen of America*, 728 F. Supp. 2d 546 (D.N.J. 2010) .........................................21

*Dewey v. Volkswagen of Am.*, 909 F. Supp. 2d 373 (D.N.J. 2012)................................................24

*Dewey v. Volkswagen Aktiengesellschaft,* 558 F. App'x 191 (3d Cir. 2014) .................................24

*Doe v. Terhune,* 121 F.Supp.2d 773 (D.N.J. 2000) .......................................................................15

*Granillo v. FCA US LLC*, No. CV16153FLWDEA, 2019 WL 4052432,
    (D.N.J. Aug. 27, 2019)..............................................................................................................15

*Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190 (3d Cir. 2000).............................................17,18

*Henderson v. Volvo Cars of N. Am., LLC*, No. CIV.A. 09-4146 (CCC), 2013 WL 1192479,
    (D.N.J. Mar. 22, 2013)..............................................................................................................24

*In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109 (D.N.J. 2002) ...............................................7,9

*In re AT&T Corporation*, 455 F.3d 160 (3d Cir. 2006)........................................................... 16,17,22,23

*In re Cendant PRIDES Litig.*, 243 F.3d 722 (3d Cir. 2001) ..................................................... 9,14,17,19

*In re Computron Software, Inc.,* 6 F.Supp.2d 313 (D.N.J. 1998) .................................................18

*In re Diet Drugs*, 582 F.3d 524 (3d Cir. 2009) .......................................................................... 13,17

*In re Elec. Carbon Prods. Antitrust Litig.*, 447 F. Supp. 2d 389 (D.N.J. 2006) .............................18

*In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*, 194 F.R.D. 484 (D.N.J. 2012).............20

*In re Ford Motor Co. E-350 Van Prods. Liab. Litig.*, 2012 WL 379944
   (D.N.J. Feb. 6, 2012)......................................................................................................20

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d
   768 (3d Cir. 1995).......................................................................................7,8,9,13,19,21

*In re Ikon Office Solutions, Inc. Sec. Litig.,* 194 F.R.D. 166, 194 (E.D.Pa. 2000) ......................18,22

*In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241 (3d Cir. 2009)........................................7,8,9,12,16

*In re Merck & Co. Vytorin ERISA Litig.*, No. 08-285 (DMC), 2010 WL 547613
   (D.N.J. Feb. 9, 2010).......................................................................................................15

*In re Pet Food Prods. Liab. Litig.,* Civ. No. 07–2867, 2008 WL 4937632
   (D.N.J. Nov. 18, 2008)...................................................................................................20

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d
   283 (3d Cir. 1998)....................................................................................7,13,14,16,21

*In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294 (3d Cir. 2005).................................................7,8,3,14,17,22

*In re Safety Components, Inc. Sec. Litig.*, 166 F. Supp. 2d 72 (D.N.J. 2001) .............................15,23

*In re Schering-Plough Corp. Enhance Sec. Litig.,* No. 08-2177, 2013 WL 5505744,
   (D.N.J. Oct. 1, 2013)......................................................................................................15,22

*In re Staples Inc. Wage and Hour Employment Practices Litigation,* 2011 WL 5413221,
   (D.N.J. Nov. 04, 2011)...................................................................................................21

*In re Warfarin Sodium Antitr. Litig.*, 391 F.3d 516 (3d Cir. 2004) .................................................19

*Keenan v. City of Philadelphia,* 983 F.2d 459 (3d Cir.1992) .........................................................15

*Loughner v. Univ. of Pittsburgh,* 260 F.3d 173 (3d Cir. 2001) .....................................................15

*Maldonado v. Houstoun,* 256 F.3d 181 (3d Cir. 2001)...................................................................15

*Marcus v. BMW of North America, LLC,* 687 F.3d 583 (3d Cir. 2012) .........................................20

*Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423 (2d Cir. 2007) ......................................10

*McCoy v. Health Net Inc.*, 569 F. Supp. 2d 448 (D.N.J. 2008) ........................................................10

*McLennan v. LG Electronics USA, Inc.*, No. 2:10-cv-03604 (WJM), 2010 WL 686020
    (D.N.J. Mar. 2, 2012) .................................................................................................................8,14

*O'Keefe v. Mercedes-Benz USA, LLC,* 214 F.R.D. 266 (E.D. Pa. 2003).....................................8,16

*Philips v. Ford Motor Co.*, No. 14-02989, 2016 WL 7428810
    (N.D. Cal. Dec. 22, 2016) ...............................................................................................................20

*Rowe v. E.I. DuPont de Nemours and Co.*, 2011 WL 3837106
    (D.N.J. August 26, 2011) ................................................................................................................20

*Saint v. BMW of North America, LLC*, No. 12–6105(CCC), 2015 WL 2448846
    (D.N.J. May 21, 2015) .....................................................................................................................15

*Skeen v. BMW of N. Am., LLC*, No. 2:13-CV-1531, 2016 WL 4033969
    (D.N.J. July 26, 2016).......................................................................................................................21

*Varacallo v. Massachusetts Mut. Life Ins. Co.*, 226 F.R.D. 207 (D.N.J. 2005) ........................12,14,24

*Weiss v. Mercedes-Benz of North America*, 899 F. Supp. 1297 (D.N.J. 1995) ............................9,10

*Yedlowski v. Roka Bioscience, Inc.*, No. 14-CV-8020 (FLW), 2016
    WL 6661336 (D.N.J. Nov. 10, 2016) ...............................................................................................14

*Yong Soon Oh v. AT & T Corp.*, 225 F.R.D. 142 (D.N.J. 2004)......................................................17

## **Rules/Other**

California Consumers Legal Remedies Act.........................................................................................3

California's Unfair Competition Law .................................................................................................3

Federal Rule of Civil Procedure 23(h)...............................................................................................7

New Jersey Consumer Fraud Act ......................................................................................................3

Report of the Third Circuit Task Force, Selection of Class Counsel,
    208 F.R.D. 340, 423 (2002) .............................................................................................................14

**STATEMENT OF FACTS**

The Court has preliminarily approved a settlement in this nationwide class action brought by Plaintiffs Simon Majdipour, Pamela Austin, Brian Fuchs, Charles Manis, Jason Manowitz and Marvina Robinson ("Plaintiffs") on behalf of themselves and a putative class of all persons or entities in the United States, who currently own or lease, or previously owned or leased, a model-year 2003 to 2006 Land Rover Range Rover vehicle (the "Class Vehicles"). (Dkt. No. 82.) The proposed settlement involves over 57,000 Class Vehicles and over 160,359 Class Members.  Plaintiffs allege that the Class Vehicles contain one or more defects affecting the front air springs installed on the Class Vehicles, which can crack or leak, causing a loss of air pressure in the suspension system and affecting vehicle ride height ("Suspension Defect"). Defendant Jaguar Land Rover North America, LLC ("JLRNA") disputes this claim and maintains that the Class Vehicles function properly and are not defective, and that no warranties or statutes have been breached.

On March 3, 2017, Plaintiffs entered into a Settlement Agreement with JLRNA ("Original Settlement").   On June 19, 2017, Plaintiffs filed their motion for preliminary approval of the Original Settlement.  After oral argument on April 3, 2018 the Court denied the motion for preliminary approval due to two primary concerns: (1) that individuals beyond the extended warranty coverage period would have to release their claims, even though they were not eligible for reimbursement and (2) that Class Members would only be entitled to minimal reimbursement compared to the replacement costs of as much as $2,500.  (Dkt. No. 76 at 9-10.)

The parties then negotiated and executed an Amended Settlement Agreement

("Amended Settlement")[1] that addressed the Court's concerns.  The Amended Settlement covers only the individuals who are eligible for reimbursement and also increases the available reimbursement for the lowest tier of compensation.  On May 14, 2019 the Court entered an Order preliminarily approving the Amended Settlement and directing notice to be provided to the Class.  (Dkt. No. 82.)  Below is a summary of how the parties have reached this stage.

### A.   Plaintiffs' Pre-Suit Investigation

The Amended Settlement is the product of years of thorough investigation and research into the alleged Suspension Defect.  Prior to the filing of this action, Class Counsel devoted significant time to investigating the alleged Suspension Defect.  To learn about the alleged defect and its consequences, Class Counsel, among other things, created a webpage notifying potential class members of the alleged defect, fielded inquiries from prospective class members during the course of this litigation, reviewed various forms of consumer reports and the National Highway Traffic Safety Administration ("NHTSA") website where consumers had complained about the alleged defect, reviewed JLRNA manuals and technical service bulletins discussing the alleged defect, reviewed federal motor vehicle regulations regarding safety standards, identified potential defendants, and conducted research into potential causes of action and other cases where the same or similar defects were alleged.  (Mendelsohn Cert. ¶ 3.)

These initial investigations permitted counsel to conclude that, in counsel's view, the filing of the action against JLRNA was justified.  (Mendelsohn Cert. ¶ 4.)

### B.   The Litigation

On December 26, 2012, Plaintiff Simon Majdipour filed this lawsuit against JLRNA

---

[1] Unless indicated otherwise, capitalized terms used herein have the same meaning as those referenced in the Amended Settlement Agreement (cited as "ASA") attached as Exhibit 1 to the Certification of Matthew Mendelsohn ("Mendelsohn Cert.").

alleging violations of the New Jersey Consumer Fraud Act, breach of express warranty, common law fraud, breach of the duty of good faith and fair dealing, unjust enrichment, breach of implied warranty of merchantability, violations of the California Consumers Legal Remedies Act, and violations of California's Unfair Competition Law.   (Dkt. No. 1 [Complaint].) Plaintiff brought the action on behalf of himself and all other individuals who owned or leased a Class Vehicle for the purpose of requiring JLRNA to (1) notify all members of the proposed class of the nature and impact of the alleged Suspension Defect, (2) reimburse proposed class members who have paid to fix the alleged Suspension Defect, and (3) repair the alleged Suspension Defect free of charge for those proposed class members who have yet to experience the alleged defect, and for compensatory, statutory, and punitive damages.  (Id.)

On March 15, 2013, JLRNA filed its motion to dismiss the Complaint.  (Dkt. No. 7.) On April 17, 2013, Plaintiff Majdipour filed a First Amended Complaint to (1) add Pamela Austin as a Plaintiff; and (2) add Jaguar Land Rover Automotive, PLC as a Defendant.  (Dkt. No. 14 [FAC].)  On May 8, 2013, JLRNA filed a motion to dismiss Plaintiffs' First Amended Complaint (Dkt. No. 17), which was granted in part and denied in part. (Dkt. No. 27.)   On November 27, 2013, JLRNA filed an Answer to the First Amended Complaint. (Dkt. No. 32.)

On August 11, 2014, Plaintiffs filed a Second Amended Complaint, to (1) add Brian Fuchs, Charles Manis, Jason Manowitz and Marvina Robinson as Plaintiffs; and (2) add causes of action for violations of the consumer protection statutes of New York and Florida and a claim for failure to Retrofit/Recall under California law.  (Dkt. No. 44.)  On September 19, 2014, JLRNA filed a motion to dismiss (i) the claim for failure to retrofit/recall and (ii) all causes of action asserted on behalf of the newly added plaintiffs (Dkt. No. 49), which was granted in part and denied in part on March 18, 2015.  (Dkt No. 62.)

### C.    The Parties' Discovery

The Parties engaged in substantial discovery, including written discovery and reviewing thousands of pages of documents produced by JLRNA (e.g., technical specifications for the repair of the air suspension system; owners' manuals; service and repair manuals; maintenance and warranty manuals; technical service bulletins; warranty claims; warranty reimbursements; service records; vehicle population numbers for Class Vehicles; failure rate information; and consumer complaint reports). Additionally, Plaintiffs took a deposition pursuant to Fed. R. Civ. Pro. 30(b)(6) of a witness from Jaguar Land Rover Automotive, PLC (the UK designer and manufacturer of the Class Vehicles) regarding the alleged Suspension Defect and associated issues. Plaintiffs' counsel also propounded and obtained discovery from third-party, authorized Land Rover dealers, retained and consulted with an expert witness, and Defendant inspected one of Plaintiffs' vehicles. (Mendelsohn Cert. ¶ 7.)

### D.    Settlement Efforts and Mediation

Throughout the litigation, the Parties exhaustively explored the relevant factual and legal issues. On December 19, 2014, the Parties engaged in a full-day mediation before Hon. Stephen A. Sundvold (Ret.) of JAMS, prior to which both Parties submitted mediation briefs. Although the Parties did not reach a settlement at the mediation, while discovery continued over the following year the Parties continued to confer with Judge Sundvold to reach a potential settlement. After further vigorous discussion, arm's-length negotiations, and numerous exchanges of information and settlement proposals, the Parties finally agreed on the material terms of the proposed relief. Throughout this process, the Parties confined their discussions to the proposed relief to the Settlement Class and did not discuss the issues of attorneys' fees, costs, or incentive awards. Subsequently, on December 18, 2015, the parties participated in

another full-day mediation session with Judge Sundvold to address the issues of attorneys' fees, costs and incentive awards, and an agreement was reached in principle during that mediation. Over the ensuing months, the parties negotiated a comprehensive Settlement Agreement that addressed all aspects of the Original Settlement, including a proposed class notice. (Mendelsohn Cert. ¶ 8.)

On June 19, 2017, Plaintiffs filed their motion for preliminary approval of the Original Settlement. (Dkt. No. 72.) After oral argument on April 3, 2018 the Court denied the motion for preliminary approval due to two primary concerns: (1) that individuals beyond the extended coverage period would have to release their claims, even though they were not eligible for reimbursement and (2) that Class Members would only be entitled to minimal reimbursement compared to the replacement costs of as much as $2,500. (Dkt. No. 76.) The Parties then worked toward a revised settlement that would address the Court's concerns and would be acceptable to the parties. (Mendelsohn Cert. ¶ 9.) On December 31, 2018 the Amended Settlement Agreement was executed. On May 14, 2019 the Court entered an Order preliminarily approving the Amended Settlement and directing notice to be provided to the Class. (Dkt. No. 82.)

### E.    Terms of the Proposed Amended Settlement

The Amended Settlement features the following relief:

**Reimbursement for Front Air Spring Replacements**: For each front air spring replacement, JLRNA shall pay to reimburse up to the lesser of (i) the amount a Settlement Class Member paid in out-of-pocket costs for the front air spring replacement or (ii) the amount listed below within the applicable time and mileage bands for that front air spring replacement:

5

| Year (up to) | Mileage Range | Maximum Reimbursement |
|:---:|:---:|:---:|
| 5 | 50,001 to 62,500 | $500.00 |
| 6 | 62,501 to 75,000 | $250.00 |
| 8 | 75,001 to 100,000 | $125.00 |

**A Speedy and Consumer-Friendly Claims Process**: To be eligible for reimbursement, a Settlement Class Member need only submit a claim form and provide repair order(s), invoices, or other service records ("Service Records") showing: (i) the date on which the Settlement Class Member replaced a front air spring and the mileage on the Class Vehicle on such date; (ii) the amount of the out-of-pocket costs the Settlement Class Member incurred due to a front air spring replacement; (iii) proof of payment of the claimed out-of-pocket costs; and (iv) proof that the Settlement Class Member claiming reimbursement was the owner or lessee of the Class Vehicle at the time of the replacement.  For each approved claim, the Settlement Administrator will mail a check to the Settlement Class Member for the applicable reimbursement amount.

**Class Member Notification**: JLRNA will pay the entire cost of notifying Class Members of the Amended Settlement by first class mail, processing the Claim Forms, and maintaining a website that will provide Class Members with information concerning the Settlement and the claims process.

**Incentive Payments**: Subject to Court approval, JLRNA agrees to pay Class Representatives a one-time payment in the aggregate amount of $16,000, to be distributed as follows: $5,000 to Plaintiff Simon Majdipour; $3,000 to Plaintiff Pamela Austin; and $2,000 each to Plaintiffs Brian Fuchs, Charles Manis, Jason Manowitz, and Marvina Robinson. These amounts will be paid separate from the benefits to the Settlement Class.

**Attorneys' Fees & Costs**: Subject to Court approval, JLRNA agrees to pay Class Counsel up to $1,300,000 in attorneys' fees and an amount up to, but not exceeding, $75,000

for reasonable costs and expenses.  These amounts will be paid separate from the benefits to the Settlement Class.

## LEGAL ARGUMENT

### POINT I

### THE REQUESTED ATTORNEYS' FEES ARE REASONABLE AND SHOULD BE APPROVED

Federal Rule of Civil Procedure 23(h) provides that, "[i]n a certified class action, the court may award reasonable attorney's fees that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). A "thorough judicial review of fee applications is required in all class action settlements." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 819 (3d Cir. 1995). "Determining an appropriate award is not an exact science," and the "facts of each individual case drive the amount of any award." *In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 128 (D.N.J. 2002).

The Third Circuit has established two methods for evaluating an award of attorneys' fees: the percentage-of-recovery method, which involves giving attorneys a portion of the total damages awarded to plaintiffs, and the lodestar method, which involves multiplying the number of hours reasonably worked on a case by the reasonable billing rate for the services. *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 333 (3d Cir. 1998); *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 280 (3d Cir. 2009) (citing *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 302 (3d Cir. 2005)). The percentage-of-recovery method is generally favored in cases involving a common fund, while the lodestar method "is more commonly applied in statutory fee-shifting cases." *Prudential*, 148 F.3d at 333. The lodestar method may also be applied "in cases where the nature of the recovery does not allow the determination of the settlement's value necessary for application of the percentage-of-recovery method." *Id*. (citing

*GM Truck Prods.*, 55 F.3d at 821). The court should perform a "cross-check" by comparing the fee award calculated under the chosen method with the award calculated under the alternative method. *Ins. Brokerage*, 579 F.3d at 280 (citing *Rite Aid*, 396 F.3d at 300). "Regardless of the method a court applies or the specific factors considered, the fundamental requirement is that any fee be fair and reasonable." *McLennan v. LG Electronics USA, Inc.*, No. 2:10-cv-03604 (WJM), 2010 WL 686020, *9 (D.N.J. Mar. 2, 2012). Class Counsel's requested attorneys' fees are reasonable under both the percentage-of-recovery method and the lodestar method and should be approved.

### A. The Requested Attorneys' Fees Are Reasonable Under the Percentage-of-Recovery Method

"The percentage-of-recovery method is generally favored in common fund cases because it allows courts to award fees from the fund 'in a manner that rewards counsel for success and penalizes it for failure.'" *Rite Aid*, 396 F.3d at 300 (quoting *Prudential*, 148 F.3d at 333). The common fund doctrine encompasses cases in which a "common benefit" is conferred on Class Members. *See, e.g., Alin v. Honda Motor Co., Ltd.*, 2012 WL 8751045 (D.N.J. Apr. 13, 2012); *David v. American Suzuki Motor Corp.*, 2010 WL 1628362 (S.D. Fla. April 15, 2010); *O'Keefe v. Mercedes-Benz USA, LLC,* 214 F.R.D. 266, 304-07 (E.D. Pa. 2003).

The common fund doctrine "provides that a private plaintiff, or plaintiff's attorney, whose efforts create, discover, increase, or preserve a fund to which others also have a claim, is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *GM Truck Prods.,* 55 F.3d at 820 n. 39; *see also Boeing Co. v. Van Gemert*, 444 U.S. 472, 478-79, (1980). Here, Class Counsel's efforts have resulted in a settlement obligating JLRNA to partially reimburse

Class Members for out-of-pocket expenses incurred for repairs caused by the Suspension Defect in the Class Vehicles. *See* Amended Settlement Agreement ("ASA"), §3.1.1[2]

In the present case, JLRNA's payment of attorneys' fees and costs "is separate from and in addition to the other relief afforded to the Settlement Class Members." ASA, §12.4.  In such a circumstance, the percentage-of-recovery method is appropriate.  *See, e.g. Ins. Brokerage*, 579 F.3d at 253, 283 (holding trial court properly applied percentage-of-fund method to evaluate the reasonableness of the fee award settlement creating common fund, even though "separate fee agreement" provided that fees awarded "would not be subtracted from the Settlement Class fund."); *see also In re Cendant PRIDES Litig*., 243 F.3d 722, 736 (3d Cir. 2001) ("Though this is not a traditional common-fund case, because the unclaimed portion of the settlement fund is returned to Cendant and because the plaintiffs who recover may not be affected by the attorneys' fee award (depending on the number of plaintiffs who recover rights from the fund), use of the percentage-of-recovery method is appropriate in this case.").

In valuing a class action settlement under the percentage-of-recovery method, Class Counsel need only provide a "reasonable estimate" of the value of the settlement.  *See Weiss v. Mercedes-Benz of North America*, 899 F. Supp. 1297, 1304 (D.N.J. 1995) (applying percentage-of-recovery method in light of "reasonable estimate" of present value of settlement, with no requirement of "precise calculations").  *See also GM Truck Prods*, 55 F.3d at 822 (In short, "precisely value" simply means that the trial court "needs to make some <u>reasonable assessment</u> of the settlement's value and determine the precise percentage represented by the attorneys' fees.") (emphasis supplied); *In re AremisSoft Corp. Securities Litig.*, 210 F.R.D. 109, 129 (D.N.J. 2002) ("[T]he district court…needs to make some reasonable assessment of the

---

[2] The nature and value of the benefits are discussed more fully below, which addresses "the size of the fund created and the number of beneficiaries."

settlement's value."); *McCoy v. Health Net Inc.*, 569 F. Supp. 2d 448, 478 (D.N.J. 2008) (Although "the value of the injunctive relief cannot be precisely and mathematically ascertained as to each Class Member….The parties have fairly valued the injunctive relief at between $26 and $38 million.").

Under the applicable case law, the valuation is based on the "value of the settlement to the class" as a whole and is not reduced even if some Class Members may choose not to take advantage of the benefits of the settlement.  *Weiss*, 899 F. Supp. at 1304 n. 5.  In *Boeing Co. v. Van Gemert*, 444 U.S. 472, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980), the Supreme Court unequivocally held that in a class action settlement, attorney fees should be awarded based upon **the value of the benefits made available to the class as a whole**, and not merely the benefits actually claimed:

> In this case, the named respondents have recovered a determinate fund for the benefit of every member of the class whom they represent. . . .  **Their right to share the harvest of the lawsuit** upon proof of their identity, **whether or not they exercise it, is a benefit in the fund created by the efforts of the class representatives and their counsel**.  Unless absentees contribute to the payment of attorney's fees incurred on their behalves, they will pay nothing for the creation of the fund and their representatives may bear additional costs.  The judgment entered by the District Court and affirmed by the Court of Appeals rectifies this inequity by requiring every member of the class to share attorney's fees to the same extent that he can share the recovery.

*Boeing*, 444 U.S. at 478, 480 (citations omitted) (emphasis supplied).

Similarly, in *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423 (2d Cir. 2007), the Second Circuit Court of Appeals held that the district court's failure to adhere to this clear legal mandate constituted reversible error:

> In this case, the District Court calculated the percentage of the Fund on the basis of the claims made against the Fund, rather than on the entire Fund created by the efforts of counsel.  We hold that this was error.
>
> * * *
>
> The entire Fund, and not some portion thereof, is created through the efforts of counsel at the instigation of the entire class.  **An allocation of fees by percentage**

**should therefore be awarded on the basis of the total funds made available, <u>whether claimed or not</u>**.

*Id*. at 436-37 (emphasis supplied).   In short, the full value of the various elements of the Settlement are properly included in the valuation of this Settlement, and that valuation need only equate to a reasonable estimate.

**1.   Valuation of the Settlement**

The individual elements that are encompassed in this valuation are as follows:

a.   <u>Reimbursements to Class Members</u>

Any Class Member who has incurred an eligible out-of-pocket expense for repair or replacement caused by the Suspension Defect prior to the end of the Claims Submission Period will be entitled to submit a claim (or claims) for reimbursement of those expenses subject to the following years in service and mileage limitations:

| Year (up to) | Mileage Range | Maximum Reimbursement |
|---|---|---|
| 5 | 50,001 to 62,500 | $500.00 |
| 6 | 62,501 to 75,000 | $250.00 |
| 8 | 75,001 to 100,000 | $125.00 |

ASA, § 3.1.1.

Plaintiffs are able to calculate the value of the reimbursements portion of the Amended Settlement by using evidence obtained from JLRNA during discovery. Specifically, JLRNA conducted its own internal analysis regarding the total number of expected air suspension failures during each of the years after a Class Vehicle is sold or leased.  By multiplying the number of expected failures during each year by the maximum reimbursement available during that year, the value of the reimbursements portion of the Amended Settlement can be calculated.

That analysis yields a settlement value of the reimbursements portion of the Amended Settlement of $6,702,125.00[3].  Mendelsohn Cert., ¶13

      b. <u>Administration Expenses</u>

The total administrative expenses of the Amended Settlement, all to be paid by JLRNA, are estimated to be approximately $175,000.  Mendelsohn Cert., ¶14.  The administration of the Settlement is critical, as the Settlement cannot be effectuated without this process and therefore is a direct benefit to the Class.  Significantly, the administrative expenses do not diminish the Class benefits because Defendants have agreed to pay all of these amounts in addition to the settlement benefits.  ASA, §6.  In a similar situation where the defendants paid the administrative costs without diminishing the benefits to the Class, the District Court calculated an approximate "value to the class" of $771.9 million, comprised of the value of the Claims Review Process Relief, General Policy Relief, injunctive relief, ADR relief, "as well as legal fees, expenses, and administrative costs," because the class in that case benefitted by not having to pay those amounts from the funds earmarked for the Class.  *Varacallo v. Massachusetts Mut. Life Ins. Co.*, 226 F.R.D. 207, 250 (D.N.J. 2005); *see also In re Ins. Brokerage Antitrust Litigation*, 579 F.3d 241, 283-84 (3d Cir. 2009).  The same is true here, and the administrative expenses should be included in the valuation of the Amended Settlement.

Class Counsel are requesting the Court to award fees in the amount of $1,300,000.00.  When reimbursements and settlement administration costs are combined, a reasonable estimate of the Settlement's value to the class is at least **$6,877,125**.  Thus, the requested fees constitute **less than 19%** of the benefit being provided to the class.  Mendelsohn Cert., ¶15.  The requested

---

[3] Because both the document and deposition testimony relied upon to perform this calculation were marked as "Confidential" by Defendant, the specific figures are not being included in this filing.  If the Court deems it necessary to review the specific figures, the parties will provide it to the Court for an *in camera* review.

percentage is reasonable for this case and well within the percentages that have been awarded in similar class action settlements (as explained in greater detail in sub-section I.C.7, below). Considering the relevant factors that have been identified by the Third Circuit, this request for fees is reasonable and should be granted.

### B.  The Requested Attorneys' Fees Are Reasonable Under the Lodestar Method

The lodestar method "is more commonly applied in statutory fee-shifting cases." *Prudential*, 148 F.3d at 333. In the present case, "there is no such statute at work," and, instead, JLRNA has "voluntarily" agreed to pay fees. *See In re Diet Drugs*, 582 F.3d 524, 540 (3d Cir. 2009); *see also Alin v. Honda Motor Co., Ltd.*, 2012 WL 8751045 (D.N.J. Apr. 13, 2012) (applying percentage-of-recovery method in case where defendant agreed to pay fees and relief provided to class included reimbursements and vehicle modifications).  However, the lodestar method may also be applied "in cases where the nature of the recovery does not allow the determination of the settlement's value necessary for application of the percentage-of-recovery method." *Prudential*, 148 F.3d at 333 (citing *GM Truck Prods.*, 55 F.3d at 821).  While Plaintiffs have provided the Court with a reasonable estimate of the Amended Settlement's value, if the Court disagrees, the lodestar method can be utilized.

The lodestar is calculated by "multiplying the number of hours worked by the normal hourly rates of counsel.  The court may then multiply the lodestar calculation to reflect the risks of nonrecovery, to reward an extraordinary result, or to encourage counsel to undertake socially useful litigation." *Bradburn Parent Teacher Store, Inc.*, 513 F. Supp. 2d 322 (E.D. PA. 2007); *see also Rite Aid*, 396 F.3d at 305-06 (explaining that multiplier "accounts for the contingent nature or risk involved in a particular case and the quality of the attorneys' work").

Lodestar multipliers are "by nature ... discretionary and not susceptible to objective calculation." *In re Prudential*, 148 F.3d at 340. The Third Circuit has recognized that multipliers "ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied." *In re Cendant PRIDES*, 243 F.3d at 742, quoting *Prudential*, 148 F.3d at 341; *see e.g., Varacallo v. Massachusetts Mut. Life Ins. Co.*, 226 F.R.D. 207, 256 (D.N.J. 2005) ("A 2.83 multiplier is reasonable."); *McLennan v. LG Elecs. USA, Inc.*, No. 2:10-CV-03604 (WJM), 2012 WL 686020, at *10 (D.N.J. Mar. 2, 2012) ("[A]pplication of a multiplier of 2.93 is justified…[because, *inter alia,*] class counsel prosecuted this matter on a wholly contingent basis, which placed at risk their own resources, with no guarantee of recovery."); *Demaria v. Horizon Healthcare Servs., Inc.*, No. 2:11-CV-07298 (WJM), 2016 WL 6089713, at *5 (D.N.J. Oct. 18, 2016) ("]M]ultiplier of 4.3 is consistent with the considerable risks that counsel faced in taking on this litigation, and the sophisticated legal work required to achieve success."); *Yedlowski v. Roka Bioscience, Inc.*, No. 14-CV-8020 (FLW), 2016 WL 6661336, at *19 (D.N.J. Nov. 10, 2016) (approving multiplier of 3.09 in "matter [that] was settled before the adjudication of the motion to dismiss, was not legally or factually complex, necessitated only confirmatory discovery, and required the expenditure of only 521 hours by Lead Counsel"); *Bradburn Parent Teacher Store,* Inc., 513 F. Supp. 2d at 341 ("[M]ultiplier of 2.5 is within this range of normal awards."). It is appropriate for the court to consider the multipliers utilized in comparable cases. *Rite Aid,* 396 F.3d at 307 n. 17.

Here, Class Counsel is entitled to a contingency multiplier. Class Counsel have reasonably devoted 1,794.7 hours to this case.[4] However, Class Counsel also expect to incur

---

[4] The lodestar cross-check is " 'not a full-blown lodestar inquiry' and a court 'should be satisfied with a summary of the hours expended by all counsel at various stages with less detailed breakdown than would be required in a lodestar jurisdiction.' " *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d at 306 n.16 (quoting Report of the Third Circuit Task Force, Selection of Class

additional time through final approval and oversee the administration of the settlement (including

any disputes).   Based on experience in other similar class action settlements, Class Counsel

expects to expend approximately 100 additional hours of attorney time.   Accordingly, at current

hourly rates[5], Plaintiffs' expect their total lodestar to be in excess of $1.1 million. *See*

Mendelsohn Cert., ¶¶22-29.   Given the requested fee amount of $1.3 million, this results in a

multiplier of 1.18.

---

Counsel, 208 F.R.D. 340, 423 (2002)). "The district courts may rely on summaries submitted by the attorneys and need not review actual billing records." *Id*. at 307.

[5] In reviewing the reasonableness of counsel's hourly rate, the court should assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation. *Granillo v. FCA US LLC*, No. CV16153FLWDEA, 2019 WL 4052432, at *4 (D.N.J. Aug. 27, 2019) (citing *Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 180 (3d Cir. 2001)).   An attorney's usual billing rate is a good starting point for assessing reasonableness, though it is not dispositive. *Id*. (citing *Maldonado v. Houstoun,* 256 F.3d 181, 184–85 (3d Cir. 2001)).

To adjust for delay in payment of attorneys' fees, a court may (1) base the fee award on the current billing rate or (2) adjust a fee based on historical rates to reflect its present value.   *In re Safety Components, Inc. Sec. Litig.*, 166 F. Supp. 2d 72, 103 (D.N.J. 2001) (calculating plaintiffs' counsel's lodestar using current hourly rates) (quoting and citing *Keenan v. City of Philadelphia*, 983 F.2d 459, 476 (3d Cir.1992); *Doe v. Terhune,* 121 F.Supp.2d 773, 781 (D.N.J.2000); *Blum v. Witco Chem. Corp.,* 888 F.2d 975, 984 & n. 4 (3d Cir.1989)).

Here, Plaintiffs' counsel's current billing rates, which range from $325 to $900, are consistent with both the prevailing market rates in the community for similar services and with the amounts awarded by other courts in this jurisdiction, and are therefore reasonable. *Granillo*, 2019 WL 4052432, at *5 (finding rates of $245 to $725 to be reasonable in a class action against a vehicle manufacturer); *Saint v. BMW of North America, LLC*, No. 12–6105(CCC), 2015 WL 2448846, *15 (D.N.J. May 21, 2015) (approving average rates of $421.73 and $540.31 in class action against an automobile manufacturer); *In re Merck & Co. Vytorin ERISA Litig.*, No. 08-285 (DMC), 2010 WL 547613 (D.N.J. Feb. 9, 2010) (approving rates between $250 and $850 per hour); *In re Schering-Plough/Merck Merger Litig.,* No. 09-1099 (DMC), 2010 WL 1257722, at *18 (D.N.J. Mar. 26, 2010) ("an overall hourly lodestar non-weighted average ranging from $ 465.68 to $ 681.15 is not unreasonable in light of similar rates charged in the market and in light of the usual billing rates documented in counsel's declarations to the Court.").

By way of comparison, the Third Circuit approved a lodestar multiplier of 2.99 in *Cendant PRIDES*, a case which the Third Circuit described as being "neither legally nor factually complex." 243 F.3d at 742. The case lasted only four months and "discovery was virtually nonexistent." *Id.* at 736. The court of appeals noted, "the case was relatively simple in terms of proof, in that Cendant had conceded liability and no risks pertaining to liability or collection were pertinent." *Id.* That is unlike the case here, where Defendants have contested liability throughout this six-year litigation. Furthermore, the 1.18 multiplier suggested here is not disproportionate to multipliers used in other cases. *See, e.g., O'Keefe*, 214 F.R.D. at 266 (recognizing lodestars of between 2.95 and 6.08).

Given the facts of this case, the requested lodestar multiplier of approximately 1.18 is well within the appropriate range and further supports the request for fees herein.[6]

### C.  The Factors Governing Approval Of Attorneys' Fees and Expenses Support The Requested Amount

According to the Third Circuit, when determining the fees to award in a class action, "[w]hat is important is that the District Court evaluate what class counsel actually did and how it benefitted the class." *In re AT&T Corporation*, 455 F.3d 160, 165-66 (3d Cir. 2006), citing *In re Prudential Insurance Co. of Am.*, 148 F.3d 283, 342 (3d Cir. 1998). In summarizing the factors that go into that evaluation, the Third Circuit made it clear that the ultimate decision must be based on the characteristics of the particular case at issue:

> [A] District Court should consider the *Gunter* factors, the *Prudential* factors, and any other factors that are useful and relevant with respect to the particular facts of the case. The fee award reasonableness factors need not be applied in a formulaic way because each case is different, and in certain cases, one factor may outweigh the rest.

---

[6] The lodestar is consistent with the amount calculated using the percentage method and, when used as a cross-check, confirms the reasonableness of the percentage amount. *See Ins. Brokerage*, 579 F.3d at 280.

*In re AT&T Corporation*, 455 F.3d at 166.   The key is to identify the factors that are most applicable in the case under consideration.  *See In re Cendant*, 243 F.3d at 735, discussing the factors that are "more important in <u>this</u> case" (emphasis supplied).  In *In re Diet Drugs*, 582 F.3d 524, 540 (3d Cir. 2009), the Third Circuit identified ten factors for a court to consider when determining the reasonableness of counsels' fees.  These factors "need not be applied in a formulaic way," because each case is different, "and in certain cases, one factor may outweigh the rest."  *Rite Aid*, 396 F.3d at 301, quoting *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n. 1 (3d Cir. 2000).  In addition, the factors are not exhaustive, and the Court may consider "any other factors that are useful and relevant with respect to the particular facts of the case."  *AT&T*, 455 F.3d at 166.  These factors establish that the requested attorney fee is appropriate.

1. <u>The size of the fund created and the number of beneficiaries</u>

This is a vast, nationwide settlement encompassing over 57,000 Class Vehicles and over 160,000 Class Members.  The fund created by the Settlement has a value of approximately $6.87 million, which is comprised of hard dollars available for reimbursement for damages and administrative expenses.  This Settlement provides significant and concrete relief to the class.  Accordingly, this factor supports Class Counsel's application for attorneys' fees and costs.

2. <u>The presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel</u>

As of December 6, 2019, no objections to the Settlement have been filed, which supports Class Counsel's request.  *See Yong Soon Oh v. AT & T Corp.*, 225 F.R.D. 142, 152 (D.N.J. 2004) (determining this factor weighed in favor of approving fees where three of the thousands of potential plaintiffs objected to fees); *In re Cendant Corp., Derivative Action Litigation,* 232 F. Supp. 2d 327, 337 (D.N.J. 2002) (determining this factor weighed in favor of approving fees where 6 of the 200,000 shareholders noticed objected to fees); *see also Rite Aid*, 396 F.3d at 305

("District Court did not abuse its discretion in finding the absence of substantial objections by class members to the fee requests weighed in favor of approving the fee request.").

Notice of the settlement, including the amount of fees to be requested, has been sent to over 160,000 Class Members. Mendelsohn Cert., ¶34.  As of December 6, 2019, no Class Members have objected to the settlement and only a single Class Member has sought exclusion from the class.  *Id*.

### 3.   The skill and efficiency of the attorneys involved

The Court must evaluate the skill and efficiency of Class Counsel, which is "measured by 'the quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel.'" *In re Ikon Office Solutions, Inc. Sec. Litig.,* 194 F.R.D. 166, 194 (E.D.Pa. 2000), quoting *In re Computron Software, Inc.,* 6 F.Supp.2d 313, 323 (D.N.J. 1998).  Class Counsel have attached Declarations in support of this request, which describe their significant experience with complex products litigation and class action litigation. *See* Mendelsohn Cert., ¶¶30-33 and Declaration of Payam Shahian, Esq. ("Shahian Dec.") and Declaration of Dara Tabesh ("Tabesh Dec.").  Furthermore, JLRNA's counsel are savvy, experienced class action attorneys who would have continued to be formidable adversaries.  Nonetheless, all counsel were able to work together through extensive effort to reach a settlement, which is tangible evidence of the skill and efficiency of counsel.  *See In re Elec. Carbon Prods. Antitrust Litig*., 447 F. Supp. 2d 389, 407 (D.N.J. 2006).  "Class counsel's success in bringing this litigation to a conclusion prior to trial is another indication of the skill and efficiency of the attorneys involved." *Bredbenner v. Liberty Travel, Inc.,* 2011 WL 1344745 (D.N.J. April 08, 2011), citing *Gunter*, 223 F.3d at 198.  The "single clearest factor

reflecting the quality of counsel's services is the result obtained." *In re Cendant Derivative,* 232 F. Supp. 2d at 338; *see also In re Rite Aid*, 396 F.3d at 304 (determining that counsel was "extraordinarily deft and efficient in handling this most complex matter" because, among other things, he negotiated a particularly favorable non-cash settlement). An outstanding result has been achieved for the class in the present case, and this factor weighs in favor of the fee request.

4. <u>The complexity and duration of the litigation</u>

The Court must also consider the complexity and duration of the litigation. This factor "captures the probable costs, in both time and money, of continued litigation." *In re Warfarin Sodium Antitr. Litig.*, 391 F.3d 516, 535-36 (3d Cir. 2004). The parties have spent considerable time, money, and effort in litigating this case to date. This class action involves defects in more than 57,000 vehicles, over 4 model years, and Class Members from every state. *See generally In re GM Trucks*, 55 F.3d at 812 (finding complexity arising from a "web of state and federal warranty, tort, and consumer protection claims"). Class Counsel have reviewed thousands of documents produced by JLRNA. Mendelsohn Cert., ¶10. Class Counsel have also responded to, and largely survived, JLRNA's motions to dismiss the claims asserted. *Id.*, ¶¶3-9. Significantly, JLRNA continues to strenuously deny the merits of Plaintiffs' claims. Because of this case's complexity, it took two full-day mediation sessions with Judge Sundvold, and countless additional negotiations over more than a year, to reach a settlement. Mendelsohn Cert., ¶8. The claims in this case raise difficult questions of law and fact (as evidenced by Defendant's motions to dismiss), and "the complexity and duration of this litigation" weigh strongly in favor of accepting counsel's fee request as reasonable.

5. <u>The risk of nonpayment</u>

Class Counsel undertook this class action on a contingency fee basis. Thus, for the past six years, counsel carried both the cost of litigation and considerable risk of not being paid for their services. *See Rowe v. E.I. DuPont de Nemours and Co*., 2011 WL 3837106, at \*21 (D.N.J. August 26, 2011) (that "counsel faced significant challenges in terms of establishing liability and a right to injunctive relief" created "risk of nonpayment" that weighed in favor of accepting fee request); *In re Pet Food Prods. Liab. Litig.,* Civ. No. 07–2867, 2008 WL 4937632, at \*22 (D.N.J. Nov. 18, 2008) (noting that "[a]t the time that plaintiff's counsel undertook representation, they faced significant hurdles and the possibility of non-recovery. Courts have consistently recognized that the risk of receiving little or no recovery is a major factor in considering an award of attorneys' fees."). For example, there was a substantial risk that Plaintiffs might have failed to certify the proposed classes, and even if they did, might not have maintained certification throughout trial. *See, e.g.*, *Daugherty v. American Honda Motor Co.*, 144 Cal. App. 4th 824 (2006) (affirming judgment of dismissal on demurrer); *Marcus v. BMW of North America, LLC*, 687 F.3d 583 (3d Cir. 2012) (vacating district court's certification order); *Philips v. Ford Motor Co.*, No. 14-02989, 2016 WL 7428810, at \*17 (N.D. Cal. Dec. 22, 2016) (denying class certification and finding that the plaintiffs failed to present a compelling damages model supporting a classwide determination regarding Ford's alleged omission of a "systemic defect" in the vehicle's electronic steering system); *In re Ford Motor Co. Ignition Switch Products Liability Litigation*, 194 F.R.D. 484 (D.N.J. 2012); *Chin v. Chrysler Corp.*, 182 F.R.D. 448 (D.N.J. 1998) (class certification denied); *Cholakyan v. Mercedes-Benz, USA, LLC*, 281 F.R.D. 534 (C.D. Cal. 2012) (same); *In re Ford Motor Co. E-350 Van Prods. Liab. Litig*., 2012 WL 379944 (D.N.J. Feb. 6, 2012) (same). Despite the risk that Plaintiffs' counsels' significant

time and efforts could go uncompensated, Class Counsel diligently prosecuted the claims on behalf of the Class and this factor weighs in favor of accepting the fee request.

6. <u>The amount of time devoted to the case by Plaintiffs' counsel</u>

The percentage-of-recovery method is designed to reward, not punish, attorneys who focus on obtaining results for the class, rather than billing hours.  *See Prudential,* 148 F.3d at 333 n. 108 ("[C]ritics have argued that the lodestar method gives attorneys an incentive to increase their billable hours by delaying settlement as long as possible.").  Here, Class Counsel efficiently and reasonably devoted approximately 1,794.7 hours to this case as of December 6, 2019. Mendelsohn Cert., ¶28.   In comparison, in *Skeen v. BMW of N. Am., LLC*, No. 2:13-CV-1531, 2016 WL 4033969, at *21 (D.N.J. July 26, 2016), the Honorable William H. Walls held that "Plaintiffs' submission of 5,100.75 billable hours is reasonable for a three year-old consumer class action."   Here, Class Counsel has devoted approximately 35% of the hours held to be reasonable in *Skeen* in a case that has been pending more than twice as long (*i.e.*, since December 26, 2012).   "Moreover, the Court cannot ignore Class Counsel's ongoing obligation to…class members for which additional time will be spent without further compensation." *Dewey*, 728 F. Supp. 2d 546, 604 (D.N.J. 2010).  This factor supports the fee request.

7. <u>The awards in similar cases</u>

The request for a fee equal to less than 19% of the settlement's estimated value (which does not include attorneys' fees and costs) is well within the accepted range of percentage-of-recovery fee awards.  *See G.M. Trucks*, 55 F.3d at 822 (noting that fee awards range between 19 and 45 percent of the settlement fund); *see also In re Staples Inc. Wage and Hour Employment Practices Litigation,* 2011 WL 5413221, at *4 (D.N.J. Nov. 04, 2011) ("27.5 percent of the fund requested here does not appear disproportionate compared to other percentage of recovery fee

awards."); *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 735 (E.D.Pa. 2001) (noting

expert's review of 289 settlements, which demonstrated that "average attorney's fees percentage

is shown as 31.71%, and the median turns out to be one-third"); *In re Cendant PRIDES*, 243

F.3d at 736 (noting that most fee awards in common fund cases range "from nineteen percent to

forty-five percent of the settlement fund").  The fees requested here are on the low end of the

accepted range, so this factor weighs in favor of granting the fee request.

> 8.  The value of benefits attributable to the efforts of class counsel relative to the
>     efforts of other groups, such as government agencies conducting
>     <u>investigations</u>

The benefits in this case are solely due to the efforts of Class Counsel.  *See In re AT&T*,

455 F.3d at 173 ("[C]lass counsel in this case was not aided by a government investigation.");

*Chakejian v. Equifax Information Services*, LLC 275 F.R.D. 201 (E.D.Pa. 2011) ("All of the

benefits obtained for class members are due to the efforts of class counsel; there were no

government agencies or other groups conducting investigations and contributing to this

settlement. … [T]his factor supports a substantial fee award for class counsel.").  This factor

also weighs in favor of granting the fee request.

> 9.  The percentage fee that would have been negotiated had the case been subject
>     <u>to a private contingent fee arrangement at the time counsel was retained</u>

Plaintiffs' counsel undertook this matter entirely on a contingency basis and are

requesting only 19% of the settlement's value, significantly less than would have been sought in

a private contingent fee agreement with the Class.   "[I]n private contingency fee cases,

particularly in tort matters, plaintiffs' counsel routinely negotiate agreements providing for

between thirty and forty percent of any recovery."  *In re Ikon*, 194 F.R.D. at 194 (collecting

cases); *see also, In re Schering-Plough Corp. Enhance Sec. Litig.*, No. 08-2177, 2013 WL

5505744, at *47 (D.N.J. Oct. 1, 2013) ("[A] number of courts within the Third Circuit have

observed attorneys regularly contract for contingent fees between 30% and 40% with their clients in non-class commercial litigation."); *Chakejian v. Equifax Information Services, LLC*, 275 F.R.D. 201, 219 (E.D.Pa. 2011) ("[C]ontingency fees representing 30% to 40% of recovery are fairly typical"); *Bradburn Parent Teacher Store, Inc. v. 3M (Minn. Mining and Mfg. Co.)*, 513 F. Supp. 2d 322, 328 (E.D.Pa. 2007), quoting *In re AT & T*, 455 F.3d at 165-66 ("[W]e find that a percentage of recovery of 35 percent is comparable to the likely percentage fee that would have been negotiated had the case been subject to a private contingent fee agreement at the time counsel was retained.") (quotation omitted).  Because Class Counsel is only seeking 19% of the value of the Settlement, this factor weighs heavily in favor of granting the fee request.

   10. <u>Any innovative terms of settlement</u>

   The terms of the Amended Settlement are similar to many other automotive class action settlements.  Accordingly, this factor neither weighs for nor against approval of the requested fees.

<br>

## POINT II

### THE REQUEST FOR REIMBURSEMENT OF COSTS<br>IS REASONABLE AND SHOULD BE GRANTED

   As part of the settlement agreement, Defendant has agreed to reimburse Class Counsel for their costs in this matter up to $75,000. *See* ASA, §12.2.  "Counsel for a class action is entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the class action."  *Careccio v. BMW of North America* LLC, 2010 WL 1752347 (D.N.J. April 29, 2010), quoting *Safety Components Int'l Sec. Litig.* 166 F. Supp. 2d 72, 108 (D.N.J. 2001).  The reasonable and necessary expenses incurred by Class Counsel in the prosecution of this case are set forth in the declarations of Class Counsel,

totaling $45,441.78.  *See* Mendelsohn Cert., ¶33.  Class Counsel respectfully requests the Court

to award **$45,441.78** in costs.

**POINT III**

**THE REQUESTED SERVICE AWARDS SHOULD BE APPROVED**

There is ample authority in this and other circuits for the approval of awards for named

Plaintiffs to reimburse them for their time, effort, and contributions to the litigation.  *See*

*Varacallo*, 226 F.R.D. at 257-58 (collecting cases).  The purpose of such an award is, "to

compensate the named Plaintiff for any personal risk incurred by the individual or any additional

effort expended by the individual for the benefit of the lawsuit."  *Id*. at 257 (citations omitted).

As to all of the class representatives herein, it can be said:

> The Class Representatives performed considerable work advancing the litigation.
> Like the attorneys in this case, the class representatives have conferred benefits on
> all other class members and they deserve to be compensated accordingly.

*Id.* at 258-59 (citation omitted); *see also, Dewey v. Volkswagen of Am.*, 909 F. Supp. 2d 373, 395

(D.N.J. 2012), aff'd sub nom. *Dewey v. Volkswagen Aktiengesellschaft,* 558 F. App'x 191 (3d

Cir. 2014) (approving $10,000 service award to each named plaintiff); *Henderson v. Volvo Cars*

*of N. Am., LLC*, No. CIV.A. 09-4146 (CCC), 2013 WL 1192479, at *19 (D.N.J. Mar. 22, 2013)

(approving service awards ranging from $5,000 to $6,000 for each class representative);

*DeSantis v. Snap-on Tools Co.*, No. Civ. A. 06CV2231 (DMC), 2006 WL 3068584, at *11

(D.N.J. Oct. 27, 2006) (approving $50,000 incentive awards).

The Amended Settlement calls for JLRNA to pay Plaintiffs a one-time payment in the

aggregate amount of $16,000, to be distributed as follows: $5,000 to Plaintiff Simon Majdipour;

$3,000 to Plaintiff Pamela Austin; and $2,000 each to Plaintiffs Brian Fuchs, Charles Manis,

Jason Manowitz, and Marvina Robinson.  ASA, §12.1.  Plaintiffs are requesting that the Court

award the above amounts to the named Plaintiffs, as they expended significant time and effort

24

assisting Class Counsel in their investigation, understanding of the Suspension Defect, review of pleadings, producing documents, participating in settlement discussions, and assisting in the preliminary and final approval process.  Mendelsohn Cert., ¶35.  The different amounts account for the varying dates on which Plaintiffs became involved in this case and therefore the differences in the amount of effort expended.  The requested incentive awards to each of the Plaintiffs are appropriate, reasonable, and should be approved.

<u>**CONCLUSION**</u>

For the reasons set forth herein and in the supporting certification, Plaintiffs' application for an award of attorney's fees, costs and incentive awards should be granted.

Dated: December 9, 2019

By: _____

Matthew Mendelsohn
**MAZIE SLATER KATZ & FREEMAN, LLC**
103 Eisenhower Parkway
Roseland, New Jersey 07068
Telephone:  (973) 228-9898
Facsimile:  (973) 228-0303

Payam Shahian (*pro hac vice*)
**STRATEGIC LEGAL PRACTICES, APC**
1875 Century Park East, Suite 700
Los Angeles CA 90067
Telephone:  (310) 277-1040
Facsimile:  (310) 943-3838

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I, Matthew Mendelsohn, hereby certify that the foregoing **PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR AWARD OF ATTORNEYS' FEES, EXPENSES AND INCENTIVE AWARDS** was filed on December 9, 2019, using the Court's CM/ECF system, thereby electronically serving it on all counsel of record in this case.

By: _____

MATTHEW MENDELSOHN